UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FAMILIAS UNIDAS POR LA JUSTICIA, AFL-CIO,

                Plaintiff,

     v.

UNITED STATES DEPARTMENT OF LABOR; JULIE A SU, in her official capacity, Acting United States Secretary of Labor,

               Defendants.

CASE NO. 2:24-cv-00637-JHC

ORDER

# I

## INTRODUCTION

This matter comes before the Court on Plaintiff's Motion for Preliminary Injunction. Dkt. # 9. Plaintiff, Familias Unidas por la Justicia, AFL-CIO, (FUJ) is a labor union that represents farmworkers throughout Washington State. Plaintiff challenges "the lawfulness of [the United States Department of Labor's (DOL)] new prevailing wage rules and DOL's application of these rules to Washington." Dkt. # 9 at 2. Plaintiff asks the Court to enjoin the DOL from enforcing 20 C.F.R. § 655.120(c)(2) (the One-Year rule); and 20 C.F.R. § 655.120(c)(1)(ix) (the 25% rule). Plaintiff requests that the Court reinstate the prevailing wages from the 2020 survey. Plaintiff also asks the Court to rescind DOL's approval of the

Washington State Employment Security Department's (ESD) population estimate methodology and direct ESD to conduct its prevailing wage survey using different methodology.

For the reasons discussed below, the Court GRANTS in part, and DENIES in part without prejudice, Plaintiff's motion. The Court ENJOINS enforcement of the One-Year rule in Washington, and ORDERS DOL to reinstate the 2020-Survey prevailing wage rates, published in January 2022, in Washington. The Court DENIES without prejudice Plaintiff's motion as to the 25% rule and its claims regarding ESD's population estimate methodology.

## II
### Background

Below is a summary of this case's background.

A.      Regulatory structure

Under the H-2A program, employers may bring temporary foreign workers into the United States. 8 U.S.C. § 1188. Before an employer can obtain a visa for a foreign worker, the employer must apply for a certification from DOL that there are not enough workers at the time and place to fulfill the employer's need, and that employment of a foreign worker "will not adversely affect the wages and working conditions of workers in the United States similarly employed." *Id.* (a)(1)(A)–(B). Accordingly, DOL regulations require H-2A employers to:

[P]ay a wage that is at least the highest of:

(1) The [Adverse Effect Wage Rate] [(]AEWR[)];

(2) A prevailing wage rate, if the OFLC Administrator has approved a prevailing wage survey for the applicable crop activity or agricultural activity and, if applicable, a distinct work task or tasks performed in that activity, meeting the requirements of paragraph (c) of this section;

(3) The agreed-upon collective bargaining wage;

(4) The Federal minimum wage; or

(5) The State minimum wage.

20 C.F.R. § 655.120(a).  In agriculture, the AEWR and the prevailing wage are the only relevant wages, as federal and state minimum wages are lower and collective bargaining agreements are not common in the industry.  Dkt. # 18-1 at 3.  The AEWR is a state-specific hourly minimum wage set by DOL.  20 C.F.R. § 655.1300.  In Washington, the AEWR for 2024 is $19.25 per hour.  *H-2A Adverse Effect Wage Rates*, U.S. Department of Labor, https://flag.dol.gov/wage-data/adverse-effect-wage-rates.

In agriculture, a prevailing wage may include piece-rate wages.  Under such a compensation structure, employers pay workers by the amount of a crop—typically fruit—harvested instead of the number of hours worked.  *See* Dkt. # 21.  Plaintiff submitted declarations of domestic farmworkers who state that they are generally paid piece-rate wages, earn substantially more money under that compensation structure, and rely on such wages to support themselves and their families.  *See* Dkt. # 11, 12, 13, 14, 15, 16.  The Ninth Circuit has recognized that piece-rate wages are "at least the highest of the listed wages because a piece-rate wage offers workers the opportunity to earn more than they might under an hourly wage." *Torres-Hernandez v. DOL*, No. 23-35582, 2024 WL 2559562, at *1 (9th Cir. May 24, 2024). DOL also recognizes that prevailing wages "serve as an *important protection* for workers in crop and agricultural activities that offer piece rate pay or higher hourly rates of pay than the AEWR." 88 Fed. Reg. 12760, 12775 (Feb. 28, 2023) (emphasis added).

DOL delegates to state workforce agencies (SWAs) the task of collecting data to calculate prevailing wage rates.  *See* 20 CFR § 655.1300(c).  SWAs follow DOL guidelines for this task and then submit the prevailing wage rates, along with the survey methodologies used, to

ORDER - 3

DOL for validation.  *See* 20 C.F.R. § 655.120(c) (laying out criteria SWAs must follow to calculate prevailing wages that meet DOL standards); *see also* 87 Fed. Reg. 61660, 61679, 61689 (Oct. 12, 2022) (describing the way SWAs should conduct prevailing wage surveys under the new regulations and how DOL validates the survey results and publishes the prevailing wage findings).  The SWA in Washington is ESD.  *State Workforce Agencies*, U.S. Department of Labor, https://www.dol.gov/agencies/eta/wotc/contact/state-workforce-agencies.

