**The Honorable John H. Chun**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| FAMILIAS UNIDAS POR LA JUSTICIA, AFL-CIO, a labor organization; <br><br> Plaintiff, <br><br> vs. <br><br> UNITED STATES DEPARTMENT OF LABOR, and JULIE SU in her official capacity Acting United States Secretary of Labor, <br><br> and <br><br> WASHINGTON STATE EMPLOYMENT SECURITY DEPARTMENT, and CAMI FEEK in her official capacity as Commissioner of Employment Security, <br><br> Defendants. | No. 2:24-cv-00637-JHC <br><br> FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |

## I.    PRELIMINARY STATEMENT

1.    Plaintiff Familias Unidas por la Justicia, AFL-CIO (Familias), a Washington-State farmworker union, files this Administrative Procedure Act (APA) case against the United States Department of Labor challenging the agency's 2022 prevailing wage rules related to the federal "H-2A" temporary agricultural visa program as well as certain policies and practices implementing those prevailing wage regulations. The challenged rules, policies and practices are arbitrary, capricious, and contrary to law and are adversely affecting the wages and working

FIRST AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF - 1

conditions for farmworkers throughout Washington. Washington State Employment Security Department is named as a Rule 19 defendant pursuant to the Court's order of October 2, 2024. ESD Commissioner Feek in her official capacity is also named as a Rule 19 defendant.

2.     Familias seeks preliminary and final declaratory and injunctive relief to prevent DOL's unlawful actions from drastically reducing the wages of Washington farmworkers and to protect those wages until prevailing wage findings that comply with federal law can be made. To the extent that ESD's or Commissioner Feek's actions are necessary to effectuate relief, Familias seeks relief against these Defendants.

## II.    JURISDICTION AND VENUE

3.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and §2201(a) (declaratory relief). Jurisdiction is also proper under the judicial review provision of the Administrative Procedure Act, 5 U.S.C. § 702.

4.     Declaratory and injunctive relief is sought consistent with 5 U.S.C. §§ 705 and 706 and as authorized in 28 U.S.C. §§ 2201 and 2202.

5.     The proper venue for this action is in the Western District of Washington pursuant to 28 U.S.C. § 1391(e)(1)(C) because DOL Defendants are an agency of the United States and an officer acting in her official capacity, Plaintiff Familias Unidas por la Justicia resides in the District and has farmworker members in the district, and no real property is involved in this action.

## III.    PARTIES

6.     Plaintiff Familias Unidas por la Justicia is a farmworker labor union headquartered in Skagit County actively engaged in advancing the economic interests of its farmworker members.

FIRST AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF - 2

7.      Defendant Julie Su is sued in her official capacity as the Acting Secretary of Labor who is charged with the supervision and management of all decisions and actions within the United States Department of Labor (DOL).

8.      Defendant DOL is a federal agency that is responsible for developing, implementing, and administering the wage system for the H-2A program, including the 2022 prevailing wages rules. Defendants DOL and Acting Secretary Su are collectively referred to below as "DOL."

9.      Defendant ESD is an agency of the State of Washington. It is designated as the State Workforce Agency (SWA) within the Wagner-Peyser interstate job order system. For purposes of the H-2A temporary agricultural visa system, it is responsible, among other things, for conducting prevailing wage surveys for agriculture in Washington based on federal statutory and regulatory requirements from DOL.

10.     Defendant Cami Feek is the Commissioner of the Washington State Employment Security Department (ESD) and is charged with the supervision and management of all decisions and actions within ESD. Plaintiffs sue Commissioner Feek in her official capacity. Defendants ESD and Commissioner Feek are collectively referred to below as "ESD."

## IV.    STATEMENT OF FACTS

### A.    Familias Background

11.     Plaintiff Familias is affiliated with the Washington State Labor Council, AFL-CIO and has approximately 900 members throughout Washington, including both domestic and H-2A workers.

FIRST AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF - 3

12.    Familias has members who are U.S. workers who participate in the fruit harvest labor market in Washington, including in the Western District of Washington.

**B.    Statutory and Regulatory History**

13.    The H-2A program allows U.S. employers to bring foreign nationals to the United States to fill temporary agricultural jobs only "if unemployed persons capable of performing such service or labor cannot be found in this country." 8 U.S.C. § 1101(a)(15)(H)(ii)(A).

14.    The Department of Homeland Security is authorized to issue H-2A visas on the petition of the requesting employer, after consulting with DOL. 8 U.S.C. § 1184(c).

15.    By statute, no H-2A visas can be issued unless DOL certifies that  that "the employment of [foreign] labor . . . will not adversely affect the wages and working conditions of workers in the United States similarly employed," and that "there are not sufficient workers who are able, willing, and qualified, and who will be available at the time and place needed, to perform the labor or services" requested. 8 U.S.C. § 1188(a)(1).

16.    To fulfill its duty to make the certification required by the statute, and to prevent adverse effects on the wages of domestic farmworkers, DOL regulations have long required that employers seeking H-2A visas offer and pay the highest of the hourly AEWR[1], the prevailing wage rate, the agreed-upon collective bargaining wage, or the Federal or State minimum wage. 20 C.F.R. § 655.120(a).

17.    In Washington, there are very few collectively bargained farm wages, and the State and federal minimum wage are both lower than the AEWR; therefore, as a practical matter,

---

[1] The AEWR is the minimum hourly wage for the H-2A program and is set annually by DOL for each state.

FIRST AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF - 4

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

20 C.F.R. § 655.120(a) requires employers seeking to import foreign workers to offer and pay the higher of the prevailing wage or the AEWR.

18.    DOL requires employers to pay the highest of the listed wages to "ensure[] that domestic [farm]workers receive the greatest potential protection from the adverse effects on their wages and working conditions" caused by the importation of foreign workers. 75 Fed. Reg. 6884, 6893 (Feb. 12, 2010); *see generally id.* at 6891-93.

19.    When the prevailing wage for a crop activity is higher than the AEWR, "domestic workers would be disadvantaged by the use of the AEWR instead of the higher alternative." *Id.* at 6893; *see also* 6895 fn 9.

