The Honorable John H. Chun

1

2

3

4

5

6                    UNITED STATES DISTRICT COURT
                     WESTERN DISTRICT OF WASHINGTON

7

FAMILIAS UNIDAS POR LA
8    JUSTICIA, AFL-CIO, a labor             No. 2:24-cv-00637
     organization;
9

                         Plaintiff,         PLAINTIFF'S MOTION FOR A
10                                          TEMPORARY RESTRAINING
                                            ORDER AND PRELIMINARY
11        vs.                               INJUNCTION ENJOINING DOL
                                            FROM REPLACING 2020
12   UNITED STATES DEPARTMENT               PREVAILING WAGES WITH 2022
     OF LABOR, and LORI CHAVEZ-             "NO FINDING" RESULTS
13   DeREMER in her official capacity
     Acting United States Secretary of
14   Labor,                                 NOTE ON MOTION CALENDAR:
                                            June 23, 2025
15                       Defendants.
                                            ORAL ARGUMENT REQUESTED
16

17

18                          **INTRODUCTION**

19
          The U.S. Department of Labor (DOL) recently approved the 2022 prevailing
20

21

22

23

PLAINTIFF'S MOTION FOR TEMPORARY             COLUMBIA LEGAL SERVICES
RESTRAINING ORDER - 1                          711 Capitol Way S., Suite 706
                                                   Olympia, WA 98501
                                                    (360) 943-6260

wage survey results ("2022 Findings")[1] submitted by the Washington ESD.[2] Those Findings included only four prevailing wage findings, two for cherry harvest and two for pear harvest.  As for all other crops, including all Washington apple and berry crops and many cherry varieties, the 2022 Findings make "no finding" because DOL's flawed methodology required ESD to throw out all of the survey data for those crop activities. Although DOL recognizes that protecting prevailing wages is critical to preventing adverse effects on local wages, DOL has replaced all of the prevailing wage rates set forth in the 2020 survey, with the 2022 Findings -- including replacing 2020 prevailing piece rates with "no findings" from the 2022 survey.  That decision has devastating effects on Washington State farm workers because it permits employers to offer lower hourly-minimum Adverse Effects Wage Rate (AEWR) to harvest "no finding" crops, thereby depriving Washington farmworkers of the opportunity to earn higher wages at the prevailing piece rate method of pay solely because DOL's flawed methodology prevented ESD from

---

[1] DOL has labeled the new findings as being from the 2023 Survey Year based on the year they were submitted, not the year that the survey was done. Declaration of Rachael Pashkowski, ¶ 3. Familias has consistently used the year the survey was done to refer to prevailing wage findings, and it does so here.

[2] To incorporate this new factual development into the case, Plaintiff Familias will file a motion to supplement the operative complaint concurrently with this filing.

PLAINTIFF'S MOTION FOR TEMPORARY
RESTRAINING ORDER - 2

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

making new prevailing wage findings.

Plaintiff Familias Unidas por la Justicia (Familias) seeks immediate relief in the form of a TRO and preliminary injunction enjoining DOL from enforcing those "no findings" because (1) the 2022 "no findings" do not constitute new findings that may replace the 2020 findings under the existing injunction, Dkt. #40 at 3, and (2) because Familias is likely to succeed on its claim that DOL's methodology that generated those "no findings" is arbitrary and contrary to law.

Permitting DOL to substitute a "no finding" result for a published prevailing piece-rate during the pendency of Familias's challenge to DOL's prevailing wage methodology undermines this Court's existing injunctions and would allow employers to use the threat of importing foreign workers at hourly AEWR wages to force U.S. workers to accept the substantial wage cuts that AEWR wages represent. This matter is urgent because H-2A job orders continue to be submitted and approved for apple and berry harvests, and if the 2022 "no findings" are not enjoined, employers will be allowed to pay the substantially lower AEWR for these harvest jobs.[3]

---

[3] DOL claims that it does not have the power to rescind and correct unlawfully issued job orders. Dkt. #152 at ¶7.

PLAINTIFF'S MOTION FOR TEMPORARY
RESTRAINING ORDER - 3

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

## STATUTORY AND FACTUAL BACKGROUND

### A.    The H-2A Program

This Court has laid out the contours of the H-2A agricultural visa program in its most recent order granting preliminary injunction, Dkt. #145 at 2; *see* Dkt. #131 at 3-6. Familias only repeats here that Congress has mandated that DOL insure that "**the employment of [foreign] labor . . . will not adversely affect the wages and working conditions of workers in the United States similarly employed**." 8 U.S.C. § 1188(a)(1) (emphasis added). DOL has long required employers to pay the higher of the prevailing wage or the hourly-minimum AEWR. 20 C.F.R. § 655.120(a), in order to "ensure[] that domestic [farm]workers receive the greatest potential protection" from those prohibited adverse effects of the importation of foreign H-2A workers. 75 Fed. Reg. 6884, 6893 (Feb. 12, 2010).

### B.    DOL's Challenged 2022 Prevailing Wage Rules

In 2019, DOL issued a notice of proposed rulemaking designed to amend its rules governing the prevailing-wage-finding process. 84 Fed. Reg. 36168, 36184-36189 (July 26, 2019). The NPRM justified the need for the amendments, noting that:

> [C]oncerns about wage depression from the importation of foreign workers [under the H-2A visa program] are particularly acute because access to an unlimited number of foreign workers in a particular labor market and crop activity or agricultural activity could **cause the prevailing wage of workers in the United States similarly employed to stagnate**.

PLAINTIFF'S MOTION FOR TEMPORARY
RESTRAINING ORDER - 4

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

*Id.* at 36180 (emphasis added). DOL made clear that the proposed changes were designed "to encourage a greater number of reliable prevailing wage results," *id.* at 36185, because the existing methodology "often result[s] in 'no finding' from a prevailing wage survey [which is] both **a waste of government resources and fail[s] to meet the goal of producing reliable and accurate prevailing wage rates,**" *id*. at 36187 (emphasis added); *see also id*. at 36180. DOL published the final H-2A Rule on October 12, 2022, with an effective date of November 14, 2022. 87 Fed. Reg. 61660 (Oct. 12, 2022).

Contrary to DOL's mandate and the agency's stated goal of encouraging a greater number of prevailing wage findings, the newly adopted rule changes have had the opposite effect: **Until a few days ago, DOL had not published any prevailing wage findings for Washington since the 2022 rule revisions went into effect nearly three years ago**. The recently approved 2022 Findings identify prevailing wages in *only four* harvest activities (all four are prevailing piece-rate wages) down from 9 findings in 2020  using the old methodology (including three "general" harvest wages: apple, cherry, berry[4]).