In 2022, DOL promulgated regulations that changed the way prevailing wages are calculated.  87 Fed. Reg. 61660.  Based on these new regulations, ESD conducted and submitted its 2023 survey to DOL for review.  Dkt. # 34 at 2.  DOL is still reviewing the submission and has not published any prevailing wage rates for Washington State for the 2024 harvest season.  *Id.*  Further, based on its new One-Year rule, all prevailing wage rates older than one year have expired.  20 C.F.R. § 655.120(c)(2).  Thus, there are currently no prevailing wages required for H-2A workers in Washington.

B.    Prior Case

In 2020, FUJ (along with another plaintiff) sued DOL in the Eastern District of Washington challenging (1) changes that DOL made in 2019 to the method it used to calculate piece-rate prevailing wages and (2) various other DOL policies and practices around calculating the prevailing wage rate.  *Torres-Hernandez v. DOL*, No. 1:20-CV-3241-SMJ, Dkt. # 1 at 35–36 (E.D. Wash. Dec. 17, 2020).  In the Second Amended Complaint (SAC) there, the plaintiffs said that DOL violated the Administrative Procedure Act (APA), 5 U.S.C. § 706(2)(A), (D), procedurally by changing its methodology for calculating the prevailing wage rate in 2019 without notice and opportunity to comment.  The plaintiffs argued that DOL substantively

violated the APA by (1) changing "the hourly wage guarantee policy and practice" to consider "hourly wage guarantees" associated with piece rate wages in the prevailing wage calculation instead of looking at the actual piece rates; (2) failing "to use worker surveys to verify employer data;" (3) disregarding "employer wage data" where the sample size was less than 15 percent of the total number of employers; (4) overestimating "worker population for each commodity-activity;" (5) approving "clearance orders that fail to pay the 'general' prevailing wage for activities in which there is not a particular piece rate for a sub-activity," and (6) approving "clearance orders that promise only to pay the AEWR for activities that have a published prevailing piece rate." *Id.* Dkt. # 86 at 46.  The plaintiffs also brought claims against ESD, which are impertinent here, as it is not a party to this case.  *See id.*

On October 12, 2022, while the prior case was pending, DOL published its 2022 regulations regarding the calculation of prevailing wages.  87 Fed. Reg. 61660.  The regulations took effect in November 2022.  The plaintiffs sought leave to amend "the SAC to (i) eliminate SAC claims that are now moot as a result of the Nov. 2022 rule-making; (ii) to clarify the SAC claims that remain as live controversies despite the rule-making and add claims based on policies and actions that existed before and continue to exist after the new rule, and (iii) to add challenges to the new arbitrary and unlawful methodologies set forth in the November 2022 rule."  Dkt. # 35-5 at 8.  The court granted leave to amend in part, "allowing leave to amend for unresolved claims affected by the 2022 Final Rule," and not allowing plaintiff to add a challenge the 2022 Final Rule.  *Torres-Hernandez v. DOL*, No. 1:20-CV-3241-TOR, 2023 WL 4827982, at *2 (E.D. Wash. July 27, 2023).  The plaintiffs neither amended the SAC nor appealed.  Dkt. # 35-1.  This lawsuit was later filed.

1
2

### III

#### PRELIMINARY INJUNCTION STANDARDS

3

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a

4

clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*,

5

555 U.S. 7, 23 (2008). To obtain a preliminary injunction, a plaintiff must show that (1) they are

6

"likely to succeed on the merits"; (2) they are "likely to suffer irreparable harm in the absence

7

of" a preliminary injunction; (3) "the balance of equities tips in [their] favor"; and (4) a

8

preliminary injunction "is in the public interest." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127

9

(9th Cir. 2009) (quoting *Winter,* 555 U.S. at 20) (these are called the *Winter* factors). When the

10

nonmoving party is the government, the third and fourth *Winter* factors "merge" into a single

11

factor. *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023).

12

The Ninth Circuit has instructed that likelihood of success on the merits "is a threshold

13

inquiry" and "a 'court need not consider the other factors' if a movant fails to show a likelihood

14

of success on the merits." *Baird*, 81 F.4th at 1040 (quoting *Disney Enters., Inc. v. VidAngel,*

15

*Inc.*, 869 F.3d 848, 856 (9th Cir. 2017)).

16

The Ninth Circuit also employs a sliding scale approach to preliminary injunctions,

17

which deemphasizes the importance of the first *Winter* factor.