20.    The prevailing wage serves "as an important protection for workers in crop and agricultural activities that offer piece rate pay or higher hourly rates than the AEWR." 88 Fed. Reg. 12760, 12775 (Feb. 28, 2023).

21.    Title 8 U.S.C. §1188(a)(1) and DOL's regulations implementing that statute impose a duty upon DOL to ensure that prevailing wages in crop activities that are higher than the AEWR are protected before issuing the certification required by §1188(a)(1).

22.    Since 1981, if not before, DOL determined the prevailing wage in crop activities using the methodology set forth in the sub-regulatory "Handbook ETA 385." 87 Fed. Reg. 61660, 61679 (Oct. 12, 2022).

23.    DOL funds state workforce agencies (SWAs) to conduct prevailing wage surveys at least once a year using DOL's guidelines and to report the findings to DOL for approval.

24.    The SWA in Washington is the Washington State Employment Security Department (ESD).

FIRST AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF - 5

25.    Because H-2A use in Washington did not begin until the early 2000s, ESD conducted its first prevailing wage surveys for H-2A in 2006.

26.    From 2006 to 2018, prevailing wage surveys performed by ESD determined that piece-rate wages (pay by the pound or bin of fruit) were the prevailing wages for the harvest of most common varieties of apples, cherries, and pears; in the years in which there was a blueberry harvest finding, blueberry was predominately found to be harvested at a piece rate.

27.    In the 2019 survey, the number of fruit harvest season prevailing piece-rate findings made by ESD fell from 21 to 6. DOL published these findings as the rates applicable to the 2021 season. [2]

28.    On information and belief, this precipitous drop in prevailing piece rate wage findings was caused by a number of factors, including a sharp decline in survey responses from agricultural employers, manipulation of survey responses by the agricultural industry, and methodological missteps by ESD and DOL under prior prevailing wage guidance.

29.    Farmworkers sued DOL regarding the 2019 employer survey findings and obtained a preliminary injunction requiring DOL to continue to use the prevailing wages derived from the 2018 employer wage survey during 2021 and subsequent seasons until DOL conducted a new, non-arbitrary prevailing wage survey. Order Granting Plaintiffs' Revised Motion for

---

[2] Because surveys are done late in the year, and because analysis of the results takes months, survey results are never published in the same year the survey responses are collected and are usually released by ESD in preliminary form in early summer of the year after the survey was done.

FIRST AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF - 6

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

Preliminary Injunction, *Torres Hernandez v. USDOL, et al.*, No. 1:20-cv-03241-SMJ (E.D. Wash., March 1, 2020).

30.     The 2020 employer wage survey conducted by ESD reported more prevailing piece-rate findings for fruit harvest than the 2019 survey had, notably for *general* apple, berry, and cherry harvests. Those general prevailing wage findings set a minimum for all varieties within the crop activity.

31.     The parties jointly asked the court to modify the injunction to allow DOL to proceed with publication of the 2020 prevailing wage findings.

32.     DOL published the prevailing wages derived from the 2020 employer wage survey on January 24, 2022, and, pursuant to the agreed modified injunction, those prevailing wages were applicable to harvest work performed after that date.

**C.     DOL Adopted its New 2022 Prevailing Wage Survey Regulations to Increase Prevailing Wage Findings and Protect Domestic Workers from Wage Stagnation Due to the Importation of Foreign H-2A Workers but those Regulations Have Had the Opposite Effect**

33.     In the fall of 2022, DOL published new prevailing wage regulations, which took effect on November 14, 2022. 87 Fed. Reg. 61660 (Oct. 12, 2022).

34.     DOL acknowledged in the notice of proposed rulemaking that resulted in the November 2022 final regulations that "concerns about wage depression from the importation of foreign workers [under the H-2A visa program] are particularly acute because access to an unlimited number of foreign workers in a particular labor market and crop activity or agricultural activity could cause the prevailing wages of workers in the United States similarly employed to stagnate." 84 Fed. Reg. 36168, 36180 (July 26, 2019).

35.     DOL proposed changes to its prevailing wage regulations to further the goal of "rigorously enforc[ing] and administer[ing]" the laws governing entry of nonimmigrant H-2A

FIRST AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF - 7

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

workers into the United States ''[i]n order to create higher wages and employment rates for workers in the United States, and to protect their economic interests.''84 Fed. Reg. 36168, 36169 (July 26, 2019).

36.    DOL proposed changes to its prevailing wage regulations to "modernize the prevailing wage methodology and empower States to produce a greater number of reliable prevailing wage surveys results." 84 Fed. Reg. 36168, 36179, 85 (July 26, 2019).

37.    DOL proposed changes to its prevailing wage regulations to "work with the States through their annual grant plans to focus prevailing wage surveys on those crop activities and agricultural activities where prevailing wage surveys are most useful to protect the wages of U.S. workers, *including for activities for which employers commonly pay based on a piece rate* and when State agencies know based on past experience that prevailing wage surveys commonly result in hourly wages higher than the AEWR." 84 Fed. Reg. 36168, 36180 (July 26, 2019) (emphasis added).

38.    DOL proposed changes to its prevailing wage regulations because its previous "standards often result[ed] in 'no finding' from a prevailing wage survey [which is] both a waste of government resources and fail[s] to meet the goal of producing reliable and accurate prevailing wage rates." 84 Fed. Reg. 36168, 36187 (July 26, 2019).

39.    DOL proposed changes to its prevailing wage regulations because it was "concerned that employers may be incentivized not to respond to a survey under the existing methodology because [DOL] does not issue a prevailing wage if the sample is too small." By requiring smaller sample sizes in its survey methodology, DOL hoped to see more "prevailing wage[s] being issued than under the current methodology." 84 Fed. Reg. 36168, 36187 (July 26, 2019).