---

[4] General harvest wages for a crop activity (e.g. "apple harvest") are important because they apply to all varieties within the crop except those having a specific prevailing wage finding. For example, in the 2020 findings, all apple, cherry, and

PLAINTIFF'S MOTION FOR TEMPORARY
RESTRAINING ORDER - 5

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

**C.    This Court's July 2, 2024 Preliminary Injunction**

This case was filed in May 2024 to challenge DOL's 2022 revisions to its prevailing wage regulations, including the "One Year Rule," which provided that all prevailing wages expire one year from publication. 20 C.F.R. § 655.120(c)(2).  As a result of the One-Year Rule, DOL all of the 2020 prevailing wages to expire and did not replace them with anything. This Court preliminarily enjoined enforcement of the One-Year Rule and reinstated the 2020 prevailing wages on July 2, 2024. Dkt. #40. In granting the Preliminary injunction the Court found that Plaintiff was likely to succeed on its claim that the Rule was arbitrary and contrary to law and further noted that Familias had shown irreparable injury because "the declarations make clear that Washington farmworkers earn more wages when working at a piece-rate system versus an hourly system, and that these workers rely on these wages to survive." *Id.* at 18; *see* Second Declaration of Jose Ramirez ¶¶12-16; Second Declaration of Andres Dominguez ¶¶5-15 and 20-23; Declaration of Crescencia Altamirano ¶¶6-9; Declaration of Zachariah Rutledge, Ex. A. The injunction required DOL to re-post the 2020 Findings, published in January 2022 "until judgment is entered in this case." Dkt. #40 at 21.

_____

berry crops have a prevailing wage as a result of the "general" harvest findings, even though no prevailing wages were found for most of the individual varieties of apples, cherries, and berries.

PLAINTIFF'S MOTION FOR TEMPORARY
RESTRAINING ORDER - 6

**D.    This Court's Order Clarifying the July 2, 2024 Injunction.**

In early February, 2025 Familias sought clarification of this Court's preliminary injunction because DOL claimed it prevented the agency from reviewing and approving any further Washington prevailing wage findings, and, specifically, prevented DOL from providing guidance to ESD as to how to interpret its new prevailing wage regulations. Dkt. #128.

On March 31, 2025, this Court agreed with Familias's reading of the preliminary injunction and clarified that the "language [of the July 2, 2024 order] does not mean that DOL cannot publish and enforce **new prevailing wage rates for Washington**." Dkt. #146 at 2 (emphasis added). This Court then revised the second paragraph of its original injunction to state as follows:

> DOL is ORDERED to REINSTATE and enforce **the 2020-Survey prevailing wage rates**, published in January 2022, until judgment is entered in this case. DOL may replace **the 2020-Survey prevailing wage rates** with **subsequently published prevailing wages rates**."

*Id.* at 3 (emphasis added).

**E.    This Court's Second Preliminary Injunction Enjoining AEWR-Only Job Orders in Washington State.**

On March 28, 2025, this Court issued a second preliminary injunction prohibiting DOL from approving AEWR-only job orders in violation of the Ninth Circuit's May 2024 ruling in *Torres Hernandez*. Dkt. #145. That order requires DOL to inform all relevant Washington H-2A growers that they must:

[U]nequivocally offer and pay **the conforming prevailing piece rate wage under the 2020-Survey prevailing wage rates** in compliance with the Ninth Circuit's conclusion on the application of 20 C.F.R. §§ 655.120(a) and 655.122(l) in *Torres Hernandez v. Su*, 2024 WL 2559562, at *1 (9th Cir. May 24, 2024).

*Id.* at 16 (emphasis added). On April 24, 2025, this Court entered a stipulated modification of that order. Dkt. #164.[5] The quoted section above did not change. *Id.* at 2.

## F.    Familias Moves for Partial Summary Judgment.

On May 14, 2025, shortly after the AEWR-only injunction was issued, Familias filed a motion for partial summary judgment on four of its five remaining challenges to the 2022 methodology:  (1) the One-Year Rule, (2) the 25% Rule, (3) DOL's approval of AEWR-only job orders, and (4) DOL's unlawful failure to act on ESD's 2022 survey findings and methodology. Dkt. #165.

## H.  DOL Publishes the 2022 Findings

ESD submitted the results of its 2022 survey to DOL in July 2023.  Almost two years later, on June 19, 2025, DOL published its 2022 Findings, which approved four new prevailing wage findings, for harvest of dark red and bing cherries, bartlett

---

[5] DOL filed a protective appeal of both orders, and, after the parties met with the Ninth Circuit mediator, an order was entered closing "the court's docket for administrative purposes until December 1, 2025" and vacating the existing briefing schedule. Dkt. #174.

pear, and general pear and made "no finding" with respect to all other crop activities because its methodology prevented ESD from making prevailing wage findings. *Id.*; Dkt. #76-3 at 509-510 (ESD submitted 2022 Results to DOL on July 16, 2023). DOL's 2022 Findings compared to the 2020 Findings are as follows:

| Commodity (by harvesting activity) | 2020 prevailing wage | 2022 prevailing wage findings |
|---|---|---|
| Apple, general harvesting | $28.26/bin | No finding |
| Apple, Cripps Pink | $30.00/bin | No finding |
| Apple, Honeycrisp | $31.76/bin | No finding |
| Berry, general harvesting | $0.50/pound | No finding |
| Berry, blueberry | $0.50/pound | No finding |
| Berry, raspberry | $15.30/hour | No finding |
| Cherry, general harvesting | $0.21/pound | No finding |
| Cherry, dark red | $0.22/pound | $0.27/pound w/ $15.39 hourly guarantee |
| Cherry, Lapin | $0.20/pound | No finding |
| Cherry, Sweetheart | $0.21/pound | No finding |
| Cherry, Bing | No finding | $0.24/pound w/ $15.81 hourly guarantee |
| Pear, general harvesting | No finding | $26.42/bin |
| Pear, Bartlett | No finding | $25.90/bin |
| **Total crops for which prevailing wages found** | **10** | **4** |

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

| Commodity (by harvesting activity) | 2020 prevailing wage | 2022 prevailing wage findings |
|---|---|---|
| Total crops for which piece-rate prevailing wages found | 9 | 4 |

Pashkowski Decl. Ex. A.