18
19
20

> [I]f a plaintiff can only show that there are "serious questions going to the
> merits"—a lesser showing than likelihood of success on the merits—then a
> preliminary injunction may still issue if the "balance of hardships tips sharply in
> the plaintiff's favor," and the other two *Winter* factors are satisfied.

21

*Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *All. for*

22

*the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)).

23
24

# IV

## DISCUSSION

Plaintiff argues that it is entitled to a preliminary injunction because it is likely to succeed on the merits of its three APA claims. Dkt. # 9 at 20–30. Plaintiff says that farmworkers in Washington will suffer irreparable harm from depressed wages, that a preliminary injunction is in the public interest, and that the balance of equities tips in Plaintiff's favor. *Id.* at 33–35.

Defendants counter that res judicata bars this case because Plaintiff already had the opportunity to litigate its claims, and that Plaintiff forfeited its APA challenges because it did not raise the issues before DOL. Dkt. # 33 at 11–14. Defendants also say that a higher standard should apply because Plaintiff asks for a mandatory injunction. *Id.* at 9–10. On the merits, Defendants argue that Plaintiff has failed to show they it is entitled to a preliminary injunction. *Id.* at 15. They say that Plaintiff has not shown a likelihood of success on the merits, or a serious question going to the merits. *Id.* at 15–19. And they say that Plaintiff has not shown irreparable harm. *Id.* at 19–21. Finally, they say that the public interest and balance of equities favors the denial of a preliminary injunction. *Id.* at 21–22.

A.    Res Judicata

Defendants say that res judicata bars Plaintiff's claims because Plaintiff had an opportunity to litigate them in the prior case discussed above. *Id*. at 11. Plaintiff responds that res judicata does not apply because this case does not arise out of a common nucleus of operative facts with the other case. Dkt. # 37 at 2. The Court agrees with Plaintiff. The two lawsuits do not arise out the "same transactional nucleus of facts" because the current lawsuit challenges the 2022 regulations and DOL's actions under those regulations, which did not exist and had not occurred when Plaintiff brought the earlier suit.

"Res judicata applies when 'the earlier suit . . . (1) involved the same "claim" or cause of action as the later suit, (2) reached a final judgment on the merits, and (3) involved identical parties or privies.'" *Mpoyo v. Litton Electro-Optical Sys. (Mpoyo II)*, 430 F.3d 985, 987 (9th Cir. 2005) (quoting *Sidhu v. Flecto Co.,* 279 F.3d 896, 900 (9th Cir. 2002)). To determine "[w]hether the two suits involve the same claim or cause of action[,]" courts consider: "(1) whether the two suits arise out of the same transactional nucleus of facts; (2) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (3) whether the two suits involve infringement of the same right; and (4) whether substantially the same evidence is presented in the two actions." *Id.* Courts do not "apply [the four factors] mechanically." *Id.* "Whether two events are part of the same transaction or series depends on whether they are related to the same set of facts and whether they could conveniently be tried together." *Id.* (quoting *W. Sys., Inc. v. Ulloa,* 958 F.2d 864, 871 (9th Cir. 1992)). In most cases, to determine whether two cases arose out of the "same transactional nucleus of facts[,]" courts consider "whether the claim could have been brought in the first action." *Turtle Island Restoration Network v. U.S. Dep't of State*, 673 F.3d 914, 918 (9th Cir. 2012) (quoting *United States v. Liquidators of Eur. Fed. Credit Bank,* 630 F.3d 1139, 1151 (9th Cir. 2011)); *Media Rts. Techs., Inc. v. Microsoft Corp.*, 922 F.3d 1014, 1027 (9th Cir. 2019).

Defendants say that, under *Mpoyo II*, res judicata bars Plaintiff from bringing this case because it first sought to challenge the 2022 prevailing wage regulations by amending the SAC in the prior case, and then did not appeal the partial denial of its motion or amend the SAC. Dkt. # 33 at 13. But *Mpoyo II* is easily distinguishable. In the first *Mpoyo* case, the plaintiff sued his employer under Title VII for racial discrimination and retaliation. *Mpoyo v. Litton Electro-Optical Sys. (Mpoyo I)*, 92 F. App'x 551, 551 (9th Cir. 2004). Two years into the litigation and after discovery had closed, plaintiff sought leave to amend his complaint to allege that his

employer also violated the Fair Labor Standards Act (FLSA) and Family and Medical Leave Act (FMLA). *Id.* at 552. The court denied the motion, concluding that the defendant would be prejudiced by the late amendment. *Id.* Later, in *Mpoyo II*, which involved the same parties, the court held that res judicata barred the plaintiff's FLSA and FMLA claims because they arose out of the same conduct and events as plaintiff's Title VII claims. 430 F.3d at 987. The Ninth Circuit joined other circuits in holding that "[d]enial of leave to amend in a prior action based on dilatoriness does not prevent application of res judicata in a subsequent action." *Id.* at 989.