FIRST AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF - 8

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

40.    DOL proposed changes to its prevailing wage regulations to "broaden the categories of State entities that may conduct prevailing wage surveys to encourage more prevailing wage surveys to be conducted by reliable sources" including State colleges and universities. 84 Fed. Reg. 36168, 36186 (July 26, 2019).

41.    Although ESD submitted the results of its 2021 Survey (conducted under the prior methodology) to DOL in mid-2022, it withdrew those results after the November 2022 regulations were issued and indicated that it would re-calculate prevailing wages from the 2021 survey using the new methodology.

42.    In the meantime, DOL continued to list in its official Agricultural Online Wage Library (AOWL) the 2020 prevailing wage results as applicable to H-2A applications during the 2023 season.

43.    In May 2023, DOL, without explanation or opportunity for comment, stopped listing the 2020 prevailing wage rates as the rates applicable to H-2A applications for 2023, leaving no prevailing wage protections at all for Washington State workers.

44.    In May 2023, ESD notified DOL that it had changed course and would <u>not</u> submit its findings from the 2021 survey based on the methodology in the new rule. Instead, it indicated that it would apply the new methodology to calculate prevailing wages from the results of the 2022 survey.

45.    In July 2023, ESD sent DOL its findings based on the 2022 survey. Those results made only four prevailing wage findings for fruit harvest—two for cherry and two for pear.

46.    The number of harvest prevailing wage findings from the surveys performed in 2018 through 2022 (including the preliminary 2021 findings calculated under the new rule but not submitted to DOL for approval) are represented in the bar graph below.

FIRST AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF - 9



47.    In the 10 months since ESD provided DOL with its 2022 survey findings, DOL has neither rejected nor validated and published those findings.

48.    As a result, Washington State workers have been without prevailing wage protections for nearly a year and DOL has given no indication when, if ever, it will publish prevailing wage findings.

49.    During the one-year period that Washington State workers have had no prevailing wage protections, more than two hundred (200) petitions for H-2A harvest workers in Washington State have been certified by DOL.

FIRST AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF - 10

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

**D.  DOL's Prevailing Wage Methodology Runs Counter to DOL's Express Purposes for Changing the Regulations**

**1.  20 CFR § 655.120(c)(1)(ix)—the "25% Rule"—Arbitrarily Eliminates Virtually All Prevailing Wage Determinations for the State's Largest Crops.**

50.    The reason that ESD's 2022 survey found almost no prevailing piece rates and, on information and belief, the reason DOL has not published the 2022 survey findings, is because of the arbitrary and capricious nature of the 2022 prevailing wage regulations and DOL's policies for implementing those regulations in Washington State. Contrary to their stated purpose, the regulations and DOL's policies implementing the regulations make it virtually impossible to find prevailing wage rates, particularly prevailing piece rates.

51.    The particular provisions and policies that are causing this effect are set forth below.

**2.  20 C.F.R. § 655.120(c)(2) Arbitrarily Eliminates Prevailing Wages After One Year.**

52.    The new prevailing wage methodology regulations also include a rule that prevailing wages expire one year after being posted on DOL's website. 20 CFR § 655.120(c)(2).

53.    The explanation that DOL offered for this "One-Year Rule" was that it would ensure that prevailing wages were based "on the most recent data." 87 Fed. Reg. 61660, 61701 (Oct. 12, 2022). Implicit in that explanation was the promise that prevailing wages would be set each year to replace the ones that were expiring.

54.    However, in practice DOL has demonstrated that it has no intention to set prevailing rates each year and that the One-Year Rule simply operates to leave U.S. workers with no wage protections at all if it chooses not to publish new prevailing wages.

FIRST AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF - 11

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

55.     Pursuant to the Rule, DOL expired the 2020 survey prevailing wages effective January 2023, but has done nothing to replace those expired prevailing wages in the seventeen (17) months since that time.

56.     In the past, DOL had a consistent past practice of leaving prevailing wages published until such time as new prevailing wages were published. Handbook 385 requires that surveys be conducted "often enough . . . to permit current prevailing wage rate findings to be made applicable to the employment of the agricultural workers" and that "[s]hould a survey not result in a prevailing wage rate finding, another survey should be made at the earliest appropriate time."

57.     Because the regulations implied that new prevailing wages, based on the most recent data, would be issued each year, DOL saw no need to explain, and did not explain why a prevailing wage rate should expire after a year *even in the absence of a new prevailing wage finding. Nor did it explain why it was abandoning its past practice of continuing to enforce a prevailing wage finding until such time as a new finding is made.*

### 3.   DOL Permits ESD to Use an Unnecessary and Overly Complex Methodology to Estimate Whether There Are At Least 5 Employers and 30 Workers in a Crop Activity.

58.     Prior to the 2022 regulations, DOL required that, in order to find a prevailing wage, the survey data collected for a crop activity had to exceed a certain percentage of workers employed in that crop activity. Pursuant to that policy, ESD first had to estimate the number of workers working in that crop activity statewide, and then it had to ensure that 15% of those workers were represented in the growers' responses to the wage survey for that crop activity. The most common threshold was a 15% sample size, and this rule was known as the "15% rule."

FIRST AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF - 12

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

59.     In order to comply with the 15% rule, ESD developed a complex methodology designed to estimate the population of workers who work in each crop activity (e.g. "gala apple harvest"). This methodology, first used by ESD in 2018, used a statistical method known as "capture-recapture," which is most commonly used to estimate wildlife populations, such as fish in a lake.

60.     This methodology relies on analysis of survey respondents' responses in previous years and on "raking algorithms" to produce estimates of the percentage of the total population represented by each respondent. It requires a certain minimum number of responses in order to be implemented, and those responses must come from a certain ratio of "small, medium, and large" employers, as defined by ESD.

61.     DOL's new 2022 regulations specifically eliminated the 15% rule.

62.     The 2022 regulations replaced that rule with a much simpler population estimate. Under the new rules, the SWA need only estimate whether there are at least 30 workers and 5 employers in a crop activity, 20 C.F.R. §655.120(c)(1)(vii) and (viii), as that affects the number of employers and workers that must be reported in the survey responses.