Familias does not object to putting into effect the four actual prevailing wage rates approved by the 2022 Findings, as that is consistent with the Court's March 31, 2025 Order. Dkt. #146 at 3. As for all other crop activities surveyed in 2022 for which ESD reported "no finding" because DOL's methodology required alll of the survey data collected for those crop activities to be thrown out, DOL takes the position that "no finding" is, in fact, a "prevailing wage finding" that replaces the prevailing wage rates found by the 2020 survey. According to DOL, the Court's March 31, 2025 Order permitting DOL to publish "**new prevailing wage rates for Washington**" does not prevent it from treating "no findings" as "new prevailing wage rates for Washington." Pashkowski Decl. ¶ 6.

## ARGUMENT

**II.  This Court Should Enjoin Implementation of the 2022 "No Findings"—Which Eliminate Higher Piece-Rate Wages for All Washington Apple, Berry, and Most Cherry Harvests—and Maintain the 2020 Prevailing Wages Which Have Prevailing Piece Rates for All Three Crops.**

As explained, *infra,* DOL's decision to treat "no findings" as prevailing wage findings and use them to replace the prevailing piece rates found by the 2020 survey

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

will result in immediate and irreparable injury to Washington State harvest workers. Accordingly, Plaintiffs file this emergency motion asking the Court to prohibit DOL from treating its 2022 "no findings" as actual prevailing wage findings that can replace 2020 prevailing wage findings consistent with this Court's March 30, 2025 Order, Dkt. #146 at 3, or alternatively, to enter a TRO and preliminary injunction prohibiting use of the 2022 "no findings" (and requiring DOL to continue to enforce the 2020 prevailing rates) because Plaintiffs are likely to succeed on their claim that those "no findings" are the result of a methodology that is arbitrary and contrary to law.

### A.  Legal Standard for Temporary Restraining Order

The standard for issuing a temporary restraining order is "substantially identical" to the standard for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). A plaintiff seeking a preliminary injunction "must meet one of two variants of the same standard." *Alliance for the Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017). Under the original *Winter* standard, a plaintiff must establish that they are (1) "likely to succeed on the merits"; (2) "likely to suffer irreparable harm in the absence of preliminary relief"; (3) that "the balance of equities tips in [its] favor"; and (4) that "an injunction is in the public interest." *Disney Enterprises, Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017) (alteration in original) (*quoting Winter v.*

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

*Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008)). When the government is a party, the last two factors—the balance of equities and the public interest—merge. *E. Bay Sanctuary Covenant v. Trump*, 950 F.3d 1242, 1271 (9th Cir. 2020).

Alternatively, under the "sliding scale" variant of the *Winter* standard, preliminary relief is appropriate when a plaintiff raises "serious questions going to the merits—a lesser showing than likelihood of success on the merits," the "balance of hardships tips *sharply* in the plaintiff's favor," and where the other two *Winter* factors (likelihood of irreparable harm and the public interest) "are satisfied." *Alliance for the Wild Rockies*, 865 F.3d at 1217 (internal quotation marks omitted, emphasis in the original). Under the "sliding scale" approach, the elements are "balanced[] so that a stronger showing of one element may offset a weaker showing of another." *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017) (quotations omitted). Thus, while the Workers present strong claims on the merits and satisfy both standards, preliminary relief would be appropriate even if Plaintiffs made a weaker showing as to the merits given how sharply the balance of hardships tips in Workers' favor. *Id.*

## B. The APA Standard

The APA directs courts to "hold unlawful and set aside" agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with

PLAINTIFF'S MOTION FOR TEMPORARY
RESTRAINING ORDER - 12

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

law." 5 U.S.C. § 706(2)(A). "[A]n agency rule [is] arbitrary and capricious if the agency has . . . entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Alaska Dep't of Health & Soc. Servs. v. Centers for Medicare & Medicaid Servs.*, 424 F.3d 931, 938 (9th Cir. 2005) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). The crux of this test is whether the agency has "engaged in reasoned decisionmaking." *Judulang v. Holder*, 565 U.S. 42, 53 (2011). To satisfy the test, an agency must "cogently explain why it has exercised its discretion in a given manner." *Motor Vehicle Mfrs.*, 463 U.S. at 48.

Agency action is "not in accordance with law" if it violates a statutory or regulatory requirement. In evaluating this type of challenge:

> [A] reviewing court must first determine if the regulation is consistent with the language of the statute. . . . In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole.

*K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988) (internal quotations omitted). Agencies may not adopt rules that "defeat the purpose" of the underlying statute. *Batterton v. Francis*, 432 U.S. 416, 428 (1977). "Constructions that are contrary to clear Congressional intent or frustrate the policy that Congress sought to

PLAINTIFF'S MOTION FOR TEMPORARY
RESTRAINING ORDER - 13

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

implement must be rejected." *Earth Island Inst. v. Hogarth*, 494 F.3d 757, 765 (9th Cir. 2007) (citation omitted). Familias is likely to succeed on its challenges under both APA standards.

### C. Familias is Likely to Succeed in its Argument that the Existing Preliminary Injunction on Wage Rates Requires the 2020 Prevailing Piece Rates to Remain in Place in all Crop Activities with a 2022 "No Finding" Determination

Pursuant to this Court's clarified preliminary injunction, Dkt. #146 at 3, DOL's regulatory definition, and Ninth Circuit precedent, the 2022 "no findings" are not actual prevailing wage findings and cannot replace the actual prevailing wages found by the 2020 survey. Only the four new prevailing wages, that represent actual prevailing wage findings, can replace prior findings.

This Court's Order of March 30, Doc 146 at 3, makes clear that DOL can only replace the 2020 prevailing piece rates with "subsequently published **new prevailing wage rates for Washington**." Dkt. #146 at 2 (emphasis added). DOL's own regulations make clear that "no finding" is not a "published new prevailing wage rate" as that phrase is used in the Court's injunction. 20 C.F.R. §655.103(b) defines a "prevailing wage" as:

> A wage rate established by the OFLC Administrator for a crop activity or agricultural activity and, if applicable, a distinct work task or tasks performed in that activity and geographic area based on a survey conducted by a State **that meets the requirements in § 655.120(c).**

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

(emphasis added). The referenced regulation, section 655.120(c), contains all the prevailing wage methodology adopted by DOL in the challenged 2022 rulemaking. That regulation makes clear that a new "prevailing wage" for a crop activity can only be issued "if all of the ... requirements [of §655.120(c)(1)(i)-(ix)] are met." 20 C.F.R. §655.120(c)(1). That means that the prevailing wage must clear all of the regulation's methodological hurdles, including the 25% Rule, 30-Employee Rule, and 5-Employer Rule, *id.* §655.120(c)(1)(vii-ix), be reported to DOL on Form ETA 232, *id.* §655.120(c)(1)(i), and report "the average wage of U.S. workers in the crop activity . . . using the unit of pay used to compensate the largest number of workers who wages are reported in the survey." *Id.* §655.120(c)(1)(v).