By contrast, the claims here could not have been brought at the same time as the earlier case. While some facts may overlap, as observed by the court in the earlier case before the Eastern District of Washington, allowing the plaintiffs to add their challenges to the 2022 regulations to the complaint would have been a "fundamental shift in strategy at a late stage of litigation" in a case when the "case [was] almost three years old, with little to no momentum in moving forward." *Torres-Hernandez v. DOL*, No. 1:20-CV-3241-TOR, 2023 WL 4827982, at *2. There was no dilatoriness. There is no common nucleus of fact here between the cases, and res judicata does not apply.

B.      Waiver[1]

Defendants next say that Plaintiff forfeited its claims because it failed to raise its concerns about the 2022 prevailing wage regulations during DOL's notice and comment proceedings. Dkt. # 33 at 14.

---

[1] In this context, courts use the terms issue exhaustion, forfeiture, and waiver interchangeably. *See* Charles H. Koch, Jr. and Richard Murphy, Admin. L. & Prac. § 12:22 (3d ed. 2024); *Lands Council v. McNair*, 629 F.3d 1070, 1076 (9th Cir. 2010) (explaining that when a party fails to exhaust an issue before the agency, it "forfeits arguments that are not raised during the administrative process"); *Portland Gen. Elec. Co. v. Bonneville Power Admin.*, 501 F.3d 1009, 1023 (9th Cir. 2007) ("While the principle has sometimes been phrased in terms of standing or exhaustion, we have made clear that it is best characterized as waiver." (internal citations omitted)).

ORDER - 9

"A party forfeits arguments that are not raised during the administrative process." *Lands Council v. McNair*, 629 F.3d at 1076.  But an argument is not forfeited "if an agency has had an opportunity to consider the issue [] even if the issue was considered sua sponte by the agency or was raised by someone other than the petitioning party." *Protect Our Communities Found. v. LaCounte*, 939 F.3d 1029, 1037 (9th Cir. 2019) (quoting *Portland Gen. Elec. Co. v. Bonneville Power Admin.*, 501 F.3d at 1024).

Plaintiff contends that the issue with the One-Year rule was raised during the comment period by Harvard Law School's Food Law and Policy Clinic.  Dkt. # 38-9.  In addressing DOL's proposed revisions to methodologies for establishing prevailing wage rates, that clinic's comment says:

> The Department should make a clearer commitment to ensuring that prevailing wage rates are *established each year* and that survey data is publicly available. Despite its assurances that the reformed procedures will enable SWAs and the Department to establish prevailing wage rates more consistently, the Department disavows any obligation to establish prevailing wage rates at all. This is concerning because prevailing wage rates can be much higher than the AEWR in certain occupations; having the prevailing wage data is vital to ensure workers in those occupations are properly compensated.

*Id*. at 10 (emphasis added).  As to the One-Year rule, this comment suffices to put DOL on notice of this issue.

As to the 25% rule, Plaintiff says that the waiver doctrine does not apply because it is challenging the agency's application and adoption of ESD's interpretation of the regulation, not the regulation itself.  Dkt. # 37 at 7.  As to DOL's acceptance of ESD's methodology for estimating the population, Plaintiff contends that exhaustion is not required because it had no opportunity to comment.  *Id.*

Courts have recognized certain exceptions to the exhaustion requirement, including "where issues by their nature could not have been raised before the agency." *Washington Ass'n*

*for Television & Child. v. F.C.C.*, 712 F.2d 677, 682 (D.C. Cir. 1983; *see also Murphy Expl. & Prod. Co. v. U.S. Dep't of Interior*, 270 F.3d 957, 958 (D.C. Cir. 2001) (holding that exhaustion is not required "when a rule is 'brought before this court for review of further [agency] action applying it.'" (quoting *Functional Music, Inc. v. FCC,* 274 F.2d 543, 546 (D.C. Cir. 1958)). Since "'administrative rules and regulations are capable of continuing application,' were [the court] to limit review to the adoption of the rule without further judicial relief at the time of its application, [the court] 'would effectively deny many parties ultimately affected by a rule an opportunity to question its validity.'" *Id.*

Here, Plaintiff did not have the opportunity to comment on DOL's application or adoption of ESD's interpretation of the 25% rule or its acceptance of ESD's methodology, and thus exhaustion of these claims is not required.

C.      Likelihood of Success on the Merits; Serious Question Going to the Merits

Under the APA, a court may hold "unlawful and set aside" agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Under this standard, a court

> will not vacate an agency's decision unless it "has relied on factors which Congress had not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."

*Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 658 (2007) (quoting *Motor Vehicle Mfrs. Assn. of United States, Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983)). "Although [the court's] inquiry must be thorough, the standard of review is highly deferential; the agency's decision is 'entitled to a presumption of regularity,' and [the Court] may not substitute [its] judgment for that of the agency." *San Luis & Delta-Mendota Water*

*Auth. v. Jewell*, 747 F.3d 581, 601 (9th Cir. 2014) (quoting *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415–16 (1971)).

        1.      Mandatory injunction versus prohibitory injunction

        DOL says that Plaintiff seeks a mandatory injunction instead of a prohibitory one, and thus a higher standard applies.  Dkt. # 33 at 10.  "A prohibitory injunction prohibits a party from taking action and preserves the status quo pending a determination of the action on the merits.  A mandatory injunction orders a responsible party to take action."  *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878–79 (9th Cir. 2009) (internal citations and quotations omitted).  Mandatory injunctions are disfavored and "may not be 'granted unless extreme or very serious damage will result.'"  *Doe v. Snyder*, 28 F.4th 103, 106 (9th Cir. 2022) (quoting *Marlyn Nutraceuticals, Inc.*, 571 F.3d at 879).  Plaintiff responds that it is merely seeking a return to the status quo with the reinstatement of the 2020 prevailing wages for Washington.  Dkt. # 37 at 17.

        In *Torres-Hernandez v. DOL*, the court noted that a preliminary injunction "reverting to the prevailing wages from the 2018 survey serves to maintain the status quo and requires little hardship to Defendants," and thus is not a mandatory injunction.  No. 1:20-CV-03241-SMJ, 2021 WL 6274440, at *5 (E.D. Wash. Mar. 1, 2021).  Here, Plaintiff asks the Court to enjoin enforcement of parts DOL's new prevailing wage rules and revert to the prevailing wage findings from 2020, which are "the last prevailing wage findings in effect before the new methodology eliminated all prevailing wages."  Dkt. # 9 at 2.  Thus, Plaintiff asks the Court for a prohibitory injunction, stopping DOL from enforcing the rules and reverting to a prior status quo while the parties litigate the case.

1

2

3

    2.       One-Year Rule

    Plaintiff challenges the One-Year rule, which says that a prevailing wage is only "valid for 1 year after the wage is posted."  20 C.F.R. 655.120(c)(2).  Plaintiff says that the rule runs contrary to the stated purpose of the 8 U.S.C. § 1188, because in Washington it adversely affects domestic workers by depressing wages.  Dkt. # 9 at 23.  Plaintiff also says that the regulation is arbitrary and capricious because "DOL offers no explanation as to why it considers *no* prevailing wage preferable to allowing a prevailing wage to remain on the books until such time as a new prevailing wage finding has been published."  *Id.* at 22–23.  Plaintiff contends that DOL's refusal to do so cannot be squared with its stated rulemaking goal of "mak[ing] prevailing wage findings available where *the prevailing wage rate would be higher than the AEWR*."  87 Fed. Reg. at 61701 (emphasis added).

    While "courts should uphold reasonable and defensible constructions of an agency's enabling act, they must not rubber-stamp administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute."  *Arizona Cattle Growers' Ass'n v. U.S. Fish & Wildlife, Bureau of Land Mgmt.*, 273 F.3d 1229, 1236 (9th Cir. 2001) (internal citation and quotation omitted).  "Constructions that are contrary to clear Congressional intent or frustrate the policy that Congress sought to implement must be rejected. An agency may not ignore factors Congress explicitly required be taken into account."  *Earth Island Inst. v. Hogarth*, 494 F.3d 757, 765 (9th Cir. 2007).

    The relevant statute here provides:

    A petition to import an alien as an H–2A worker (as defined in subsection (i)(2)) may not be approved by the Attorney General unless the petitioner has applied to the Secretary of Labor for a certification that—

(A) there are not sufficient workers who are able, willing, and qualified, and who will be available at the time and place needed, to perform the labor or services involved in the petition, and

(B) the employment of the alien in such labor or services will not adversely affect the wages and working conditions of workers in the United States similarly employed.

8 U.S.C. § 1188(a)(1).  DOL has recognized that its regulation and administration of the H-2A program must "strike[] a balance between the programmatic goals of protecting job opportunities for U.S. workers and ensuring uniform enforcement of the terms and conditions and the need to provide flexibility for employer associations."  75 Fed. Reg. 6884, 6918 (Feb. 12, 2010); 88 Fed. Reg. at 12766; *see also Am. Fed'n of Lab. & Cong. of Indus. Orgs. (AFL-CIO) v. Dole,* 923 F.2d 182, 187 (D.C. Cir. 1991) ("The Department is obliged to balance the competing goals of the statute—providing an adequate labor supply and protecting the jobs of domestic workers.").  In its 2022 rulemaking, DOL stated that its goal was "to enhance worker protections while simplifying the program to facilitate compliance and administration."  87 Fed. Reg. at, 61702.  In managing these competing interests, DOL has recognized the importance of prevailing wages when agricultural workers are paid piece-rate wages.  88 Fed. Reg. at 12775.