63.     ESD has chosen to use the same capture-recapture statistical methodology it used before the 2022 regulations took effect in order to make the simple determination of whether there are at least 30 workers and five employers in a crop activity.

64.     DOL indicated that these simple estimates could be made based upon such things as "UI databases, open and closed job orders, State labor market information, and information provided by State agricultural extension offices. . ." 87 Fed. Reg. at 61694.

65.     On information and belief, DOL has authorized ESD use of the capture-recapture methodology.

FIRST AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF - 13

66.    ESD refuses to make prevailing wage findings when there is insufficient data necessary to carry out the capture-recapture analysis—an outcome that occurs frequently.

67.    ESD's use of its capture/recapture population estimate methodology, including the "Small, Medium, Large" grower response requirement, has resulted in harvest of dozens of crops having no prevailing wage finding from the 2022 survey, including: Braeburn, Jonagold, and Jazz apples; Rainier, Lapin, and Skeena cherries; Bosc, D'Anjou, and Asian pears; all berries (blueberries, strawberries, raspberries, and blackberries).

68.    DOL's approval of ESD's use of the capture/recapture methodology to estimate whether there are 5 employers and 30 workers in a crop activity encourages employer manipulation of the survey by giving an incentive to employers not to respond to the survey and thereby preclude ESD from calculating prevailing wage findings.

69.    DOL's approval of ESD's use of that methodology results in direct harm to Washington farmworkers as the "no finding" that results when the methodology cannot be applied to a crop activity allows agricultural employers to pay lower, minimum hourly wage AEWR rates instead of higher piece-rate wages for that activity.

**4.    DOL's Approval of the Use of ESD's Population Estimate Methodology in the Calculation of Prevailing Wages Violates the Controlling Regulation.**

70.    20 C.F.R. 655.120(c)(1)(v), effective in November 2022, requires that for a prevailing wage finding to be valid, "[t]he survey [must] report the average wage of U.S. workers in the crop activity or agricultural activity and distinct work task(s), if applicable, and geographic area using the unit of pay used to compensate the largest number of U.S. workers **whose wages are reported in the survey**," (emphasis added).

71.    In direct violation of this regulation, ESD uses its complex capture/recapture methodology to weight the data in employer responses before calculating the prevailing wage

FIRST AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF - 14

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

from the weighted data. That is, rather than determine the prevailing wage based on the workers represented by each survey response as § 655.120(c)(1)(v) requires, ESD mathematically manipulates the data to determine the estimated number of workers in the entire population represented by each employer's response and then determines the prevailing wage based on that manipulated data.

72.     In some cases, using the manipulated number of workers rather than the number of workers actually reported on the surveys causes different units of pay to be determined to be the most common, resulting in elimination of piece-rate prevailing wage findings or in no prevailing wage findings at all.

73.     In one case ESD's manipulation of the survey data resulted in the most common method of payment being represented by a single employer and that one single employer's wage was then the reported prevailing wage for the crop activity, condemning the data to discard by DOL's application of the 5 employer and 25% rules.

74.     DOL has instructed ESD that its manipulation of the survey responses and calculation of the prevailing wage based on the manipulated data rather than the actual survey data is a valid method of calculation under the regulations.

### 5. 20 CFR § 655.120(c)(1)(viii)—the "5 Employer Rule"—Arbitrarily Eliminates Prevailing Wage Determinations.

75.     Pursuant DOL's 2022 prevailing wage regulation 20 CFR § 655.120(c)(1)(vii), effective in November 2022, "[w]here the estimated universe of employers is at least five, the survey includes wages of U.S. workers employed by at least five employers in the unit of pay used to compensate the largest number of U.S. workers whose wages are reported in the survey. Where the estimated universe of employers is less than five, the survey includes wages of U.S. workers employed by all such employers."

FIRST AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF - 15

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

76. According to ESD's 2022 survey findings, DOL's "5 Employer Rule" found in 20 CFR § 655.120(c)(1)(viii) eliminated prevailing wage findings for Fuji, Red Delicious, and Granny Smith apples.

77. According to ESD's 2022 survey data, 42 employers responded to the Fuji harvest survey and 69% reported paying a piece-rate wage.

78. According to ESD's 2022 survey data, 33 employers responded to the Red Delicious harvest survey and 85% reported paying a piece-rate wage.

79. According to ESD's 2022 survey data, 35 employers responded to the Granny Smith harvest survey and 77% reported paying a piece-rate wage.

80. For Fuji, Red Delicious, and Granny Smith apples, ESD determined the majority method of pay was a piece rate wage that contained wage information from only one employer who reported the company was "not sure" of its own bin size.

81. Because ESD created an entirely separate wage category with only one employer in the majority method of pay, the crop activity was guaranteed to fail the "5 Employer Rule."

82. The Fuji, Red Delicious, and Granny Smith harvest surveys failed the "5 Employer Rule" because the universe for each apple variety was more than five employers, however, ESD determined the unit of pay used to compensate the top method of pay only had one employer so there were not "at least five employers in the unit of pay."

83. For Fuji, Red Delicious, and Granny Smith apples, large amounts of survey data were entirely disregarded, and ESD did not make a finding.

84. The application of the "5 Employer Rule" in 20 C.F.R. § 655.120(c)(1)(viii) causes DOL to arbitrarily disregard statistically valid data and to unnecessarily fail to make

FIRST AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF - 16

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

prevailing wage findings, thereby failing to protect the wages of local workers who normally work at piece rates in the open labor market.

85. The 5 Employer Rule encourages employer manipulation of the survey by giving an incentive to employers not to respond to the survey.

86. Elimination of survey data based on the "5 Employer Rule" results in direct harm to Washington farmworkers as prevailing piece-rate wages are discarded and a "no finding" allows agricultural employers to pay lower, minimum hourly wage AEWR rates instead of higher piece-rate wages.

**6. DOL Allows Wages that Have Been Depressed by the H-2A System to Taint Prevailing Wage Findings.**

87. DOL made it clear throughout its new prevailing wage regulation process that "wage surveys include only wages of U.S. workers" and should not be tainted by H-2A wages.