The 2022 "no findings" reported to DOL by ESD by DOL's 2022 Findings do not meet the above definition of a "prevailing wage" for several reasons: (1) "no finding" is not, by any stretch of the imagination, "the average wage for U.S. workers in the crop activity" reported on form ETA 232.  To the contrary, "no  finding" is exactly that and it is not reported on Form 232 because the requirements of §655.120(c)(1)(vii-ix) caused all of the survey data to be thrown out. Only the four new 2022 prevailing wages meet DOL's regulatory definition of a "prevailing wage rate" identify "average wages," and otherwise meet the regulatory hurdles of § 655.102(c). Accordingly, consistent with DOL's own definition of a "prevailing wage rate" and the Court's March 31, 2025 Order at Dkt. #146 at 2, only those four

PLAINTIFF'S MOTION FOR TEMPORARY
RESTRAINING ORDER - 15

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

rates can replace 2020 prevailing rates. *See League of California Cities v. Fed. Commc'ns Comm'n*, 118 F.4th 995, 1015–16 (9th Cir. 2024) ("where a regulation defines a term, we must follow that definition").

This Court's March 31, 2025 injunction prohibits DOL from replacing the 2020 prevailing wages with "no finding" for a second reason. DOL's effort to enforce "no findings," amounts to an attempt to eliminate the 2020 Results and replace them with nothing. But this Court has already enjoined 20 C.F.R. § 655.120(c)(2), the regulation which permitted DOL to expire prevailing wages after one year, for the pendency of this case. Without the enjoined expiration language, DOL's regulation at §655.120(c)(2) requires DOL to leave the 2020 rate in effect until replaced with a new published prevailing wage rate. 20 C.F.R. §120(c)(2), states:

> A prevailing wage issued by the OFLC Administrator will remain valid for 1 year after the wage is posted on the OFLC website **or until replaced with an adjusted prevailing wage**, whichever comes first, except that if a prevailing wage that was guaranteed on the job order expires during the work contract, the employer must continue to guarantee at least the expired prevailing wage rate.

20 C.F.R. §655.120(c)(2). While this Court enjoined the portion of this regulation requiring the expiration of prevailing wages, the remainder of the rule is subject to a severability clause and must "be construed so as to continue to give maximum effect. . . permitted by law." 20 C.F.R. §655.190; *see also, Chadha v. Immigr. &*

PLAINTIFF'S MOTION FOR TEMPORARY
RESTRAINING ORDER - 16

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

*Naturalization Serv.*, 634 F.2d 408, 415 (9th Cir. 1980), aff'd, 462 U.S. 919 (1983) (severability clause results in invalid section being dropped while remaining portion remains fully operative); *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 596 (1982) (purpose of H-2A statutes and regulations is to protect local workers' wages). Thus, after severing the enjoined One-Year expiration rule, the remainder of §120(c)(2) provides that "**[a] prevailing wage** issued by the OFLC Administrator **will remain valid** . . . **until replaced with an adjusted prevailing wage** ..." (emphasis added). Since a "no finding" is the result of DOL throwing out survey data, and by definition is not "an adjusted prevailing wage," the combination of this Court's injunction prohibiting enforcement of the One-Year Rule and DOL's own regulations require that each of the 2020 prevailing wages remain in effect until replaced by a new prevailing rate.

By eliminating the 2020 prevailing rates in favor of the 2022 "no findings," DOL is, in effect treating the 2022 Findings as a package -- once approved they all go into effect even if most of the results do not make prevailing wage findings.   In other words, once the 2022 package is approved, the 2020 package of rates is automatically eliminated. That argument directly contradicts DOL's regulations, which speak of prevailing wage rate findings in the singular, not as annual packages. Section 655.103 defines "prevailing wage" for **a** crop activity, and 655.120(c)(2) speaks of "**a** prevailing wage" being replaced with "an adjusted prevailing wage."

PLAINTIFF'S MOTION FOR TEMPORARY
RESTRAINING ORDER - 17

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

Nothing in the regulations says anything about treating survey results as annual packages. In the past, DOL has had a history of approving portions of prevailing wage survey findings, rather than sets of findings a whole. Second Declaration of Bonnie Linville ¶¶12-13.

Accordingly, the Court should enjoin DOL from enforcing the "no findings" in the 2022 Results as actual prevailing wages that replace the 2020 published prevailing wage findings as contrary to this Court's March 31, 2025 Order , Dkt. #146 at 3, and  contrary to DOL's own regulations. The March Order makes clear that each 2020 prevailing wage finding is to remain in effect until it is replaced with an actual new prevailing wage finding;  a "no finding" is not a finding. *A ruling to this effect would completely dispose of Familias's need for emergency relief.*

**B. Familias Is Likely to Prevail on Its Claim that the 2022 "No Findings" Are Arbitrary and Contrary to Law Because They Are the Result of An Arbitrary and Unlawful Methodology.**

Familias is also likely to prevail on its claims that the 2022 "no findings" are arbitrary and capricious and contrary to law for four reasons, the first three of which combine in various ways to eliminate nearly all prevailing wage findings.

**1. DOL's Application of the 25% Rule is Arbitrary and Capricious and Contrary to Law**

A significant number of the 2022 "no findings" in common crops result from DOL's misapplication of the 25% Rule. *See* Dkt. 76-3 at 130 (list of crops failing the rule). That Rule states:

PLAINTIFF'S MOTION FOR TEMPORARY
RESTRAINING ORDER - 18

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

> Where the estimated universe of employers is at least 4, the wages paid by a single employer represent no more than 25 percent of the sampled wages in the unit of pay used to compensate the largest number of U.S. workers whose wages are reported in the survey.