Plaintiff argues that arbitrarily throwing out the prevailing wage after one year means, in practice, that there are fewer prevailing wage determinations because of the time it takes for DOL to certify the prevailing wages.  Dkt. # 9 at 23.

In their notice of proposed rulemaking, Defendants justified the new regulation by explaining that the "1-year validity period for prevailing wage rates [was] generally consistent with [DOL's prior] practice."  84 Fed. Reg. 36168, 36188 (July 26, 2019).  But in a declaration, Michele Besso, the Managing Attorney of the Farm Worker Unit of the Northwest Justice Project, declared that in his experience reviewing H-2A clearance orders since 2007, DOL

regularly kept prevailing wages for Washington posted for more than one year.[2]  Dkt. # 25 at 2. It appears DOL has overhauled the way it deals with older prevailing wages.  And in the rulemaking, DOL apparently failed to address the effect of this change on prevailing wages. This lack of consideration, especially with the agency's recognition of the importance of prevailing wages for protecting domestic farmworkers, appears arbitrary and capricious.

Defendants say that DOL "reasonably determined that the highest current wage rate available, *e.g.*, the AEWR, collective bargaining rate, *etc.*, was a preferable wage rate for both growers and workers as compared to a prevailing wage rate based on *stale and obsolete data*." Dkt. # 33 at 16 (emphasis added).  But DOL did not say that data that is more than one year old is "stale and obsolete."  Instead, DOL noted that it "proposes to maintain the current validity period with the goals of both basing prevailing wage rates on the most *recent and accurate data* and making prevailing wage rate findings available where the prevailing wage rate would be higher than the AEWR."  84 Fed. Reg. at 36188 (emphasis added).  This stated goal aligns with DOL's statutory mandate.  The issue, as discussed above, is that DOL did not address how the One-Year rule furthers its goal.  To the extent that DOL expressed concern that data that is more than one year old is stale and obsolete, "[t]his argument is precisely the type of '*post hoc* rationalization[ ]' . . . that [the Court is] forbidden to consider in conducting review under the APA" because the argument does not appear in the administrative record.  *Arrington v. Daniels*, 516 F.3d 1106, 1113 (9th Cir. 2008) (quoting *Burlington Truck Lines, Inc. v. U.S.,* 371 U.S. 156, 168 (1962)).

---

[2] While the Court generally cannot consider evidence outside the administrative record, the Court may consider "extra-record evidence[ ] if admission is necessary to determine 'whether the agency has considered all relevant factors and has explained its decision.'"  *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005) (quoting *Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996)).

1    Defendants also say that "it is simply not appropriate under the APA to use post-decision

2    outcomes to look back and attack the rationality of an agency's decision."  Dkt. # 33 at 16 (citing

3    *Ass's of Pac. Fisheries v. E.P.A.*, 615 F.2d 794, 811–12 (9th Cir. 1980)).  But DOL knew about

4    the importance of prevailing wage determinations for the agricultural industry long before it

5    promulgated its final rule.  Its apparent failure to consider the effect of this rule given its

6    statutory mandate and stated goal of protecting domestic workers appears arbitrary and

7    capricious.  Thus, Plaintiff has shown a likelihood of success on the merits of its challenge to the

8    One-Year rule.  And to be sure, it has shown a serious question as to the merits.

9        3.    25% Rule and ESD's Population Survey Methodology

10    Plaintiff does not provide the Court with sufficient information about the agency's

11    decision-making process in its challenges to: (1) DOL's application and adoption of ESD's

12    interpretation of the 25% rule; and (2) DOL's approval of ESD's methodology for conducting its

13    population estimate under the 2022 regulations.  To determine whether Plaintiff has met its

14    burden of showing a likelihood of success on the merits—or a serious question going to the

15    merits—the Court must determine whether the agency decisions at issue "relied on factors which

16    Congress had not intended it to consider, entirely failed to consider an important aspect of the

17    problem, offered an explanation for its decision that runs counter to the evidence before the

18    agency, or is so implausible that it could not be ascribed to a difference in view or the product of

19    agency expertise."  *Nat'l Ass'n of Home Builders*, 551 U.S. at 658.  Such review under the APA

20    is limited to documents in the administrative record.  *See Fla. Power & Light Co. v. Lorion*, 470

21    U.S. 729, 743 (1985).  The administrative record has not been filed.  Still, the Court may rely on

22    agency decision-making documents that will be in the administrative record, such as notices of

23    proposed rulemaking or letters or emails that describe the agency's decision-making process.  *Cf.*

24

*Torres-Hernandez*, 2021 WL 6274440, at *8 (looking to agency documents in determining a likelihood of success on the merits of an APA claim).  In the filings, the Court does not see materials reflecting the agency's decision-making process with respect to the actions at issue.  Therefore, the Court cannot determine whether these agency actions were arbitrary and capricious.  As to those claims, the Court DENIES the motion without prejudice.