88. The implication of DOL's statement that the survey should gather wage data paid to U.S. workers is that these are wages offered and paid on the open market, not wages U.S. workers are forced to take due to the influx of thousands of foreign H-2A workers.

89. ESD's 2022 agricultural employer harvest wage survey included responses from large agricultural employers who likely use the H-2A visa program and hired hundreds of foreign agricultural workers in 2022.

90. Despite the overwhelming evidence that agricultural employers offer and pay piece-rate wages to harvest fruit crops, several large employers reported they paid $17.41 an hour to harvest fruit in 2022.

91. In 2022, $17.41 was the minimum wage for the H-2A program (the AEWR).

92. On information and belief, the vast majority of growers reporting wages equal to the AEWR on the survey are H-2A growers.

FIRST AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF - 17

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

93.    A prime example of this arbitrary acceptance hourly wages from H-2A growers is evident in ESD's use of DOL's new regulations to calculate the prevailing wage for the harvest of Gala apples where four agricultural employers reported paying $17.41 an hour—one of which reported it employed 450 domestic workers at that wage.

94.    According to ESD's data provided to DOL, the four employers who reported paying the H-2A minimum hourly wage to harvest Gala apples reported employing a total of 684 workers—81% of reported workers earning hourly wage.

95.    There is no evidence ESD or DOL ever questioned the validity of those AEWR wage submissions by agricultural employers.

96.    The inclusion of this large amount of hourly wage data from H-2A growers caused ESD to initially conclude that hourly wages were the prevailing wage rate for Gala apples.

97.    If ESD had removed this hourly wage data from H-2A growers, it would have been left with a total of 15 employers reporting hourly wages in the Gala harvest employing less than 200 workers.

98.    ESD made a finding that hourly was the majority method of pay even though 47 agricultural employers reported paying piece-rate wages to 884 domestic workers to harvest Gala apples in 2022.

99.    On information and belief, the inclusion of data from H-2A growers is harming Washington workers by causing adverse effect on their wages and working conditions.

FIRST AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF - 18

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

**7.  DOL Arbitrarily Permits ESD to Eliminate Piece-rate Survey Data by Creating Multiple Piece-rate "Units of Pay."**

100.    The new prevailing wage methodology requires SWAs to divide survey results by unit of pay with the most common unit of pay used to compensate the largest number of workers among those reported on the survey.

101.    DOL's methodology requires pay by the hour to be segregated from pay by the piece as different methods of payment, but further provides that piece rates that are readily convertible to a common unit (i.e. different sizes of bins) be treated as the same method of payment.

102.    But DOL's methodology requires piece rates and piece rates with hourly guarantees to be segregated as different method of payment -- i.e. it requires $2.00/box to be treated as a distinct method of payment from $2.00/box with an hourly guarantee as a floor to the piece rate.

103.    As a result of this policy, it is possible that even though a large majority of the workers on the survey responses are paid a piece rate with or without a guarantee, an hourly rate (paid to a minority of the workers) will be deemed to be the prevailing rate. For example, if 66% of all workers are paid a piece rate, with 33% of the reported workers paid by the piece and another 33% paid at a piece rate with an hourly guarantee, and the remaining 34% of workers are paid by the hour, DOL's policy would deem the hourly rate the prevailing rate.

104.    In the past, DOL has regularly certified sets of prevailing wage findings in which ESD has fractured piece-rate pay into different sub-categories as part of its analysis.

105.    ESD applied this methodology, with DOL's approval, in analyzing the entire 2022 employer survey, resulting in the loss of numerous piece-rate wage findings in Washington's fruit harvests.

FIRST AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF - 19

106.    Every lawfully offered wage has an hourly guarantee. All employers who pay by the piece must guarantee that workers will earn at least the hourly State or federal minimum wage and all H-2A employers must guarantee that workers will receive at least the hourly AEWR.

107.    From the perspective of all but the least skilled workers, what is important is the piece rate (and the amount of the piece rate). Pay by the piece, with or without a guarantee, ensures that workers can increase their earnings by being productive. The more skilled a worker is, the more he or she can earn on a piece rate.

108.    In other words, U.S. workers do not accept piece rate jobs because an hourly guarantee is offered, they accept piece rate jobs because the piece rate portion of the wage allows them to increase their earnings.

109.    Washington State workers commonly make substantially more in fruit harvest when working by the piece than they would make working at the AEWR.

110.    An hourly guarantee added to a piece rate, whether set at the applicable minimum or at some higher level, only has meaning for slower workers whose productivity is low enough that they cannot earn the hourly guarantee on the offered piece rate.

111.    The vast majority of workers benefit from and depend upon the higher earnings they can generate while working at a piece rate. That is the main importance of the prevailing wage that DOL is duty-bound to protect.

112.    DOL's policy of segregating piece rates from piece rates with hourly guarantees results in a failure to protect prevailing piece-rate wages and results in adverse changes in working conditions for U.S. workers.

FIRST AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF - 20

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

113.    DOL has never offered any explanation as to why it considers piece rates and piece-rates with hourly guarantees to be distinct forms of payment as piece-rates and hourly pay.

114.    In addition to irrationally segregating piece rates from piece rates with hourly guarantees, DOL permits ESD to further fracture piece rate wages (and thereby making them less likely to be found to be prevailing) by permitting the SWA to treat incomplete data from an employer -- i.e. pay by a bin of unreported size -- as a separate unit of payment in determining the prevailing wage rather than throwing out the data as incomplete and therefore unusable.

115.    DOL's wage methodology requires employers to report the size of the unit of pay so that piece rates can be converted to a standard unit and compared. For example, rates by bins of different sizes can all be mathematically converted to a standard bin rate and arrayed to determine the prevailing rate.

116.    In the 2022 ESD wage survey, however, one agricultural employer reported paying the following piece-rate harvest wages: $35/bin for Ambrosia, $20/bin for Cosmic Crisp, $35/bin for Fuji, and $28/bin for Gala apples, but stated "not sure" as to the size of the bins in question, making it impossible to compare these piece rates with others in the same crop.