20 C.F.R. § 655.120(c)(1)(ix). Familias has a pending motion for summary judgment arguing that, after the close of the notice and comment period, DOL adopted a strained interpretation of the Rule that requires all survey results to be thrown out if one employer represents more than 25 percent of the reported wages in the prevailing method of payment is arbitrary and contrary to law. Dkt. #165 at 15-24. As Familias explained in its motion, the meaning of the Rule is ambiguous. *Id.* at 15-16. A more commonsense reading of the Rule, that is consistent with the 2022 Rule's goal of obtaining "a greater number of reliable prevailing wage results," 84 Fed Reg. at 36185, and its goal of preventing a large employer from "unduly influencing" a prevailing wage result, *id.* at 36187, is to cap the large employer's data at 25% of reported workers or remove the offending data and calculate a prevailing wage from the remaining data. There is no need for Plaintiff to repeat those arguments here except to make two points: (a) the 2022 survey results illustrate clearly why DOL's interpretation of the rule is arbitrary, and (b) because Plaintiff's motion for a TRO and preliminary injunction is an "as applied" challenge to DOL's interpretation of the 25% rule DOL's argument that Plaintiff's waived their right to challenge the 25% Rule does not apply.

PLAINTIFF'S MOTION FOR TEMPORARY
RESTRAINING ORDER - 19

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

In at least 14 major Washington harvest activities, the 25% Rule resulted in no prevailing wage finding. *See* Dkt. #76-3 at 130. In many of these instances, the more commonsense reading of the Rule would have resulted in a prevailing wage finding. For example, in the 2022 survey, ESD determined that a piece-rate of 27 cents a pound was the prevailing wage rate for general cherry harvest based on wage data from 32 growers who paid by the pound (the majority method of payment).[6] Dkt. #76-3 at 419, 422. However, ESD threw out all the wage data and made a "no finding" for the crop because one employer, who paid 25 cents a pound, employed 25.5%—283 of the 1,108—of the reported workers. Dkt. #21 at ¶9 (First Pashkowski Decl., referring to underlying data that is now in the Admin. Record at Dkt. #76-3 at 416-422). Had ESD capped that employer's data at 25% of the total workers, or had it removed the large employer's data altogether, there would still have been sufficient remaining data from the remaining 31 employers to calculate a piece-rate prevailing

---

[6] ESD only considered the piece rates paid by 32 of the 83 employers who paid by the piece because the others paid a different form of piece rate that ESD, following DOL's methodology, treated as a different method of payment, also an arbitrary practice. *See* "Wage Fracturing" section, *infra* at 23; Dkt. 76-3 at 419. Leaving that aside for the moment, ESD determined that the piece rate method used by the 32 was the prevailing method of payment.

PLAINTIFF'S MOTION FOR TEMPORARY
RESTRAINING ORDER - 20

wage-.  Pashkowski Decl. ¶¶ 8-11. The same result occurred in the "general apple

harvest" survey. Pashkowski Decl. ¶ 12.

Had DOL required ESD to use a reasonable interpretation of the 25% rule for

these two surveys, all cherry and apple crops would be covered by a piece-rate

prevailing wage—a result that reflects the reality of Washington's pay structure for

fruit harvests and protects the wages of domestic workers. *See* 2d Ramirez Decl.

¶¶12-16; 2d Dominguez Decl. ¶¶5-15 and 20-23; Altamirano Decl. ¶¶6-9; Rutledge

Decl., Ex. A; Dkt. #40 at 17-20; Dkt. #9 at 15-19 (and sources cited therein). DOL's

extreme interpretation of the Rule that requires all of these survey results to be

thrown out is clearly arbitrary and in violation of DOL's legal duty to protect the

wages of U.S. workers. As DOL recognized in its 2022 Rule-making, a 'no finding'

from a prevailing wage survey, which is what its interpretation of the 25% Rule

compels, is "both **a waste of government resources and fail[s] to meet the goal of**

**producing reliable and accurate prevailing wage rates,**" 84 Fed. Reg. 36168,

36187 (emphasis added).

The data set forth above illustrates another arbitrary aspect of the 25% Rule.

Although the intended purpose of the Rule is to prevent large employers from

"unduly influencing" survey results, it is clear from the apple and cherry results, that

large employers do not have such an influence. In both the cherry and apple surveys,

the prevailing wage is essentially the same whether the large employer's data is

PLAINTIFF'S MOTION FOR TEMPORARY
RESTRAINING ORDER - 21

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

considered or not. *See* Pashkowski Decl. ¶¶ 8-12. That is not surprising since DOL's regulations require ESD to send surveys to the entire population of employers in a given crop activity or to a random sample of such employers. 20 C.F.R. § 655.120(c)(1)(iv). The methodology makes the assumption that if the survey is distributed by one of those means and the required minimum number of voluntary responses are received (at least 5 employers employing at least 30 workers), the responses will necessarily constitute a "sufficiently representative sample" of the population. *See* 87 Fed. Reg. at 61695. Given that assumption, there is no reason to believe that, just because one employer represents 25% or more of the workers reported to have been paid by the majority unit of pay, the sample is no longer representative. To the contrary, if, as DOL contends, the sampling method is representative, then one has to assume that the responses showing 25% or more of workers being employed by a large employer are representative of the population. A sample cannot be both representative and not representative at the same time.

As noted in Familias's motion for summary judgment, DOL will likely argue that Plaintiff waived its right to challenge the 25% Rule because the public did not comment on that Rule during the comment period. Plaintiff's motion for summary judgment explains that, given the ambiguity in the Rule and DOL's failure to inform the public of its extreme interpretation until after the comment period closed, there can be no waiver because the public was deprived of an

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

opportunity to comment on DOL's interpretation of the Rule. *See Safe Air For Everyone v. U.S. E.P.A.*, 488 F.3d 1088, 1098 (9th Cir. 2007) ("if permitted to adopt unforeseen interpretations, agencies could constructively amend their regulations while evading their duty to engage in notice and comment procedures"); Dkt. #165 at 21-22 (and sources cited therein). In addition to those arguments, because this is a challenge to DOL's application of the 25% Rule to the 2022 survey findings, waiver is not an issue. *See Koretoff v Vilsak,* 707 F3d 394, 399 (D.C.Cir. 2013) (Kavanaugh, J.) (holding that litigant's failure to comment waived facial challenge to rule but that this does not affect the plaintiff's ability to challenge the rule when it is applied).

### 3. Familias is likely to Prevail on its Claim that DOL's Fracturing of Piece-Rate Methods of Pay Arbitrarily and Unlawfully Precludes Making Prevailing Wage Findings

Closely tied to DOL's arbitrary implementation of the 25% Rule is DOL's approval of ESD's wage fracturing method, which also arbitrarily results in an inability to make prevailing piece-rate findings. Dkt. #147 at 21-24. In its analysis of the 2022 survey results, ESD treated piece rates, piece rates with hourly guarantees, and piece rates with different kinds of bonuses, as completely different methods of pay for purposes of calculating the prevailing rate in a crop activity. § 655.120(c)(1)(v).