D.     Irreparable Harm

To obtain a preliminary injunction, Plaintiff must show that its members are "likely to suffer irreparable harm in the absence of" the preliminary injunction.  *Stormans, Inc.*, 586 F.3d at 1127 (quoting *Winter,* 555 U.S. at 20).  Plaintiff argues that farmworkers in Washington are currently suffering and will continue to suffer irreparable harm because their wages are depressed below market rates.

Plaintiffs must establish that the risk of irreparable harm is "likely, not just possible." *All. for the Wild Rockies*, 632 F.3d at 1131.  "Irreparable harm is traditionally defined as harm for which there is no adequate legal remedy, such as an award of damages." *Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014).  While economic harm usually does not rise to the level of irreparable harm, courts have found that decreased wages or loss of a job can be irreparable harm "when an employee is so poor that if she stopped working, the consequences would be severe." *See Lee v. Christian Coal. of Am., Inc.*, 160 F. Supp. 2d 14, 31 (D.D.C. 2001); *Torres-Hernandez*, 2021 WL 6274440, at *10 (determining that "a decrease in wages [for farmworkers] has a profound and immediate impact on their livelihood" and is an irreparable harm); *United Farm Workers v. United States Dep't of Lab.*, 509 F. Supp. 3d 1225, 1249 (E.D. Cal. 2020) (determining that irreparable harm occurs when farmworker wages are reduced and noting that "[f]armworkers who already struggle to provide for the necessities of life will find

that this wage depression will only place further financial strain on their ability to obtain food, shelter, and other necessities).

Here, Plaintiff has shown that farmworkers in Washington, including its members, will suffer irreparable injury.  The declarations make clear that Washington farmworkers earn more wages when working at a piece-rate pay system versus an hourly pay system, and that these workers rely on these wages to survive.  *See* Dkt. # 10 at 4.  Because of the seasonal nature of the work, farmworkers in Washington cannot harvest year around, and they must earn enough during the season to support themselves and their families for the year.  *Id.*  José Ramírez, the President of FUJ, stated in a declaration that:

> When wages fall, workers who already live in poverty are forced to make choices between food and rent, medicine and vehicle payments, or utility payments and children's clothes. Many FUJ members would not be able to support themselves and their families through the winter months, in which work is scarce and not as well paid, if their wages in major harvests were cut by 5% or more.

Dkt. # 10 at 4.

DOL recognizes that when foreign workers are paid wages lower than the industry standard in a particular area, wages for domestic workers decrease.  75 Fed. Reg. at 6893.  The agency said:

> The requirement that imported foreign temporary workers be paid no less than the highest of the AEWR, the local prevailing wage, the collectively bargained wage, or the applicable legal minimum wage ensures that domestic workers receive the greatest potential protection from adverse effects on their wages and working conditions, including the adverse effect of being denied access to the opportunity to earn a higher equilibrium wage that would have resulted as the market (perhaps slowly) adjusted in the absence of the guest workers.

75 Fed. Reg. at 6893.  "In cases in which the AEWR is not higher than the prevailing wage, minimum wage, or collectively bargained wage, incumbent domestic workers would be disadvantaged by the use of the AEWR instead of the higher alternative."  *Id.*

1

2    Also, even if Plaintiff ultimately prevails, there is no recourse under the APA for their

3    lost wages due to DOL's failure to publish prevailing wages for Washington for 2024.  *See* 5

4    U.S.C. § 702 (no monetary damages available under the APA); *E. Bay Sanctuary Covenant v.*

5    *Biden*, 993 F.3d 640, 677 (9th Cir. 2021) ("But where parties cannot typically recover monetary

6    damages flowing from their injury—as is often the case in APA cases—economic harm can be

7    considered irreparable.").

8        Defendants argue that the harm to workers is speculative because employers would still

9    offer piece-rate wages to encourage harvesting fruit quickly.[3]  Dkt. # 33 at 20.  Plaintiff

10   submitted an expert report by Philip Martin, a Professor Emeritus of Agricultural and Resource

11   Economics at University of California, Davis, that rebuts this point.  The report explains that

12   piece-rate wages are just one way to ensure the efficiency of workers.  Dkt. # 18-1 at 3–4.  It

13   notes that, unlike domestic workers, "H-2A workers can be motivated to work fast by non-wage

14   incentives such as the threat of termination and loss of the legal right to work in the US." *Id.* at

15   4.  And the report states that "[i]f piece rate wages are replaced by the hourly minimum wage or

16   AEWR [for H-2A workers], average hourly earnings are likely to fall" for domestic workers

17   even if some employers still pay piece rate wages because the supply of workers seeking piece

18   rate jobs will increase. *Id.* at 2.  Plaintiff has shown that the harm to domestic workers is more

19   than speculative.