117.    Rather than reject the incomplete data, DOL has allowed ESD to treat these bin rates as units of pay different from the piece rates reported for the same crops for each of these four varieties of apples, causing a domino effect in the prevailing wage methodology and resulting in lack of prevailing wage findings.

118.    The fracturing of piece-rate units of pay leads to the discard of otherwise valid data because the smaller the sub-category of piece-rate wages that is deemed to be the majority method of pay, the more likely it is that the 25% rule will eliminate the finding altogether.

FIRST AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF - 21

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

119.    For example, in the 2022 survey results, Fuji, Red Delicious, and Granny Smith apple harvests, the majority method of pay was pay by the bin of "not sure" size. Only one employer reported paying by the bin of "not sure" size, and thus those results were guaranteed to violate the 25% rule, as 100% of the workers in the majority method of pay were represented by the same employer response. As a result, every one of the dozens of other responses from Fuji harvest employers was disregarded, and workers in Fuji harvest were left without a piece-rate prevailing wage, causing adverse effects on their wages and working conditions.

120.    The fracturing of piece rate data gives employers an opportunity to manipulate the survey results to ensure no finding or no piece rate finding by encouraging them to withhold bin sizes or to add meaningless "hourly guarantees" to their survey responses.

**8. DOL's Methodology Arbitrarily Fails to Verify the Accuracy of Employer Survey Responses.**

121.    DOL has specifically disavowed use of worker surveys and/or interviews as a check on the accuracy of the survey results.

122.    ESD did not use the 2022 worker survey to verify the results of the 2022 employer survey when it calculated and submitted findings from the 2022 employer survey to DOL in the summer of 2023.

123.    ESD does not use, and DOL does not require the use of, other means to verify the results of the employer survey.

124.    DOL's failure to use the worker surveys or other means of verifying the employer survey data allows employers reporting hourly wages as the prevailing practice to go unchallenged and unverified.

125.    The failure to take steps to ensure the accuracy of the survey responses is particularly important because, as DOL has recognized, H-2A employers have an incentive to

1    manipulate their responses to wage surveys because they directly benefit from the absence of a

2    prevailing wage finding in a crop or a finding of an hourly prevailing wage. Such findings allow

3    H-2A employers greater flexibility in setting their wage rates.

4        126.    DOL's failure to use the worker surveys or other means of verifying the employer

5    survey data harms farmworkers by adversely affecting wages and working conditions.

6    **9.  DOL's Methodology Fails to Control for Non-Response Bias**

7        127.    Because prevailing wage determinations only apply to H-2A employers and have

8    no direct impact on the wages paid by non-H-2A employers, H-2A employers have a greater

9    incentive to respond to wage surveys than non-H-2A employers.

10        128.    On information and belief, H-2A employers are more likely to respond to the

11    employer survey than non-H-2A employers.

12        129.    On information and belief, H-2A employers are likely to give statistically

13    significantly different responses to the survey from the responses given by non-H-2A employers.

14        130.    DOL does not require ESD to control for this or any other form of non-response

15    bias in its employer survey data.

16        131.    On information and belief, ESD does not adequately control for non-response bias

17    in its employer survey data.

18        132.    DOL takes the position that, because an attempt is made to mail surveys to the

19    entire population of employers or a random sample of employers engaged in a crop activity, the

20    voluntary responses received from employers necessarily represent a random sample.

21        133.    That assumption is untrue and demonstrates the reason why mechanisms to

22    control for non-response bias are necessary to ensure a statistically meaningful sample.

23

FIRST AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF - 23

134.    DOL's failure to require ESD to control for non-response bias in its employer survey data causes harm to workers by adversely affecting their wages and working conditions.

**10. DOL's Prevailing Wage Rules and the Policies Implementing those Rules Unlawfully Delegate Key Decisions Regarding the Determination of Prevailing Wages to State Agencies.**

135.    By allowing ESD to interpret DOL's prevailing wage rules and implement those rules in idiosyncratic ways and by not requiring ESD and other SWAs to conform to a standard method of determining prevailing wages, DOL is improperly delegating its duty to determine and protect prevailing wages to the detriment of U.S. workers and in violation of the Congressional mandate that foreign workers not be permitted to adversely affect the wages and working conditions of U.S. workers.

**11. DOL's 2022 Regulation and Policies for Implementing the Regulation are Having Devastating Effects on Washington Farmworkers by Causing the Elimination of Higher Piece-rate Prevailing Wages in Washington's H-2A Fruit Harvest Contracts.**

136.    Piece-rate wages have been the norm for decades in Washington's fruit harvests.

137.    Washington domestic farmworkers routinely earn more than $20 an hour when harvesting fruit crops at piece-rate wages.

138.    In general, Washington domestic farmworkers will turn down employment offering hourly wages to harvest fruit crops and seek higher earnings at farms offering piece-rate wages.

139.    Washington agricultural employers who use the H-2A program have an economic incentive to manipulate wage surveys toward hourly prevailing wage findings to drive down labor costs.

FIRST AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF - 24

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

**12. University of Washington Worker Wage Surveys Find Domestic Farmworkers Are Paid Piece-rate Wages to Harvest Washington's Fruit Crops.**

140.    DOL contracts with the Washington State Employment Security Department (ESD) to conduct prevailing wage rate surveys.

141.    For years, ESD has conducted two wage surveys—one of agricultural employers, and another of farmworkers.

142.    ESD began conducting employer surveys on or before 2006.

143.    ESD began surveying farmworkers in 2016 after agricultural employers sought to manipulate ESD's 2015 employer survey by submitting false hourly harvest wage data for apples, pears, and cherries in an effort to save the industry millions of dollars in wages by drastically decreasing pay to farmworkers.

144.    On July 8, 2016, DOL advised ESD that, "Worker surveys are a mechanism by which [ESD] can 'validate' or 'verify' the wage survey responses that come in from the growers." ESD, 2018 Agricultural Peak Employment Wage and Practices Survey Results, 15.