PLAINTIFF'S MOTION FOR TEMPORARY
RESTRAINING ORDER - 23

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

In the 2022-Survey responses for Ambrosia apple harvest, 241 workers were reported to be paid by the piece, while 122 were reported to be paid by the hour. Dkt. #76-1 at 277. But because piece-rate pay was fractured into three sub-categories (by the bin of standard size, by the bin of standard size with an hourly guarantee, and by the bin of "not sure" size with an hourly guarantee), hourly pay was determined to be the prevailing method of pay. *Id.* Similarly in Cosmic Crisp apple harvest, 528 workers were paid by the piece and only 433 by the hour, but the same three-way split of piece-rate wages caused an hourly wage to "prevail." *Id.* at 284. A prevailing piece rate for Gala apple harvest was eliminated by a *five-way* division of the piece-rate responses, again causing hourly pay to "prevail." *Id.* at 310. Absurdly, in Red Delicious, Granny Smith, and Fuji apple harvest, this same fracturing of piece-rates into micro categories caused ESD to determine—a determination that DOL has now approved—that the "prevailing" method of pay was "pay by the bin of 'not sure' size," based on a single grower who claimed it *did not know the size if its own apple bins*, resulting in a "no finding" for each of these major apple varieties.[7] *Id.* at 362-63 (Red Delicious); 322-23 (Granny Smith); 304-05 (Fuji).

---

[7] DOL's methodology required a "no finding" because with a prevailing method of pay containing just one grower, the 25% Rule was automatically violated. This situation also invites employers to manipulate the survey results to ensure "no-

PLAINTIFF'S MOTION FOR TEMPORARY
RESTRAINING ORDER - 24

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

DOL's approval of ESD's fracturing of piece-rate methods of pay is arbitrary in that it fails to comport with the clear reality that a majority of workers are paid by the piece rather than the hour, and it is also contrary to law in that it drives down wages and *working conditions* in the local labor market, depriving workers of their opportunity to earn more through speedy work, monitoring their own productivity, rather than being constantly harassed to work faster despite being paid a flat hourly rate. Dkt. #18 at 4; Dkt. #14 ¶¶ 20-23.

Piece rates with hourly guarantees are not meaningfully different from piece rates without such guarantees for purposes of calculating prevailing method of pay. As the Ninth Circuit has made clear, piece rates are *necessarily* higher than hourly rates because they "offer workers the opportunity to earn more than they might under an hourly wage." *Torres Hernandez,* 2024 WL 2559562 at *1. The Ninth Circuit specifically recognized that adding an hourly guarantee to a piece rate doesn't change the opportunity that a piece rate affords workers. *Id.* H-2A employers are already required to guarantee the AEWR per hour, and even if an hourly guarantee is higher

---

findings" by encouraging them to withhold bin sizes or to add meaningless hourly guarantees or bonuses to their survey responses.

PLAINTIFF'S MOTION FOR TEMPORARY
RESTRAINING ORDER - 25

than the AEWR, workers will still have the "opportunity to earn more" at the piece rate. [8]

Piece rates with bonuses are also the same as piece rates for purposes of calculating the prevailing wage. Bonuses are, by definition, paid for doing something above and beyond the basic task of picking, which is what the piece rate pays for. For example, end-of-season bonuses are paid to encourage workers to remain on the job until the end of the crop even though the amount of fruit may fall off toward the end; bonuses for unbruised fruit pay workers for taking extra care in harvesting. While those bonus payments may be stated as part of the wage, for purposes of calculating the wage paid for the basic harvesting activity, rather than extra work, only the piece rate matters. *See Frederick County Fruit Growers Assn. v. Dole,* 758 F.Supp. 17, 25-27 (D.D.C. 1991) (holding that quality, hardship, and end-of-season bonuses paid by H-2A apple growers could not be counted toward compliance with the required piece rate for harvest work because those bonuses represented payments for "extra work").

---

[8]  Logic dictates that hourly guarantees will always be set lower than most workers can make on the piece rate.  An hourly guarantee is simply an assurance to the slowest workers that they will not make less than a certain amount. *Torres-Hernandez*, 2024 WL 2559562 at *1.

PLAINTIFF'S MOTION FOR TEMPORARY
RESTRAINING ORDER - 26

Because piece rates with hourly guarantees and piece rates with bonuses are both piece rates for purposes of determining the prevailing wage paid for basic task of harvesting a particular crop, it was irrational for DOL to have approved treating straight piece rates, piece rates with hourly guarantees, and piece rates with bonuses as different "units of payment" for purposes of calculating the prevailing wage. Fundamentally, wage rates either pay workers by the time they spend working (i.e. by the hour) or based on their production.  Piece rates that pay workers based on their production should be treated as the same method of payment for purposes of determining what method of wage payment prevails.

Finally, treating an employer's piece rate as a distinct "unit of pay" because the employer could not remember the size of its bin is absurd. The survey form requires employers who pay by the piece to state the piece "rate" and the unit the "rate" is paid for. An employer that does not remember its unit size has simply failed to complete the survey form, and its responses should be disregarded if a follow-up by ESD does not clarify the unit size. For DOL to have approved ESD's reliance on such incomplete survey forms to conclude that no wage finding is possible—as ESD did in 2022 with Red Delicious, Granny Smith, and Fuji apples—carries irrationality to new heights.

PLAINTIFF'S MOTION FOR TEMPORARY
RESTRAINING ORDER - 27

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

This Court should find that Familias is likely to prevail on its claim that wage fracturing is arbitrary and contrary to law and enjoin enforcement of the 2022-Survey "no findings" for that reason.

### 4. Familias is likely to Prevail that Responses from H-2A Growers Taint the Wage Survey Data

The inclusion of responses from H-2A growers, in particular growers who were unlawfully allowed to pay AEWR-only wages where prevailing piece rates existed, depresses prevailing wages. Several large Washington employers reported on the 2022 prevailing wage survey that they paid $17.41 an hour to harvest fruit. *See* examples in this section, *infra.* In 2022, $17.41 was the minimum wage for the H-2A program (the AEWR). 86 Fed. Reg. 71282, 71283.

The Ninth Circuit ruled that DOL's approval of AEWR-only job orders was unlawful under its own regulations, and it ordered the exclusion of wages paid under those orders from future prevailing wage surveys. *Torres Hernandez v. Su*, No. 23-35582, 2024 WL 2559562, at *2 (9th Cir. May 24, 2024). On remand, the district court issued a permanent injunction:

> ESD shall exclude from future prevailing wage survey results any reported wages that (1) exactly match the AEWR; (2) were paid by an employer that had received an AEWR-only job order for the 2023 harvest season; and (3) were paid during the 2023 harvest season for work in an agricultural activity with a piece-rate prevailing wage during that season.