20        Defendants also argue that, as a backstop, the domestic farmworkers would get paid

21   AEWR rates.  *Id.*  This argument is unpersuasive, as DOL and the Ninth Circuit have recognized

---

[3] Defendants also argue that the harm is speculative because "it appears most employers in Washington are already offering piece rates."  Dkt. # 33 at 20 (citing Dkt. # 36 at 2).  Plaintiff counters that H-2A employers are offering contracts "that make[] piece-rate promises illusory."  Dkt. # 37 at 14.  Plaintiff submitted work orders for the 2024 season to illustrate this point.  Dkt. # 20-28.  Plaintiff also points out that DOL's statement is misleading because it accounts only for contracts that began in June 2024.  Dkt. # 37 at 15 n.7.

the importance of prevailing wages over the lower AEWR wages in the agricultural industry.  88 Fed. Reg. at 12775; *Torres-Hernandez*, 2024 WL 2559562, at *1.

Last, Defendants argue that Plaintiff has manufactured a sense of urgency by filing this lawsuit just before harvest starts, when it could have filed it earlier.  Dkt. # 33 at 19.  They argue that Plaintiff's delay in filing this action undercuts its claim of irreparable injury.  *Id.*  While "[i]t is generally recognized that a long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm," a delay is not a dispositive factor in determining irreparable harm.  *Cuviello v. City of Vallejo*, 944 F.3d 816, 833 (9th Cir. 2019).  "Usually, delay is but a single factor to consider in evaluating irreparable injury"; indeed, "courts are loath to withhold relief *solely on that ground*."  *Id.* (quoting *Arc of Cal. v. Douglas*, 757 F.3d 975, (9th Cir. 2014) (emphasis added)).  Here, the delay is not dispositive, and the potential harm to the farmworkers is significant.

Thus, Plaintiff has shown that domestic farmworkers, including its members, will likely suffer irreparable harm without a preliminary injunction.[4]

E.     Balance of Equities and Public Interest

Last, Plaintiff must show that "the balance of equities tips in [its] favor" and that a preliminary injunction "is in the public interest."  *Stormans, Inc. v. Selecky*, 586 F.3d at 1127 (quoting *Winter,* 555 U.S. at 20).  Because the government is the nonmoving party, the Court considers these two factors together.  *Baird*, 81 F.4th at 1040.

In *Torres-Hernandez*, the Eastern District of Washington recognized that "[d]epression of local farmworker wages causes the exact harm that Congress sought to prevent in the H-2A program.  And the public interest is served by stability in farmworker wages."  2021 WL

---

[4] And it appears Plaintiff has also satisfied the higher standard for mandatory injunctions.

6274440, at *11.  The Court agrees that a preliminary injunction is in the public interest for the farm industry in general.  There is also a public interest in the lawful administration of government agencies.  *See League of Women Voters v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016).

Defendants argue that a preliminary injunction is not in the best interest of foreign workers and farmers.  Dkt. # 33 at 21.  But the return of 2020 prevailing wages does not appear to represent a significant hardship for farmers who have already paid that rate in previous years.  Further, the return of such wages may benefit some foreign workers.

For these reasons, the Court concludes that the balance of equities and the public interest tip sharply in favor of a preliminary injunction.

## IV
### CONCLUSION

For the above reasons, the Court GRANTS Plaintiff's Motion for Preliminary Injunction as to 20 C.F.R. §655.120(c)(2), the One-Year rule.  The Court DENIES without prejudice Plaintiff's motion as to 20 C.F.R. § 655.120(c)(1)(ix), the 25% rule, and its claims regarding ESD's population estimate methodology.  The Court ORDERS that:

1.  DOL is ENJOINED from enforcing 20 C.F.R. §655.120(c)(2), the One-Year rule, as to prevailing wages for Washington State.

2.  DOL is ORDERED to REINSTATE and enforce the 2020-Survey prevailing wage rates, published in January 2022, until judgment is entered in this case.

3.  The Court declines to require a bond.  *See Walczak v. EPL Prolong, Inc.*, 198 F.3d 725, 733 (9th Cir. 1999) ("The district court is afforded wide discretion in setting the amount of the bond."); *Gorbach v. Reno*, 219 F.3d 1087, 1092 (9th Cir. 2000) (finding that the bond amount may be zero if there is no evidence the party will suffer damages from the injunction).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

4.  The preliminary injunction is effective on the day this Order is filed and will remain in effect until judgment is entered in this case.

Dated this 2nd day of July, 2024.

John H. Chun
United States District Judge

ORDER - 22