145.    To obtain wage data from farmworkers, ESD has regularly contracted with the University of Washington.

146.    DOL provides funding to ESD to pay a portion of the costs of the University of Washington's farmworker wage surveys.

147.    The vast majority of domestic farmworkers surveyed by the University of Washington from 2016-2022 reported being paid by the piece in harvest.

148.    The University of Washington's 2022 costs to conduct the worker survey were estimated at $131,133.

149.    In 2022, ESD contracted with the University of Washington to survey domestic farmworkers to determine the wages they were paid during the 2022 apple and cherry harvests.

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

150.    In 2022, The University of Washington received 634 survey responses from domestic farmworkers.

151.    The University of Washington's 2022 worker survey obtained wage data from domestic farmworkers for six of the largest apple varieties in Washington state: Gala, Red Delicious, Granny Smith, Fuji, Honeycrisp, and Cripps Pink (known as Pink Lady).

152.    The University of Washington's 2022 worker survey determined that over 80% of domestic farmworkers reported that they were paid piece rate wages for five of the apple varieties surveyed.

153.    The University of Washington's 2022 worker survey obtained wage data from domestic farmworkers for four varieties of cherries in Washington state: Red, Dark Red, Dark Sweet, and Yellow.

154.    The University of Washington's 2022 worker survey determined that over 80% of domestic farmworkers reported that they were paid piece rate wages for all four cherry varieties surveyed.

155.    A chart of the University of Washington's 2022 worker survey findings—prepared by ESD—displays in orange the piece-rate wage responses from domestic farmworkers:

FIRST AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF - 26

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260



156.    ESD provided the results of the University of Washington's 2022 domestic farmworker wage survey to DOL.

157.    The University of Washington's 2022 worker survey results are consistent with survey results it conducted of domestic farmworkers in every year from 2016 to 2021.

158.    ESD provided the results of the worker surveys for the years 2019 to 2021 to DOL.

159.    On information and belief, ESD provided the results of the worker wage surveys for the years 2016 to 2018 to DOL.

**13. Washington Agricultural Employers Regularly Report They Pay Piece-rate Wages to Harvest Washington's Fruit Crops.**

160.    In addition to the worker survey conducted by the University of Washington, ESD also contracted with the University of Washington to conduct the 2022 survey of agricultural employers.

FIRST AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF - 27

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

161.    The last publicly available worker and employer survey results are from the 2022 survey, as the 2023 survey was conducted in the late fall of 2023, and the results have not yet been released at the time of filing of this complaint.

162.    The 2022 prevailing wage survey data that ESD received from agricultural employers mirrors the results of the University of Washington farmworker survey—the vast majority of agricultural employers reported they paid piece-rate wages during the 2022 fruit harvests.

163.    ESD submitted to DOL prevailing wage findings based on the 2022 employer survey for four Washington fruit harvests.

164.    ESD reported to DOL regarding data it collected as to four fruit harvest activities for which it had made prevailing wage findings and as to 14 other fruit harvests for which it did not make findings.

165.    For harvest of the major apple, cherry, and pear varieties that ESD reported to DOL, on average, 73% of employers reported on their 2022 survey responses they paid piece-rate wages to harvest their crops.

166.    These percentages would be even higher if hourly wage data supplied by H-2A employers, which reflects the depressive effects of the H-2A program, had been removed.

167.    Despite the overwhelming majority of the 2022 agricultural employer survey results indicating piece-rate wages were the norm, ESD did not find a single prevailing harvest wage for any apple variety in Washington state, piece-rate or otherwise.

168.    Following DOL rules and guidance in its analysis of the 2022 employer survey data, ESD discarded all prevailing wage survey data for harvest of Red Delicious, Golden, Granny Smith, Gala, Fuji, Cripps Pink, Honeycrisp, Ambrosia, and Cosmic Crisp apple varieties

FIRST AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF - 28

and failed to make a finding for each of these varieties. It also discarded prevailing wage data for "general apple" harvest (encompassing harvest of all apple varieties combined) and failed to make a finding for that crop activity.

169.    Despite the overwhelming majority of the 2022 agricultural employer survey responses indicating piece-rate wages were the norm, DOL's rules and guidance caused ESD to discard cherry harvest data for four of the six varieties it surveyed along with prevailing wage data for "general cherry" harvest and to fail to make a finding for any of those crop activities.

170.    ESD only found four prevailing piece-rate harvest wage rates based on the 2022 agricultural employer survey results—two cherry varieties or groups (Bing and Dark Red), one pear variety (Bartlett), and a "general pear" harvest wage.

171.    When no prevailing wage is found for an activity, DOL allows agricultural employers using the H-2A system to pay the H-2A minimum hourly wage (the Adverse Effect Wage Rate or "AEWR") for that activity, regardless of whether piece-rate pay is the practice in the local labor market.

172.    As of the time of this filing, DOL has not published any of the four fruit-harvest prevailing wage findings ESD submitted to DOL based on ESD's 2022 employer survey.

173.    As a result, Washington remains without any published prevailing wages for the H-2A program.

174.    DOL has not offered any public explanation of its failure to publish any of the four prevailing wage findings for fruit harvest (or any other prevailing wages).

175.    On information and belief, DOL has failed to offer any explanation to ESD about its failure to publish these prevailing wages.

FIRST AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF - 29

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

176.    DOL's failure to find and require payment of prevailing wages in Washington state because of the above regulatory provisions and policies has permitted and will continue to permit foreign workers to be imported into Washington at hourly wages that adversely affect the wages and working conditions of Washington state workers in direct violation of the Congressional mandate.

177.    The failure of DOL's methodology to find and publish prevailing piece rates for apple, cherry, pear, and berry harvest results in a dramatic reduction in hourly earnings based on both industry- and worker-provided data.

178.    In Washington, farmworkers in the open labor market have the opportunity to work for piece-rate pay in short harvest seasons, earning significantly more than minimum hourly wages, and securing themselves and their families for the winter months when agricultural work is scarce.