PLAINTIFF'S MOTION FOR TEMPORARY
RESTRAINING ORDER - 28

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

Dkt. # 113-2 at 7. Although the injunction applies to the 2023 survey data, DOL's blind approval of the 2022-Survey data without any consideration to whether those results were similarly tainted is arbitrary and capricious.

A review of the survey data for Gala apple harvest, Washington's most common apple variety, demonstrates that the data were in fact tainted. In all of 2022, there was a prevailing piece-rate wage for all apple varieties. Pashkowski Decl. Ex. A (immediately previous archived prevailing wages issued on January 24, 2022). Nevertheless, four large H-2A growers reported wages of $17.41 an hour, with those employers reporting that 684 of the 854 total employees (80% of the sample) received that wage, causing hourly wages to be the prevailing wage rate. Dkt. #76-3 at 309-10. However, had DOL removed the unlawful hourly wage data, it would have been left with a total of 13 employers reporting hourly wages to only 170 workers, making piece-rate wages the prevailing wage for Gala harvest. *Id.* at 310 (26 employers reporting 523 workers who paid piece-rate wages by the bin). Unlawful AEWR-only wage data also caused hourly wages to "prevail" in Cosmic Crisp and Golden Delicious apple harvests, and they combined with other arbitrary and capricious actions (25% Rule; wage fracturing) to eliminate piece-rate findings in Granny Smith and Fuji apples, as well. Pashkowski Decl. ¶¶ 15-17.

By their very nature, unlawful AEWR-only survey responses do not represent the actual prevailing wage in the labor market; that wage is represented by the

PLAINTIFF'S MOTION FOR TEMPORARY
RESTRAINING ORDER - 29

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

*prevailing piece-rate those employers were in fact required to pay*. Given the *Torres Hernandez* court's determination that approval of these wages represented a violation of 20 C.F.R. § 655.120(a), it was arbitrary and contrary to law for DOL to approve prevailing wage findings relying on those wages.

>    **5.    Familias is likely to prevail that DOL's Approval of Findings Using Estimated Worker Population in the Calculation of the Prevailing Method of Pay Violates the Controlling Regulation.**

Under the plain language of the prevailing wage regulations, survey results are to be determined based on the number of workers *reported* in employers' responses to the survey:

> The survey [must] report the average wage of U.S. workers in the crop activity or agricultural activity and distinct work task(s), if applicable, and geographic area using the unit of pay used to compensate the largest number of U.S. workers **whose wages are reported in the survey.**

20 C.F.R. 655.120(c)(1)(v) (emphasis added). The bolded phrase is used repeatedly in 20 C.F.R. 655.120(c). *E.g.*, subsections (c)(vii), (viii), (ix).

In direct violation of the plain language of its own regulation, DOL approved ESD's 2022 Results despite the fact that those results were not based on the number of *reported* workers provided by employers in their survey responses. Instead, DOL permitted ESD to mathematically manipulate the survey data, using a complex series of steps to determine the *estimated* number of workers in the entire population

PLAINTIFF'S MOTION FOR TEMPORARY
RESTRAINING ORDER - 30

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

represented by each employer's response, and to calculate the prevailing wage based on that manipulated data. Dkt. #76-3 at 154-55.

ESD's use of the number of "estimated" workers rather than the number of workers actually reported on the survey resulted in elimination of piece-rate prevailing wage findings or in no prevailing wage findings at all. ESD's manipulation of the Red Delicious survey data provides a stark example. The chart below, found in the Administrative Record, shows how ESD vaulted a single grower to the top of the majority-pay-unit using estimated workers, rather than reported workers. According to the survey responses, 20 C.F.R. §655.120(c)(1)(v) requires a finding that the prevailing "unit of pay" (i.e. the unit paid to the largest number of US workers) was the 47 x 47 x 24.5 bin size paid by 15 employers to 386 workers. However, using its "estimation" method, ESD took the single employer whose survey response reported 120 employees paid by the "not sure" sized bin and converted those 120 workers into 3,566.16 "estimated" workers, surpassing the 386 reported employees whose conversion to "estimated" workers only amounted to 3,159.47 workers, worthy of only second place. Yet because the employer with the majority of "estimated" workers violated the 25% Rule, the entirety of the Red Delicious harvest data was thrown out. Dkt. #76-3 at 363.

PLAINTIFF'S MOTION FOR TEMPORARY
RESTRAINING ORDER - 31

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

| Pay Unit | Dimension | Total Estimate | Total Reporte | Total Estimate | Total Reporte | Total Estimate | Majority Pay Unit |
|---|---|---|---|---|---|---|---|
| bin_y_not-app | not sure | 3566.16 | 120 | 29.718 | 1 | 31.65 | Yes |
| bin_n_not-app | 47x47x24.5 | 3159.47238 | 386 | 155.37777 | 15 | 28.04 | No |
| hour_n_not-a | not-applicable | 2821.59018 | 281 | 66.20139 | 5 | 25.05 | No |
| bin_y_not-app | 47x47x24.5 | 1524.00978 | 141 | 118.89438 | 11 | 13.53 | No |
| bin_n_bin | 47x47x24.5 | 194.55444 | 18 | 10.80858 | 1 | 1.73 | No |

*Id.* at 362. Had ESD used the number of workers actually reported on the survey, as required by the regulation, the employers who reported paying piece-rate wages to 386 reported workers would have represented the majority method of payment, and a prevailing piece-rate wage could have been found. ESD's estimation methodology resulted in similar "no-findings" for Fuji and Granny Smith apples. *Id.* at 304-05; 322-23.

Because 20 C.F.R. §655.120(c)(1)(v) unequivocally requires that survey results be based upon the "U.S. workers *whose wages are reported* on the survey" and not on some estimated number of workers, DOL's action in approving ESD's 2022 survey results can only be seen as arbitrary and contrary to DOL's own regulations. For this reason, Familias is likely to prevail on its challenge to DOL's approval of ESD's use of estimated worker numbers to determine the majority method of pay, justifying entry of a TRO and injunction enjoining DOL's use of the findings resulting from that unlawful methodology.