179.    For a kind of work, such as "Gala apple harvest," to garner a prevailing piece-rate wage finding, that kind of work must pass through a set of rules and sub-regulatory policies that serve to eliminate prevailing wage findings at every turn.

180.    As a result, DOL systematically fails to make prevailing wage findings, particularly piece-rate wage findings, for Washington's fruit crops, causing significant depression in farmworker wages and worsening of working conditions.

181.    A high percentage of farmworkers live in poverty.

182.    Even a 5% reduction in wages threatens farmworkers' ability to meet their basic needs for housing, food, medical care, transportation, etc.

FIRST AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF - 30

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

# V.    CAUSES OF ACTION

### First Cause of Action

### Arbitrary and Capricious Agency Action – 5 U.S.C. § 706(2)(A)

183.    The Department of Labor's prevailing wage rules, policies, and practices discussed above are arbitrary and capricious.

### Second Cause of Action

### Contrary to Law – 5 U.S.C. § 706(2)(A)

184.    The Department of Labor's prevailing wage rules, policies, and practices discussed above are contrary to law in that that they violate Congressional mandate set forth in 8 U.S.C. §§ 1101(a)(15)(H)(ii)(A) and 1188 prohibiting DOL from authorizing the importation of foreign workers at wages and working conditions that will adversely affect the wages and working conditions of U.S. worker.

### Third Cause of Action

### Contrary to Law – 5 U.S.C. § 706(2)(A)

185.    DOL's policy of allowing ESD to determine the most common unit of pay based on "estimated employment" rather than reported employment is contrary to law in that it violates the plain language of 20 C.F.R. 655.120(c)(1)(v) as well as resulting in a violation of 8 U.S.C. §§ 1101(a)(15)(H)(ii)(A) and 1188.

### Fourth Cause of Action

### Agency Action Unlawfully Withheld or Unreasonably Delayed – 5 U.S.C. § 706(1)

186.    As a result of the prevailing wage rules, policies, and practices discussed above, DOL has unlawfully withheld and/or unreasonably delayed carrying out its duty to protect the

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

1  wages and working conditions of U.S. workers by protecting the prevailing wages of U.S.

2  workers from being undermined by foreign workers.

3      187.    These unlawful agency actions have harmed and will continue to harm and

4  threaten harm to Plaintiff's members and other Washington-State workers, for which they are

5  entitled to relief pursuant to 5 U.S.C. §706(1) and (2) including compelling of agency action

6  unlawfully withheld or unreasonably delayed and vacatur of these arbitrary and capricious rules

7  and policies.

8                **VI.    REQUEST FOR RELIEF**

9      Plaintiff asks this Court to grant them the following relief:

10      1.    Declare that DOL's prevailing wage methodology and policies set forth above are

11  arbitrary and capricious and contrary to law;

12      2.    Preliminarily and permanently enjoin DOL from implementing those rules and

13  policies;

14      3.    Preliminarily enjoin DOL to reinstate the 2020 prevailing wages and to require all

15  employers who are currently employing H-2A workers in Washington State to immediately

16  comply with those wage rates if they are higher than what the employer is currently paying;

17      4.    Permanently enjoin DOL to require payment of the 2020 prevailing wage rates

18  until such time as DOL carries out its duty to protect U.S. worker wages, and in particular

19  prevailing wages;

20      5.    Compel DOL to take all necessary steps to expeditiously carry out its duty to

21  protect U.S. worker wages, and in particular prevailing wages and prohibiting DOL from

22  certifying the importation of foreign workers until that duty has been carried out;

23      6.    Order DOL to inform growers who have applied or will apply to use H-2A

FIRST AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF - 32

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

workers that the wages they owe may change during or after the 2024 season as a result of litigation over the validity of the prevailing wage methodology, so that complete relief may be afforded;

7.    Declare that ESD's and Commissioner Feek's actions, as described above, are in violation of 20 C.F.R. § 655.120(c)(1)(v), 8 U.S.C. § 1188, 8 U.S.C. §§ 1101(a)(15)(H)(ii)(A), and/or 20 C.F.R. § 501(c)(2)(i);

8.    Order ESD and Commissioner Feek to take all actions necessary for DOL to comply with any relief granted as to DOL;

9.    Award Plaintiffs their reasonable fees, costs and expenses, including attorneys' fees, pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412;

10.    Grant other further relief as this Court deems just and appropriate.

DATED this 17th day of October, 2024.

COLUMBIA LEGAL SERVICES

s/ *Andrea Schmitt*
Andrea Schmitt, WSBA #39759

s/ *Joachim Morrison*
Joachim Morrison, WSBA #23094

s/ *Bonnie Linville*
Bonnie Linville, WSBA #49361
*Attorneys for Plaintiff*
711 Capitol Way S., Ste. 706
Olympia, WA  98501
(360) 943-6260
andrea.schmitt@columbialegal.org;
joe.morrison@columbialegal.org;
bonnie.linville@columbialegal.org

FARMWORKER JUSTICE

s/ *Lori Johnson*

BARNARD IGLITZIN & LAVITT LLP

s/ *Kathleen Phair Barnard*
Kathleen Phair Barnard, WSBA #17896
*Attorney for Plaintiff*
18 West Mercer Street, Ste. 400
Seattle, WA 98119-3971
(206) 285-2828
barnard@workerlaw.com

s/ *Edward Tuddenham*

FIRST AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF - 33

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

1   Lori Johnson, North Carolina State Bar          Edward Tuddenham, Texas State Bar
    Association #24227                               Association # 20282300
2   *Attorney for Plaintiff*                         *Attorney for Plaintiff*
    1126 16th St. NW, Suite LL101                   228 W 137th St.
3   Washington, DC 20006                            New York, NY  10030
    ljohnson@farmworkerjustice.org                  edwardtuddenham@gmail.com
4   *Admission pro hac vice pending*                 *Admission pro hac vice pending*

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

FIRST AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF - 34

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260