**III. Plaintiff Familias's members and Farmworkers Statewide Are Suffering and Will Continue to Suffer Irreparable Injury without Emergency Relief.**

PLAINTIFF'S MOTION FOR TEMPORARY
RESTRAINING ORDER - 32

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

This Court has previously found that farmworkers are irreparably harmed by a reduction in their harvest wages. Dkt. #40 at 17-18. After reviewing declarations filed in this case, this Court ruled that, "Washington farmworkers earn more wages when working at a piece-rate pay system versus an hourly pay system, and that these workers rely on these wages to survive." *Id.* at 18 (citing Dkt. # 10 at 4 (Decl. of Familias's President, José Ramírez)). This Court also found that DOL recognized that wages for domestic workers decrease when foreign workers are paid wages lower than the industry standard. Dkt. #40 at 18. ("In cases in which the AEWR is not higher than the prevailing wage . . . domestic workers would be disadvantaged by the use of the AEWR." (quoting 75 Fed. Reg. at 6893)). Given this Court's previous rulings and the fact that Washington farmworkers harvesting apples and berries[9] in 2025 will certainly experience a significant wage decrease if H-2A employers are allowed to pay the AEWR to harvest all apples and berries based on

---

[9] Because cherry harvest has begun, all job orders affecting that harvest have already been approved. 20 C.F.R. § 655.121(b) (job orders must be filed 60 days prior to date of need for workers); Dkt. #10 ¶19 (cherry harvest in June). Job orders for berry and apple harvest continue to be approved. *See id.* (timing of other harvests). Unless enjoined, the 2020 "no findings" will allow workers to be paid at the hourly AEWR in apple and berry harvest.

PLAINTIFF'S MOTION FOR TEMPORARY
RESTRAINING ORDER - 33

only four approved 2022 prevailing wage rates, irreparable injury has been established.

DOL's failure to protect prevailing piece rates will harm Washington harvest workers in another way: the employers that DOL allows to hire foreign workers at the hourly AEWR will report those hourly rates on next year's survey making it more likely that next year's survey will deem hourly wages to be the prevailing wage, not piece rates. Faced with these significant wage cuts, U.S. workers will be driven out of harvest work and replaced by foreign workers or forced to accept lower wages and driven further into poverty. While purely monetary damages are typically not considered irreparable, wage depression affects the structure of agricultural occupations and goes far beyond mere monetary injury. Dkt. #40 at 17-19.

## IV. The Remaining Equitable Factors Favor Granting a Preliminary Injunction.

The remaining equitable factors also favor granting preliminary relief. "There is generally no public interest in the perpetuation of unlawful agency action," whereas there "is a substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations." *League of Women Voters v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) (internal citations and quotations omitted). "Depression of local farmworker wages causes the exact harm that Congress sought to prevent in the H-2A program. And the public interest is served

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

by stability in farmworker wages." Dkt. #40 at 20-21 (citing *Torres Hernandez*, 2021 WL 6274440, at *11 (finding equitable factors favored enjoining 2019 prevailing wage survey)). The situation here is indistinguishable from this Court's prior ruling and that of *Torres Hernandez*.

**V. This Court should not require Familias to post a bond.**

The district court has discretion "as to the amount of security required, *if any*" and "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quotation and citation omitted). There is no harm to DOL from enjoining its unlawful action and this Court has previously ruled that Familias should not have to post a bond. Dkt. #40 at 21; Dkt. 145 at 15 (no bond required as DOL did not oppose).

## CONCLUSION

For all of the foregoing reasons, this Court should enter a TRO and Preliminary Injunction:

1.  Enjoining DOL from implementing or enforcing the "no finding" results in the 2022 Prevailing Wage Findings,

2.  Requiring DOL to reinstate the 2020 Wage Prevailing Wage results for all crop activities other than the four for which the 2022 Survey actually made prevailing wage findings, and

PLAINTIFF'S MOTION FOR TEMPORARY
RESTRAINING ORDER - 35

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

3. Ordering DOL to immediately take steps to ensure that its postings on DOL's Agricultural Online Wage Library conform to this Order; and depending on the basis for the Court's ruling:

4. Enjoining DOL from implementing 20 C.F.R. § 655.120(c)(1)(ix), the "25% Rule," in Washington State, to eliminate entire sets of data until such time as judgment is entered in this case;

5. Enjoin DOL from calculating the predominant method of pay under 20 C.F.R. § 655.120(c)(1)(v) by subdividing "piece rate" survey responses into distinct categories including piece rates with hourly guarantees, piece rates with different kinds of bonuses, piece rates with non-convertible piecework units (e.g. bin sizes) as to prevailing wage determinations for Washington State until such time as judgment is entered in this case;

6. Enjoin DOL from calculating prevailing wage rates for crop/variety activities using data reflecting unlawful wages paid by survey respondents employing H-2A workers in Washington State until such time as judgment is entered in this case; and

7. Enjoin DOL from interpreting 20 C.F.R. § 655.120(c)(1)(v) to permit use of estimated worker values to calculate the prevailing method of pay in a crop/variety activity until such time as judgment is entered in this case.

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

RESPECTFULLY SUBMITTED this 23rd day of June, 2025.

We certify that this memorandum contains 8245 words, in compliance with the Local Civil Rules.

COLUMBIA LEGAL SERVICES

s/ *Andrea Schmitt*
Andrea Schmitt, WSBA #39759

s/ *Joachim Morrison*
Joachim Morrison, WSBA #23094

s/ *Bonnie Linville*
Bonnie Linville, WSBA #49361
711 Capitol Way S., Ste. 706
Olympia, WA  98501
(360) 943-6260
andrea.schmitt@columbialegal.org;
joe.morrison@columbialegal.org;
bonnie.linville@columbialegal.org

FARMWORKER JUSTICE

s/ *Lori Johnson*
Lori Johnson, North Carolina State Bar Association #24227
1126 16th St. NW, Suite LL101
Washington, DC 20006
ljohnson@farmworkerjustice.org
*Admitted Pro Hac Vice*

BARNARD IGLITZIN & LAVITT LLP

s/ *Kathleen Phair Barnard*
Kathleen Phair Barnard, WSBA #17896
18 West Mercer Street, Ste. 400
Seattle, WA 98119-3971
(206) 285-2828
barnard@workerlaw.com

s/ *Edward Tuddenham*
Edward Tuddenham, New York State Bar #2155810
228 W 137th St.
New York, NY  10030
edwardtuddenham@gmail.com
*Admission pro hac vice pending*

*Attorneys for Plaintiff Familias Unidas por la Justicia*

PLAINTIFF'S MOTION FOR TEMPORARY
RESTRAINING ORDER - 37

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260