1

**The Honorable John H. Chun**

2

3

4

5

6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

7

FAMILIAS UNIDAS POR LA JUSTICIA, AFL-CIO, a labor organization;

No. 2:24-cv-00637-JHC

8

Plaintiff,

9

vs.

SUPPLEMENTAL AND THIRD AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

10

UNITED STATES DEPARTMENT OF LABOR, and LORI CHAVEZ DEREMER in her official capacity as United States Secretary of Labor,

11

12

13

Defendants.

14

## I.    PRELIMINARY STATEMENT

15

1.      Plaintiff Familias Unidas por la Justicia, AFL-CIO (Familias), a Washington-

16

State farmworker union, files this Administrative Procedure Act (APA) case against the United

17

States Department of Labor challenging the agency's 2022 prevailing wage rules related to the

18

federal "H-2A" temporary agricultural visa program, certain policies and practices implementing

19

those prevailing wage regulations, and the 2022 prevailing wage findings approved and

20

published by DOL pursuant to those policies and practices. The challenged rules, policies and

21

practices, and the resulting approved prevailing wages, are arbitrary, capricious, and contrary to

22

law and are adversely affecting the wages and working conditions for farmworkers throughout

23

Washington.

SUPPLEMENTAL AND THIRD AMENDED
COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 1

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

2.      Familias seeks preliminary and final declaratory and injunctive relief to prevent DOL's unlawful actions from drastically reducing the wages of Washington farmworkers and to protect those wages until prevailing wage findings that comply with federal law can be made.

## II.      JURISDICTION AND VENUE

3.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and §2201(a) (declaratory relief). Jurisdiction is also proper under the judicial review provision of the Administrative Procedure Act, 5 U.S.C. § 702.

4.      Declaratory and injunctive relief is sought consistent with 5 U.S.C. §§ 705 and 706 and as authorized in 28 U.S.C. §§ 2201 and 2202.

5.      The proper venue for this action is in the Western District of Washington pursuant to 28 U.S.C. § 1391(e)(1)(C) because DOL Defendants are an agency of the United States and an officer acting in her official capacity, Plaintiff Familias Unidas por la Justicia resides in the District and has farmworker members in the district, and no real property is involved in this action.

## III.      PARTIES

6.      Plaintiff Familias Unidas por la Justicia is a farmworker labor union headquartered in Skagit County actively engaged in advancing the economic interests of its farmworker members.

7.      Defendant Lori Chavez DeRemer is sued in her official capacity as the Acting Secretary of Labor who is charged with the supervision and management of all decisions and actions within the United States Department of Labor (DOL).

8.      Defendant DOL is a federal agency that is responsible for developing, implementing, and administering the wage system for the H-2A program, including the 2022

SUPPLEMENTAL AND THIRD AMENDED
COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 2

prevailing wages rules. Defendants DOL and Secretary DeRemer are collectively referred to below as "DOL."

## IV.    STATEMENT OF FACTS

### A.    Familias Background

9.    Plaintiff Familias is affiliated with the Washington State Labor Council, AFL-CIO and has approximately 900 members throughout Washington, including both domestic and H-2A workers.

10.    Familias has members who are U.S. workers who participate in the fruit harvest labor market in Washington, including in the Western District of Washington.

### B.    Statutory and Regulatory History

11.    The H-2A program allows U.S. employers to bring foreign nationals to the United States to fill temporary agricultural jobs only "if unemployed persons capable of performing such service or labor cannot be found in this country." 8 U.S.C. § 1101(a)(15)(H)(ii)(A).

12.    The Department of Homeland Security is authorized to issue H-2A visas on the petition of the requesting employer, after consulting with DOL. 8 U.S.C. § 1184(c).

13.    By statute, no H-2A visas can be issued unless DOL certifies that  that "the employment of [foreign] labor . . . will not adversely affect the wages and working conditions of workers in the United States similarly employed," and that "there are not sufficient workers who are able, willing, and qualified, and who will be available at the time and place needed, to perform the labor or services" requested. 8 U.S.C. § 1188(a)(1).

14.    To fulfill its duty to make the certification required by the statute, and to prevent adverse effects on the wages of domestic farmworkers, DOL regulations have long required that

SUPPLEMENTAL AND THIRD AMENDED
COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 3

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

1    employers seeking H-2A visas offer and pay the highest of the hourly AEWR[1], the prevailing

2    wage rate, the agreed-upon collective bargaining wage, or the Federal or State minimum wage.

3    20 C.F.R. § 655.120(a).

4        15.    In Washington, there are very few collectively bargained farm wages, and the

5    State and federal minimum wage are both lower than the AEWR; therefore, as a practical matter,

6    20 C.F.R. § 655.120(a) requires employers seeking to import foreign workers to offer and pay

7    the higher of the prevailing wage or the AEWR.

8        16.    DOL requires employers to pay the highest of the listed wages to "ensure[] that

9    domestic [farm]workers receive the greatest potential protection from the adverse effects on their

10    wages and working conditions" caused by the importation of foreign workers. 75 Fed. Reg.

11    6884, 6893 (Feb. 12, 2010); *see generally id.* at 6891-93.

12        17.    When the prevailing wage for a crop activity is higher than the AEWR, "domestic

13    workers would be disadvantaged by the use of the AEWR instead of the higher alternative." *Id.*

14    at 6893; *see also* 6895 fn 9.

15        18.    The prevailing wage serves "as an important protection for workers in crop and

16    agricultural activities that offer piece rate pay or higher hourly rates than the AEWR." 88 Fed.

17    Reg. 12760, 12775 (Feb. 28, 2023).

18        19.    Title 8 U.S.C. §1188(a)(1) and DOL's regulations implementing that statute

19    impose a duty upon DOL to ensure that prevailing wages in crop activities that are higher than

20    the AEWR are protected before issuing the certification required by §1188(a)(1).

21

22

23    [1] The AEWR is the minimum hourly wage for the H-2A program and is set annually by DOL for each state.

SUPPLEMENTAL AND THIRD AMENDED
COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 4

20.     Since 1981, if not before, DOL determined the prevailing wage in crop activities using the methodology set forth in the sub-regulatory "Handbook ETA 385." 87 Fed. Reg. 61660, 61679 (Oct. 12, 2022).

21.     DOL funds state workforce agencies (SWAs) to conduct prevailing wage surveys at least once a year using DOL's guidelines and to report the findings to DOL for approval.

22.     The SWA in Washington is the Washington State Employment Security Department (ESD).

23.     Because H-2A use in Washington did not begin until the early 2000s, ESD conducted its first prevailing wage surveys for H-2A in 2006.

24.     From 2006 to 2018, prevailing wage surveys performed by ESD determined that piece-rate wages (pay by the pound or bin of fruit) were the prevailing wages for the harvest of most common varieties of apples, cherries, and pears; in the years in which there was a blueberry harvest finding, blueberry was predominately found to be harvested at a piece rate.

25.     In the 2019 survey, the number of fruit harvest season prevailing piece-rate findings made by ESD fell from 21 to 6. DOL published these findings as the rates applicable to the 2021 season. [2]

26.     On information and belief, this precipitous drop in prevailing piece rate wage findings was caused by a number of factors, including a sharp decline in survey responses from

_____

[2] Because surveys are done late in the year, and because analysis of the results takes months, survey results are never published in the same year the survey responses are collected and are usually released by ESD in preliminary form in early summer of the year after the survey was done.

SUPPLEMENTAL AND THIRD AMENDED
COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 5

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

agricultural employers, manipulation of survey responses by the agricultural industry, and methodological missteps by ESD and DOL under prior prevailing wage guidance.

27.     Farmworkers sued DOL regarding the 2019 employer survey findings and obtained a preliminary injunction requiring DOL to continue to use the prevailing wages derived from the 2018 employer wage survey during 2021 and subsequent seasons until DOL conducted a new, non-arbitrary prevailing wage survey. Order Granting Plaintiffs' Revised Motion for Preliminary Injunction, *Torres Hernandez v. USDOL, et al.*, No. 1:20-cv-03241-SMJ (E.D. Wash., March 1, 2020).

28.     The 2020 employer wage survey conducted by ESD reported more prevailing piece-rate findings for fruit harvest than the 2019 survey had, notably for *general* apple, berry, and cherry harvests. Those general prevailing wage findings set a minimum for all varieties within the crop activity.

29.     The parties jointly asked the court to modify the injunction to allow DOL to proceed with publication of the 2020 prevailing wage findings.

30.     DOL published the prevailing wages derived from the 2020 employer wage survey on January 24, 2022, and, pursuant to the agreed modified injunction, those prevailing wages were applicable to harvest work performed after that date.

**C.     DOL Adopted its New 2022 Prevailing Wage Survey Regulations to Increase Prevailing Wage Findings and Protect Domestic Workers from Wage Stagnation Due to the Importation of Foreign H-2A Workers but those Regulations Have Had the Opposite Effect**

31.     In the fall of 2022, DOL published new prevailing wage regulations, which took effect on November 14, 2022. 87 Fed. Reg. 61660 (Oct. 12, 2022).

32.     DOL acknowledged in the notice of proposed rulemaking that resulted in the November 2022 final regulations that "concerns about wage depression from the importation of

SUPPLEMENTAL AND THIRD AMENDED
COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 6

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

1   foreign workers [under the H-2A visa program] are particularly acute because access to an

2   unlimited number of foreign workers in a particular labor market and crop activity or agricultural

3   activity could cause the prevailing wages of workers in the United States similarly employed to

4   stagnate." 84 Fed. Reg. 36168, 36180 (July 26, 2019).

5       33.    DOL proposed changes to its prevailing wage regulations to further the goal of

6   "rigorously enforc[ing] and administer[ing]" the laws governing entry of nonimmigrant H-2A

7   workers into the United States "[i]n order to create higher wages and employment rates for

8   workers in the United States, and to protect their economic interests."84 Fed. Reg. 36168, 36169

9   (July 26, 2019).

10      34.    DOL proposed changes to its prevailing wage regulations to "modernize the

11  prevailing wage methodology and empower States to produce a greater number of reliable

12  prevailing wage surveys results." 84 Fed. Reg. 36168, 36179, 85 (July 26, 2019).

13      35.    DOL proposed changes to its prevailing wage regulations to "work with the States

14  through their annual grant plans to focus prevailing wage surveys on those crop activities and

15  agricultural activities where prevailing wage surveys are most useful to protect the wages of U.S.

16  workers, *including for activities for which employers commonly pay based on a piece rate* and

17  when State agencies know based on past experience that prevailing wage surveys commonly

18  result in hourly wages higher than the AEWR." 84 Fed. Reg. 36168, 36180 (July 26, 2019)

19  (emphasis added).

20      36.    DOL proposed changes to its prevailing wage regulations because its previous

21  "standards often result[ed] in 'no finding' from a prevailing wage survey [which is] both a waste

22  of government resources and fail[s] to meet the goal of producing reliable and accurate

23  prevailing wage rates." 84 Fed. Reg. 36168, 36187 (July 26, 2019).

SUPPLEMENTAL AND THIRD AMENDED
COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 7

37.     DOL proposed changes to its prevailing wage regulations because it was "concerned that employers may be incentivized not to respond to a survey under the existing methodology because [DOL] does not issue a prevailing wage if the sample is too small." By requiring smaller sample sizes in its survey methodology, DOL hoped to see more "prevailing wage[s] being issued than under the current methodology." 84 Fed. Reg. 36168, 36187 (July 26, 2019).

38.     DOL proposed changes to its prevailing wage regulations to "broaden the categories of State entities that may conduct prevailing wage surveys to encourage more prevailing wage surveys to be conducted by reliable sources" including State colleges and universities. 84 Fed. Reg. 36168, 36186 (July 26, 2019).

39.     Although ESD submitted the results of its 2021 Survey (conducted under the prior methodology) to DOL in mid-2022, it withdrew those results after the November 2022 regulations were issued and indicated that it would re-calculate prevailing wages from the 2021 survey using the new methodology.

40.     In the meantime, DOL continued to list in its official Agricultural Online Wage Library (AOWL) the 2020 prevailing wage results as applicable to H-2A applications during the 2023 season.

41.     In May 2023, DOL, without explanation or opportunity for comment, stopped listing the 2020 prevailing wage rates as the rates applicable to H-2A applications for 2023, leaving no prevailing wage protections at all for Washington State workers.

42.     In May 2023, ESD notified DOL that it had changed course and would not submit its findings from the 2021 survey based on the methodology in the new rule. Instead, it indicated

SUPPLEMENTAL AND THIRD AMENDED
COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 8

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

that it would apply the new methodology to calculate prevailing wages from the results of the 2022 survey.

43.     In July 2023, ESD sent DOL its findings based on the 2022 survey. Those results made only four prevailing wage findings for fruit harvest—two for cherry and two for pear.

44.     The number of harvest prevailing wage findings from the surveys performed in 2018 through 2022 (including the preliminary 2021 findings calculated under the new rule but not submitted to DOL for approval) are represented in the bar graph below.



45.     DOL validated and published the results from the 2022 Survey on June 19, 2025. This validation and publication constituted final agency action for all rules, policies, and practices applied by DOL as to the 2022 Survey results.

SUPPLEMENTAL AND THIRD AMENDED
COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 9

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

46.     DOL archived all previously controlling 2020 results and replaced them wholesale with all of the 2022 results, including by replacing previously existing prevailing wage rates with a notation of "no finding."

47.     As of the date of this filing, Washington employers continue to submit H-2A job orders for harvest of the state's later crops—apples, berries, and pears.

**D.     DOL's Prevailing Wage Methodology Runs Counter to DOL's Express Purposes for Changing the Regulations**

48.     The reason that ESD's 2022 survey found almost no prevailing piece rates is because of the arbitrary and capricious nature of the 2022 prevailing wage regulations and DOL's policies for implementing those regulations in Washington State. Contrary to their stated purpose, the regulations and DOL's policies implementing the regulations make it virtually impossible to find prevailing wage rates, particularly prevailing piece rates.

49.     The particular provisions and policies that are causing this effect are set forth below.

**1.     20 CFR § 655.120(c)(1)(ix)—the "25% Rule"—Arbitrarily Eliminates Virtually All Prevailing Wage Determinations for the State's Largest Crops.**

50.     Pursuant DOL's 2022 prevailing wage regulation 20 CFR § 655.120(c)(1)(ix), effective in November 2022, where there are more than 4 employers in a surveyed crop activity, wages paid by a single employer responding to the survey must not exceed "25 percent of the sampled wages in the unit of pay used to compensate the largest number of U.S. workers whose wages are reported in the survey."

51.     Though this interpretation was never set forth in the discussion of the 25% rule in the NPRM, DOL interpreted the final 25% Rule to mean that if 25% or more of the workers reported on the survey paid by the prevailing method of pay are employed by the same employer,

the entire wage survey for that crop activity has to be thrown out, even if, after eliminating the survey response of the one large employer, there are still sufficient responses to make a prevailing wage determination in compliance with 20 C.F.R. §655.120(c), and DOL developed official guidance materials instructing SWAs to apply the rule in that fashion in conducting prevailing wage surveys.

52.    DOL's interpretation was a final agency action.

53.    The 25% Rule was borrowed from a 1990's-era rule that the Federal Trade Commission and the Department of Justice adopted to encourage health care industry players to share confidential wage information without fear of running afoul of anti-trust law.

54.    In 2023, both the Federal Trade Commission and the Department of Justice withdrew the use of the 25% Rule as a safe harbor because it was outdated.

55.    The 25% Rule does not contribute in any way to the reliability, validity, accuracy, or precision of prevailing wage findings.

56.    DOL's interpretation of the 25% Rule, which it has instructed ESD to use, has no statistical purpose.  It does not contribute in any way to the reliability, validity, accuracy, or precision of prevailing wage findings.

57.    In adopting and its interpreting the 25% Rule, DOL provided no support for the idea that survey data from large employers renders their survey responses unrepresentative of Washington State employers in the crop activity.

58.    In adopting the 25% Rule and its interpretation of the 25% Rule, DOL made no finding that large employers pay differently from smaller employers engaged in the same crop activity in Washington State.

SUPPLEMENTAL AND THIRD AMENDED
COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 11

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

59.     In adopting the 25% Rule and its interpretation of the 25% Rule, DOL did not make any finding that the rates of pay offered in a crop activity by large employers are significantly different from the rates of pay offered by smaller employers utilizing the same method of payment.

60.     DOL's interpretation of the "25% Rule" arbitrarily causes statistically valid data to be ignored, and prevents prevailing wage findings from being made in direct violation of 8 U.S.C. §1188 and in contravention of the intended purpose of DOL's 2022 prevailing wage regulations and, as a result, it fails to protect the wages of local workers who normally work at piece rates in the open labor market.

61.     As an example of the effect of DOL's interpretation of the 25% Rule, the Rule caused ESD's 2022 survey findings to eliminate prevailing wage findings for harvest work in at least 15 major Washington fruit varieties or variety groups including:

     a.   General apple harvest

     b.   Red Delicious apple harvest

     c.   Honeycrisp apple harvest

     d.   Granny Smith apple harvest

     e.   Golden Delicious apple harvest

     f.   Gala apple harvest

     g.   Fuji apple harvest

     h.   Cripps Pink ("Pink Lady") apple harvest

     i.   Cosmic Crisp apple harvest

     j.   Ambrosia apple harvest

     k.   General cherry harvest

SUPPLEMENTAL AND THIRD AMENDED
COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 12

l.  Red cherry harvest

m.  Sweetheart cherry harvest

n.  Yellow cherry harvest

o.  Dark-sweet cherry harvest

62.    Had DOL required ESD to simply remove the wage data reported by the large employer that exceeded 25%, and calculate a prevailing wage from the remaining data, or to employ some other statistical method of compensating for the large grower, assuming such compensation were necessary, an assumption that DOL wholly fails to support, prevailing rates would have been found for 12 of these 15 crop activities including general cherry harvest and general apple harvest. Those two findings alone would have ensured that all apple and cherry varieties were protected by a prevailing piece rate finding.

63.    The use of the 25% Rule, as interpreted by DOL, will prevent future surveys from finding valid prevailing wage findings just as it did with the 2022 survey, to the detriment of Washington State farmworkers.

64.    The 25% Rule encourages employer manipulation of the survey by giving an incentive to employers to discourage survey responses except from one large employer in order to defeat prevailing wage findings.

65.    Elimination of survey data based on the "25% Rule" results in direct harm to Washington farmworkers as prevailing piece rate wages are discarded and a "no finding" allows agricultural employers to pay lower, minimum hourly wage AEWR rates instead of higher piece-rate wages.

**2.    20 C.F.R. § 655.120(c)(2) Arbitrarily Eliminates Prevailing Wages After One Year.**

SUPPLEMENTAL AND THIRD AMENDED
COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 13

66.     The new prevailing wage methodology regulations also include a rule that prevailing wages expire one year after being posted on DOL's website. 20 CFR § 655.120(c)(2).

67.     The explanation that DOL offered for this "One-Year Rule" was that it would ensure that prevailing wages were based "on the most recent data." 87 Fed. Reg. 61660, 61701 (Oct. 12, 2022). Implicit in that explanation was the promise that prevailing wages would be set each year to replace the ones that were expiring.

68.     However, in practice DOL has demonstrated that it has no intention to set prevailing rates each year and that the One-Year Rule simply operates to leave U.S. workers with no wage protections at all if it chooses not to publish new prevailing wages.

69.     Pursuant to the Rule, DOL expired the 2020 survey prevailing wages effective January 2023, but did nothing to replace those expired prevailing wages in the seventeen (17) months after that time.

70.     In the past, DOL had a consistent past practice of leaving prevailing wages published until such time as new prevailing wages were published. Handbook 385 requires that surveys be conducted "often enough . . . to permit current prevailing wage rate findings to be made applicable to the employment of the agricultural workers" and that "[s]hould a survey not result in a prevailing wage rate finding, another survey should be made at the earliest appropriate time."

71.     Because the regulations implied that new prevailing wages, based on the most recent data, would be issued each year, DOL saw no need to explain, and did not explain why a prevailing wage rate should expire after a year *even in the absence of a new prevailing wage finding. Nor did it explain why it was abandoning its past practice of continuing to enforce a prevailing wage finding until such time as a new finding is made.*

SUPPLEMENTAL AND THIRD AMENDED
COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 14

**3.    DOL Permits ESD to Use an Unnecessary and Overly Complex Methodology to Estimate Whether There Are At Least 5 Employers and 30 Workers in a Crop Activity.**

72.    Prior to the 2022 regulations, DOL required that, in order to find a prevailing wage, the survey data collected for a crop activity had to exceed a certain percentage of workers employed in that crop activity. Pursuant to that policy, ESD first had to estimate the number of workers working in that crop activity statewide, and then it had to ensure that 15% of those workers were represented in the growers' responses to the wage survey for that crop activity. The most common threshold was a 15% sample size, and this rule was known as the "15% rule."

73.    In order to comply with the 15% rule, ESD developed a complex methodology designed to estimate the population of workers who work in each crop activity (e.g. "gala apple harvest"). This methodology, first used by ESD in 2018, used a statistical method known as "capture-recapture," which is most commonly used to estimate wildlife populations, such as fish in a lake.

74.    This methodology relies on analysis of survey respondents' responses in previous years and on "raking algorithms" to produce estimates of the percentage of the total population represented by each respondent. It requires a certain minimum number of responses in order to be implemented, and those responses must come from a certain ratio of "small, medium, and large" employers, as defined by ESD.

75.    DOL's new 2022 regulations specifically eliminated the 15% rule.

76.    The 2022 regulations replaced that rule with a much simpler population estimate. Under the new rules, the SWA need only estimate whether there are at least 30 workers and 5 employers in a crop activity, 20 C.F.R. §655.120(c)(1)(vii) and (viii), as that affects the number of employers and workers that must be reported in the survey responses.

SUPPLEMENTAL AND THIRD AMENDED
COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 15

77.     ESD has chosen to use the same capture-recapture statistical methodology it used before the 2022 regulations took effect in order to make the simple determination of whether there are at least 30 workers and five employers in a crop activity.

78.     DOL indicated that these simple estimates could be made based upon such things as "UI databases, open and closed job orders, State labor market information, and information provided by State agricultural extension offices. . ." 87 Fed. Reg. at 61694.

79.     DOL's approval of the 2022 survey results constitutes final agency action by DOL that ESD's use of the capture-recapture methodology is consistent with the 2022 prevailing wage regulations.

80.     ESD refuses to make prevailing wage findings when there is insufficient data necessary to carry out the capture-recapture analysis—an outcome that occurs frequently. ESD's use of its capture/recapture population estimate methodology, including the "Small, Medium, Large" grower response requirement, has resulted in harvest of dozens of crops having no prevailing wage finding from the 2022 survey, including: Braeburn, Jonagold, and Jazz apples; Rainier, Lapin, and Skeena cherries; Bosc, D'Anjou, and Asian pears; all berries (blueberries, strawberries, raspberries, and blackberries).

81.     DOL's approval of ESD's capture recapture methodology has not only arbitrarily resulted in "no findings" in the 2022 survey results, but will arbitrarily and unlawfully preclude ESD and DOL from making prevailing wage findings in future surveys after the 2022 survey.

82.     DOL's approval of ESD's use of the capture/recapture methodology to estimate whether there are 5 employers and 30 workers in a crop activity encourages employer manipulation of the survey by giving an incentive to employers not to respond to the survey and thereby preclude ESD from calculating prevailing wage findings.

SUPPLEMENTAL AND THIRD AMENDED
COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 16

83.    DOL's approval of ESD's use of that methodology results in direct harm to Washington farmworkers as the "no finding" that results when the methodology cannot be applied to a crop activity allows agricultural employers to pay lower, minimum hourly wage AEWR rates instead of higher piece-rate wages for that activity.

**4.    DOL's Approval of the Use of ESD's Population Estimate Methodology in the Calculation of Prevailing Wages Violates the Controlling Regulation.**

84.    20 C.F.R. 655.120(c)(1)(v), effective in November 2022, requires that for a prevailing wage finding to be valid, "[t]he survey [must] report the average wage of U.S. workers in the crop activity or agricultural activity and distinct work task(s), if applicable, and geographic area using the unit of pay used to compensate the largest number of U.S. workers **whose wages are reported in the survey**," (emphasis added).

85.    In direct violation of this regulation, DOL approved ESD's use of its complex capture/recapture methodology to weight the data reported by employers on the 2022 survey before calculating the prevailing wage from the weighted data. That is, DOL took final agency action approving ESD's mathematical manipulation of data rather than requiring it to determine the prevailing wage based on the workers represented by each survey response as § 655.120(c)(1)(v) requires.

86.    In some cases, using the manipulated number of workers rather than the number of workers actually *reported* on the surveys causes different units of pay to be determined to be the most common, resulting in elimination of piece-rate prevailing wage findings or in no prevailing wage findings at all.

87.    In one instance in the 2022 survey, ESD's manipulation of the survey data resulted in the most common method of payment being represented by a single employer and

SUPPLEMENTAL AND THIRD AMENDED
COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 17

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

that one single employer's wage was then the reported prevailing wage for the crop activity, condemning the data to discard by DOL's application of the 5 employer and 25% rules.

88.    DOL's final agency action approving ESD's decision to manipulate survey responses and calculate the prevailing wage based on the manipulated data rather than the actual survey data, arbitrarily prevented the finding of prevailing wages based on the 2022 survey and will arbitrarily and unlawfully prevent the finding of prevailing wages in future.

**5.    20 CFR § 655.120(c)(1)(viii)—the "5 Employer Rule"—Arbitrarily Eliminates Prevailing Wage Determinations.**

89.    Pursuant DOL's 2022 prevailing wage regulation 20 CFR § 655.120(c)(1)(vii), effective in November 2022, "[w]here the estimated universe of employers is at least five, the survey includes wages of U.S. workers employed by at least five employers in the unit of pay used to compensate the largest number of U.S. workers whose wages are reported in the survey. Where the estimated universe of employers is less than five, the survey includes wages of U.S. workers employed by all such employers."

90.    According to ESD's 2022 survey findings, DOL's "5 Employer Rule" found in 20 CFR § 655.120(c)(1)(viii) eliminated prevailing wage findings for Fuji, Red Delicious, and Granny Smith apples.

91.    According to ESD's 2022 survey data, 42 employers responded to the Fuji harvest survey and 69% reported paying a piece-rate wage.

92.    According to ESD's 2022 survey data, 33 employers responded to the Red Delicious harvest survey and 85% reported paying a piece-rate wage.

93.    According to ESD's 2022 survey data, 35 employers responded to the Granny Smith harvest survey and 77% reported paying a piece-rate wage.

SUPPLEMENTAL AND THIRD AMENDED
COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 18

94.    For Fuji, Red Delicious, and Granny Smith apples, ESD determined the majority method of pay was a piece rate wage that contained wage information from only one employer who reported the company was "not sure" of its own bin size.

95.    Because ESD created an entirely separate wage category with only one employer in the majority method of pay, the crop activity was guaranteed to fail the "5 Employer Rule."

96.    The Fuji, Red Delicious, and Granny Smith harvest surveys failed the "5 Employer Rule" because the universe for each apple variety was more than five employers, however, ESD determined the unit of pay used to compensate the top method of pay only had one employer so there were not "at least five employers in the unit of pay."

97.    For Fuji, Red Delicious, and Granny Smith apples, large amounts of survey data were entirely disregarded, and ESD did not make a finding.

98.    The application of the "5 Employer Rule" in 20 C.F.R. § 655.120(c)(1)(viii) causes DOL to arbitrarily disregard statistically valid data and to unnecessarily fail to make prevailing wage findings, thereby failing to protect the wages of local workers who normally work at piece rates in the open labor market.

99.    The 5 Employer Rule encourages employer manipulation of the survey by giving an incentive to employers not to respond to the survey.

100.    Elimination of survey data based on the "5 Employer Rule" results in direct harm to Washington farmworkers as prevailing piece-rate wages are discarded and a "no finding" allows agricultural employers to pay lower, minimum hourly wage AEWR rates instead of higher piece-rate wages.

SUPPLEMENTAL AND THIRD AMENDED
COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 19

**6.    DOL Allows Wages that Have Been Depressed by the H-2A System to Taint Prevailing Wage Findings.**

101.    DOL made it clear throughout its new prevailing wage regulation process that "wage surveys include only wages of U.S. workers" and should not be tainted by H-2A wages.

102.    The implication of DOL's statement that the survey should gather wage data paid to U.S. workers is that these are wages offered and paid on the open market, not wages U.S. workers are forced to take due to the influx of thousands of foreign H-2A workers.

103.    ESD's 2022 agricultural employer harvest wage survey included responses from large agricultural employers who likely use the H-2A visa program and hired hundreds of foreign agricultural workers in 2022.

104.    Despite the overwhelming evidence that agricultural employers offer and pay piece-rate wages to harvest fruit crops, several large employers reported they paid $17.41 an hour to harvest fruit in 2022.

105.    In 2022, $17.41 was the minimum wage for the H-2A program (the AEWR).

106.    On information and belief, the vast majority of growers reporting wages equal to the AEWR on the survey are H-2A growers. H-2A growers were required to pay a piece-rate prevailing wage in 2022 for apple, cherry, and berry harvests.

107.    A prime example of this arbitrary acceptance hourly wages from H-2A growers is evident in ESD's use of DOL's new regulations to calculate the prevailing wage for the harvest of Gala apples where four agricultural employers reported paying $17.41 an hour—one of which reported it employed 450 domestic workers at that wage.

108.    According to ESD's data provided to DOL, the four employers who reported paying the H-2A minimum hourly wage to harvest Gala apples reported employing a total of 684 workers—81% of reported workers earning hourly wage.

SUPPLEMENTAL AND THIRD AMENDED
COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 20

109.    There is no evidence ESD or DOL ever questioned the validity of those AEWR wage submissions by agricultural employers.

110.    The inclusion of this large amount of hourly wage data from H-2A growers caused ESD to initially conclude that hourly wages were the prevailing wage rate for Gala apples.

111.    If ESD had removed this hourly wage data from H-2A growers, it would have been left with a total of 15 employers reporting hourly wages in the Gala harvest employing less than 200 workers.

112.    ESD made a finding that hourly was the majority method of pay even though 47 agricultural employers reported paying piece-rate wages to 884 domestic workers to harvest Gala apples in 2022.

113.    On information and belief, the inclusion of data from H-2A growers is harming Washington workers by causing adverse effect on their wages and working conditions.

**7.    DOL Arbitrarily Permits ESD to Eliminate Piece-rate Survey Data by Creating Multiple Piece-rate "Units of Pay."**

114.    The new prevailing wage methodology requires SWAs to divide survey results by unit of pay with the most common unit of pay used to compensate the largest number of workers among those reported on the survey.

115.    DOL's methodology requires pay by the hour to be segregated from pay by the piece as different methods of payment, but further provides that piece rates that are readily convertible to a common unit (i.e. different sizes of bins) be treated as the same method of payment.

116.    In its 2022 survey findings, ESD treated piece rates with hourly guarantees and piece rates with bonuses to be different "units of pay" from straight piece rates without bonuses

SUPPLEMENTAL AND THIRD AMENDED
COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 21

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

1    or guarantees, even if the piece rate units were convertible, one to another.  For example, ESD

2    would treat $2.00/box as a different unit of payment from $2.00/box with an hourly guarantee.

3        117.    DOL's approval of ESD's 2022 prevailing wage findings constitutes final agency

4    action that sub-dividing piece rates in that way is consistent with DOL's prevailing wage finding

5    regulations.

6        118.    As a result of DOL's approval of the policy of subdividing piece rates, it is

7    possible that even though the majority of the workers on the survey responses are paid a piece

8    rate with or without a guarantee or bonus, an hourly rate (paid to a minority of the workers) will

9    be deemed to be the prevailing rate. For example, if 66% of all workers are paid a piece rate,

10   with 33% of the reported workers paid by the piece and another 33% paid at a piece rate with an

11   hourly guarantee, and the remaining 34% of workers are paid by the hour, DOL's policy would

12   deem the hourly rate the prevailing rate.

13       119.    In the past, DOL has regularly certified sets of prevailing wage findings in which

14   ESD has fractured piece-rate pay into different sub-categories as part of its analysis.

15       120.    ESD applied this methodology, with DOL's approval, in analyzing the entire 2022

16   employer survey, resulting in the loss of numerous piece-rate wage findings in Washington's

17   fruit harvests.

18       121.    Every lawfully offered wage has an hourly guarantee. All employers who pay by

19   the piece must guarantee that workers will earn at least the hourly State or federal minimum

20   wage and all H-2A employers must guarantee that workers will receive at least the hourly

21   AEWR.

22       122.    From the perspective of all but the least skilled workers, what is important is the

23   piece rate (and the amount of the piece rate). Pay by the piece, with or without a guarantee,

SUPPLEMENTAL AND THIRD AMENDED
COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 22

1  ensures that workers can increase their earnings by being productive. The more skilled a worker

2  is, the more he or she can earn on a piece rate.

3      123.    In other words, U.S. workers do not accept piece rate jobs because an hourly

4  guarantee is offered, they accept piece rate jobs because the piece rate portion of the wage allows

5  them to increase their earnings.

6      124.    Washington State workers commonly make substantially more in fruit harvest

7  when working by the piece than they would make working at the AEWR.

8      125.    An hourly guarantee added to a piece rate, whether set at the applicable minimum

9  or at some higher level, only has meaning for slower workers whose productivity is low enough

10  that they cannot earn the hourly guarantee on the offered piece rate.

11      126.    The vast majority of workers benefit from and depend upon the higher earnings

12  they can generate while working at a piece rate. That is the main importance of the prevailing

13  wage that DOL is duty-bound to protect.

14      127.    DOL's policy of allowing straight piece rates to be segregated from piece rates

15  with hourly guarantees and piece rates with bonuses results in a failure to protect prevailing

16  piece-rate wages and adversely affects the wages and working conditions for U.S. workers.

17      128.    DOL has never offered any explanation as to why it considers piece rates and

18  piece-rates with hourly guarantees to be distinct forms of payment as piece-rates and hourly pay.

19      129.    In addition to irrationally segregating piece rates from piece rates with hourly

20  guarantees, DOL's approval of ESD's 2022 findings constituted final agency action that permits

21  further fracturing of piece rate wages (and thereby making them less likely to be found to be

22  prevailing) by treating incomplete data from an employer -- i.e. pay by a bin of unreported size --

23

SUPPLEMENTAL AND THIRD AMENDED
COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 23

1  as a separate unit of payment in determining the prevailing wage rather than directing ESD to

2  throw out the data as incomplete and therefore unusable.

3      130.    DOL's wage methodology requires employers to report the size of the unit of pay

4  so that piece rates can be converted to a standard unit and compared. For example, rates by bins

5  of different sizes can all be mathematically converted to a standard bin rate and arrayed to

6  determine the prevailing rate.

7      131.    In the 2022 ESD wage survey, however, one agricultural employer reported

8  paying the following piece-rate harvest wages: $35/bin for Ambrosia, $20/bin for Cosmic Crisp,

9  $35/bin for Fuji, and $28/bin for Gala apples, but stated "not sure" as to the size of the bins in

10  question, making it impossible to compare these piece rates with others in the same crop.

11      132.    Rather than reject the incomplete data, DOL has allowed ESD to treat these bin

12  rates as units of pay different from the piece rates reported for the same crops for each of these

13  four varieties of apples, causing a domino effect in the prevailing wage methodology and

14  resulting in lack of prevailing wage findings.

15      133.    The fracturing of piece-rate units of pay leads to the discard of otherwise valid

16  data because the smaller the sub-category of piece-rate wages that is deemed to be the majority

17  method of pay, the more likely it is that the 25% rule will eliminate the finding altogether.

18      134.    For example, in the 2022 survey results, Fuji, Red Delicious, and Granny Smith

19  apple harvests, the majority method of pay was pay by the bin of "not sure" size. Only one

20  employer reported paying by the bin of "not sure" size, and thus those results were guaranteed to

21  violate the 25% rule, as 100% of the workers in the majority method of pay were represented by

22  the same employer response. As a result, every one of the dozens of other responses from Fuji

23

SUPPLEMENTAL AND THIRD AMENDED
COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 24

harvest employers was disregarded, and workers in Fuji harvest were left without a piece-rate

prevailing wage, causing adverse effects on their wages and working conditions.

135.    The fracturing of piece rate data gives employers an opportunity to manipulate the

survey results to ensure no finding or no piece rate finding by encouraging them to withhold bin

sizes or to add meaningless "hourly guarantees" to their survey responses.

**8.    DOL's Methodology Arbitrarily Fails to Verify the Accuracy of Employer Survey Responses.**

136.    DOL has specifically disavowed use of worker surveys and/or interviews as a

check on the accuracy of the survey results.

137.    ESD did not use the 2022 worker survey to verify the results of the 2022

employer survey when it calculated and submitted findings from the 2022 employer survey to

DOL in the summer of 2023.

138.    ESD does not use, and DOL does not require the use of, other means to verify the

results of the employer survey.

139.    DOL's failure to use the worker surveys or other means of verifying the employer

survey data allows employers reporting hourly wages as the prevailing practice to go

unchallenged and unverified.

140.    The failure to take steps to ensure the accuracy of the survey responses is

particularly important because, as DOL has recognized, H-2A employers have an incentive to

manipulate their responses to wage surveys because they directly benefit from the absence of a

prevailing wage finding in a crop or a finding of an hourly prevailing wage. Such findings allow

H-2A employers greater flexibility in setting their wage rates.

141.    DOL's failure to use the worker surveys or other means of verifying the employer

survey data harms farmworkers by adversely affecting wages and working conditions.

SUPPLEMENTAL AND THIRD AMENDED
COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 25

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

**9.      DOL's Methodology Fails to Control for Non-Response Bias**

142.    Because prevailing wage determinations only apply to H-2A employers and have no direct impact on the wages paid by non-H-2A employers, H-2A employers have a greater incentive to respond to wage surveys than non-H-2A employers.

143.    On information and belief, H-2A employers are more likely to respond to the employer survey than non-H-2A employers.

144.    On information and belief, H-2A employers are likely to give statistically significantly different responses to the survey from the responses given by non-H-2A employers.

145.    DOL does not require ESD to control for this or any other form of non-response bias in its employer survey data.

146.    On information and belief, ESD does not adequately control for non-response bias in its employer survey data.

147.    DOL takes the position that, because an attempt is made to mail surveys to the entire population of employers or a random sample of employers engaged in a crop activity, the voluntary responses received from employers necessarily represent a random sample.

148.    That assumption is untrue and demonstrates the reason why mechanisms to control for non-response bias are necessary to ensure a statistically meaningful sample.

149.    DOL's failure to require ESD to control for non-response bias in its employer survey data causes harm to workers by adversely affecting their wages and working conditions.

**10.     DOL's Prevailing Wage Rules and the Policies Implementing those Rules Unlawfully Delegate Key Decisions Regarding the Determination of Prevailing Wages to State Agencies.**

150.    By allowing ESD to interpret DOL's prevailing wage rules and implement those rules in idiosyncratic ways and by not requiring ESD and other SWAs to conform to a standard

method of determining prevailing wages, DOL is improperly delegating its duty to determine and

protect prevailing wages to the detriment of U.S. workers and in violation of the Congressional

mandate that foreign workers not be permitted to adversely affect the wages and working

conditions of U.S. workers.

**11.    DOL's Approval and Publication of H-2A Clearance Orders Promising to Pay the AEWR for Activities That Have a Prevailing Piece Rate**

151.    DOL has a policy or practice of approving and publishing H-2A clearance orders

that promise to pay the AEWR even when there is a published prevailing piece rate, evinced by

its history of approving such clearance orders and its communications on the subject.

152.    For the 2021 harvest season, DOL approved and published H-2A clearance orders

that promised only to pay the AEWR for activities that had a published prevailing piece rate.

153.    For the 2022 and 2023 harvest seasons, DOL again approved and published H-2A

clearance orders that promise only to pay the AEWR for activities that had a published

prevailing piece rate. For 2023, USDOL approved at least 100 clearance orders evincing this

practice, affecting more than 16,000 workers.

154.    In 2024, the Ninth Circuit issued an order that interpreted both 20 C.F.R.

§655.120(a) (2010), and 20 C.F.R. §655.120(a) (2024) as requiring employers to offer the

prevailing piece rate when there was a published prevailing piece rate.  *Torres Hernandez,* 2024

WL 2559562 (9th Cir. 2024).  That decision is binding on DOL and prohibits DOL from

approving H-2A contracts with AEWR-only offers.

155.    As a result of the preliminary injunction entered in *Barton v. DOL,* 5:24-cv-00249

(E.D. Ky 2024), the current version of §655.120(a) (2024) has been enjoined thereby reinstating

the prior version of the regulation, 20 C.F.R. §655.120(a) (2010) for *Barton* plaintiffs.

156.    On July 2, 2024, this Court issued a preliminary injunction that enjoined DOL from enforcing the One-Year rule in Washington and required DOL to post the 2020-Survey prevailing wage rates, published in January 2022, until judgment is entered in this case.

157.    On July 3, 2024, DOL posted on its website that "until further notice, H-2A job orders seeking temporary labor certification for work to be performed in the State of Washington on or after July 3, 2024 . . . *must use the prevailing wage rate available in the link below*."

158.    The provided link contains piece-rate wages for all Washington H-2A contracts that offer apple and cherry harvest work.

159.    DOL has approved, and continues to approve, H-2A clearance orders for the 2025 cherry and apple harvest in Washington State that permit H-2A employers to pay the AEWR only.

160.    DOL's approval of these H-2A contracts with AEWR-only offers undermines a purpose of this Court's injunction, which enjoined the One-Year rule to ensure that workers are paid prevailing piece-rate wages.

161.    DOL's actions in approving H-2A clearance orders offering the AEWR for crop activities in which there is a published Washington State prevailing piece rate violates 20 C.F.R. §655.120(a) (2010), the regulation currently in effect for some employers in Washington, and 20 C.F.R. §655.120(a) (2024), the regulation in effect for the remaining Washington employers.

162.    Clearance orders that promise only the AEWR for activities for which there is a published prevailing piece rate limit local workers' opportunities for jobs by depressing the wages and working conditions offered.

SUPPLEMENTAL AND THIRD AMENDED
COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 28

163.    DOL approval of clearance orders that promise to pay only the AEWR for activities for which there is a published prevailing piece rate allow growers to choose when and when not to pay wages that are required by regulation to be paid.

164.    DOL's approval or clearance orders that promise to pay only the AEWR for activities for which there is a published prevailing piece rate fails to protect the prevailing piece rate and the prevailing method of pay, allows wages and working conditions to be adversely affected by the importation of foreign workers, and violates DOL's statutory mandate to avoid adverse effects on domestic farmworker wages and working conditions.

**12.    DOL's Failure to Publish New Prevailing Wages or Provide Guidance to ESD.**

165.    DOL took from July 2023 to June 2025 to evaluate and publish ESD's 2022 Survey Results. DOL funds ESD to conduct annual surveys to determine the prevailing wage, but for those surveys to be acceptable to DOL and result in published prevailing wage findings, ESD must utilize a methodology that is consistent with DOL's regulations and that DOL will accept.

166.    DOL's failure to approve or disapprove ESD's 2022 prevailing wage findings, or otherwise provide guidance to ESD as to what is an acceptable methodology for finding prevailing wages, arbitrarily prevented the publication of valid prevailing wage rates, and similar action in the future will continue to prevent the publication of valid prevailing wage rates in violation of DOL's duty to ensure that U.S. workers are not adversely affected by the importation of foreign H-2A workers.

**E.    DOL's 2022 Regulation and Policies for Implementing the Regulation are Having Devastating Effects on Washington Farmworkers by Causing the Elimination of Higher Piece-rate Prevailing Wages in Washington's H-2A Fruit Harvest Contracts.**

167.    Piece-rate wages have been the norm for decades in Washington's fruit harvests.

SUPPLEMENTAL AND THIRD AMENDED
COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 29

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

168.    Washington domestic farmworkers routinely earn more than $20 an hour when harvesting fruit crops at piece-rate wages.

169.    In general, Washington domestic farmworkers will turn down employment offering hourly wages to harvest fruit crops and seek higher earnings at farms offering piece-rate wages.

170.    Washington agricultural employers who use the H-2A program have an economic incentive to manipulate wage surveys toward hourly prevailing wage findings to drive down labor costs.

**F.    University of Washington Worker Wage Surveys Find Domestic Farmworkers Are Paid Piece-rate Wages to Harvest Washington's Fruit Crops.**

171.    DOL contracts with the Washington State Employment Security Department (ESD) to conduct prevailing wage rate surveys.

172.    For years, ESD has conducted two wage surveys—one of agricultural employers, and another of farmworkers.

173.    ESD began conducting employer surveys on or before 2006.

174.    ESD began surveying farmworkers in 2016 after agricultural employers sought to manipulate ESD's 2015 employer survey by submitting false hourly harvest wage data for apples, pears, and cherries in an effort to save the industry millions of dollars in wages by drastically decreasing pay to farmworkers.

175.    On July 8, 2016, DOL advised ESD that, "Worker surveys are a mechanism by which [ESD] can 'validate' or 'verify' the wage survey responses that come in from the growers." ESD, 2018 Agricultural Peak Employment Wage and Practices Survey Results, 15.

176.    To obtain wage data from farmworkers, ESD has regularly contracted with the University of Washington.

SUPPLEMENTAL AND THIRD AMENDED
COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 30

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

177.    DOL provides funding to ESD to pay a portion of the costs of the University of Washington's farmworker wage surveys.

178.    The vast majority of domestic farmworkers surveyed by the University of Washington from 2016-2022 reported being paid by the piece in harvest.

179.    The University of Washington's 2022 costs to conduct the worker survey were estimated at $131,133.

180.    In 2022, ESD contracted with the University of Washington to survey domestic farmworkers to determine the wages they were paid during the 2022 apple and cherry harvests.

181.    In 2022, The University of Washington received 634 survey responses from domestic farmworkers.

182.    The University of Washington's 2022 worker survey obtained wage data from domestic farmworkers for six of the largest apple varieties in Washington state: Gala, Red Delicious, Granny Smith, Fuji, Honeycrisp, and Cripps Pink (known as Pink Lady).

183.    The University of Washington's 2022 worker survey determined that over 80% of domestic farmworkers reported that they were paid piece rate wages for five of the apple varieties surveyed.

184.    The University of Washington's 2022 worker survey obtained wage data from domestic farmworkers for four varieties of cherries in Washington state: Red, Dark Red, Dark Sweet, and Yellow.

185.    The University of Washington's 2022 worker survey determined that over 80% of domestic farmworkers reported that they were paid piece rate wages for all four cherry varieties surveyed.

SUPPLEMENTAL AND THIRD AMENDED
COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 31

186.    A chart of the University of Washington's 2022 worker survey findings—prepared by ESD—displays in orange the piece-rate wage responses from domestic farmworkers:



187.    ESD provided the results of the University of Washington's 2022 domestic farmworker wage survey to DOL.

188.    The University of Washington's 2022 worker survey results are consistent with survey results it conducted of domestic farmworkers in every year from 2016 to 2021.

189.    ESD provided the results of the worker surveys for the years 2019 to 2021 to DOL.

190.    On information and belief, ESD provided the results of the worker wage surveys for the years 2016 to 2018 to DOL.

SUPPLEMENTAL AND THIRD AMENDED
COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 32

**G.    Washington Agricultural Employers Regularly Report They Pay Piece-rate Wages to Harvest Washington's Fruit Crops.**

191.    In addition to the worker survey conducted by the University of Washington, ESD also contracted with the University of Washington to conduct the 2022 survey of agricultural employers.

192.    In a report dated "May 2025," ESD submitted its findings for the 2023 Employer Survey to DOL on June 13, 2025. The last publicly available worker survey results are from the 2022 survey, as the 2023 Survey Report did not contain information about the 2023 Worker Survey.

193.    The 2022 prevailing wage survey data that ESD received from agricultural employers mirrors the results of the University of Washington farmworker survey—the vast majority of agricultural employers reported they paid piece-rate wages during the 2022 fruit harvests.

194.    ESD submitted to DOL prevailing wage findings based on the 2022 employer survey for four Washington fruit harvests.

195.    ESD reported to DOL regarding data it collected as to four fruit harvest activities for which it had made prevailing wage findings and as to 14 other fruit harvests for which it did not make findings.

196.    For harvest of the major apple, cherry, and pear varieties that ESD reported to DOL, on average, 73% of employers reported on their 2022 survey responses they paid piece-rate wages to harvest their crops.

197.    These percentages would be even higher if hourly wage data supplied by H-2A employers, which reflects the depressive effects of the H-2A program, had been removed.

SUPPLEMENTAL AND THIRD AMENDED
COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 33

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

198.    Despite the overwhelming majority of the 2022 agricultural employer survey results indicating piece-rate wages were the norm, ESD did not find a single prevailing harvest wage for any apple variety in Washington state, piece-rate or otherwise.

199.    Following DOL rules and guidance in its analysis of the 2022 employer survey data, ESD discarded all prevailing wage survey data for harvest of Red Delicious, Golden, Granny Smith, Gala, Fuji, Cripps Pink, Honeycrisp, Ambrosia, and Cosmic Crisp apple varieties and failed to make a finding for each of these varieties. It also discarded prevailing wage data for "general apple" harvest (encompassing harvest of all apple varieties combined) and failed to make a finding for that crop activity.

200.    Despite the overwhelming majority of the 2022 agricultural employer survey responses indicating piece-rate wages were the norm, DOL's rules and guidance caused ESD to discard cherry harvest data for four of the six varieties it surveyed along with prevailing wage data for "general cherry" harvest and to fail to make a finding for any of those crop activities.

201.    ESD only found four prevailing piece-rate harvest wage rates based on the 2022 agricultural employer survey results—two cherry varieties or groups (Bing and Dark Red), one pear variety (Bartlett), and a "general pear" harvest wage.

202.    When no prevailing wage is found for an activity, DOL allows agricultural employers using the H-2A system to pay the H-2A minimum hourly wage (the Adverse Effect Wage Rate or "AEWR") for that activity, regardless of whether piece-rate pay is the practice in the local labor market.

203.    The 2023 Survey Report, in contrast to previous versions of the report, provides no information about the percentage of employers paying by the piece in harvest.

SUPPLEMENTAL AND THIRD AMENDED
COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 34

204.    The 2023 Survey resulted in four prevailing wage findings, all piece-rate harvest findings, for gala apples, cherries, dark-sweet cherries, and pears.

205.    At the time of this filing, DOL has not rejected nor validated and published any prevailing wage rates from the 2023 Results.

206.    DOL's failure to find and require payment of prevailing wages in Washington state because of the above regulatory provisions and policies has permitted and will continue to permit foreign workers to be imported into Washington at hourly wages that adversely affect the wages and working conditions of Washington state workers in direct violation of the Congressional mandate.

207.    The failure of DOL's methodology to find and publish prevailing piece rates for apple, cherry, pear, and berry harvest results in a dramatic reduction in hourly earnings based on both industry- and worker-provided data.

208.    In Washington, farmworkers in the open labor market have the opportunity to work for piece-rate pay in short harvest seasons, earning significantly more than minimum hourly wages, and securing themselves and their families for the winter months when agricultural work is scarce.

209.    For a kind of work, such as "Gala apple harvest," to garner a prevailing piece-rate wage finding, that kind of work must pass through a set of rules and sub-regulatory policies that serve to eliminate prevailing wage findings at every turn.

210.    As a result, DOL systematically fails to make prevailing wage findings, particularly piece-rate wage findings, for Washington's fruit crops, causing significant depression in farmworker wages and worsening of working conditions.

211.    A high percentage of farmworkers live in poverty.

SUPPLEMENTAL AND THIRD AMENDED
COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 35

212.    Even a 5% reduction in wages threatens farmworkers' ability to meet their basic needs for housing, food, medical care, transportation, etc.

## V.    CAUSES OF ACTION

### First Cause of Action

### Arbitrary and Capricious Agency Action – 5 U.S.C. § 706(2)(A)

213.    The Department of Labor's prevailing wage rules, policies, and practices discussed above are arbitrary and capricious.

### Second Cause of Action

### Contrary to Law – 5 U.S.C. § 706(2)(A)

214.    The Department of Labor's prevailing wage rules, policies, and practices discussed above are contrary to law in that that they violate Congressional mandate set forth in 8 U.S.C. §§ 1101(a)(15)(H)(ii)(A) and 1188 prohibiting DOL from authorizing the importation of foreign workers at wages and working conditions that will adversely affect the wages and working conditions of U.S. worker.

### Third Cause of Action

### Contrary to Law – 5 U.S.C. § 706(2)(A)

215.    DOL's policy of allowing ESD to determine the most common unit of pay based on "estimated employment" rather than reported employment is contrary to law in that it violates the plain language of 20 C.F.R. 655.120(c)(1)(v) as well as resulting in a violation of 8 U.S.C. §§ 1101(a)(15)(H)(ii)(A) and 1188.

SUPPLEMENTAL AND THIRD AMENDED
COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 36

1

**Fourth Cause of Action**

2

**Contrary to Law – 5 U.S.C. § 706(2)(A)**

3    216.    DOL's policy of approving H-2A job orders that offer only the AEWR for crop

4    activities covered by published prevailing piece-rate wages is contrary to law in that it violates

5    the plain language of 20 C.F.R. § 655.120(a) (2010) and 20 C.F.R. § 655.120(a) (2024), is

6    contrary to the Ninth Circuit's ruling in *Torres Hernandez v. Su*, is contrary to this Court's July

7    2, 2024 injunction, and results a violation of 8 U.S.C. §§ 1101(a)(15)(H)(ii)(A) and 1188.

8

9

**Fifth Cause of Action**

10

**Agency Action Unlawfully Withheld or Unreasonably Delayed – 5 U.S.C. § 706(1)**

11    1.    As a result of the prevailing wage rules, policies, and practices discussed above,

12    DOL has unlawfully withheld and/or unreasonably delayed carrying out its duty to protect the

13    wages and working conditions of U.S. workers by protecting the prevailing wages of U.S.

14    workers from being undermined by foreign workers.

15

**Harm To U.S. Workers**

16    2.    These unlawful agency actions set forth above have harmed and will continue to

17    harm and threaten harm to Plaintiff's members and other Washington-State workers, for which

18    they are entitled to relief pursuant to 5 U.S.C. §706(1) and (2) including compelling of agency

19    action unlawfully withheld or unreasonably delayed and vacatur of these arbitrary and capricious

20    rules and policies.

21

**VI.    REQUEST FOR RELIEF**

22    Plaintiff asks this Court to grant them the following relief:

23    1.    Declare that DOL's prevailing wage methodology and policies set forth above are

SUPPLEMENTAL AND THIRD AMENDED
COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 37

arbitrary and capricious and contrary to law;

2.      Preliminarily and permanently enjoin DOL from implementing those rules and policies;

3.      Preliminarily enjoin DOL to reinstate the 2020 prevailing wages and to require all employers who are currently employing H-2A workers in Washington State to immediately comply with those wage rates if they are higher than what the employer is currently paying;

4.      Preliminarily and permanently enjoin DOL from approving H-2A clearance orders that offer only the AEWR where there is a published a prevailing piece-rate wage;

5.      Permanently enjoin DOL to require payment of the 2020 prevailing wage rates until such time as DOL carries out its duty to protect U.S. worker wages, and in particular prevailing wages;

6.      Compel DOL to take all actions unlawfully withheld or unreasonably delayed as set forth above;

7.      Compel DOL to take all necessary steps to expeditiously carry out its duty to protect U.S. worker wages, and in particular prevailing wages and prohibiting DOL from certifying the importation of foreign workers until that duty has been carried out;

8.      Order DOL to inform growers who have applied or will apply to use H-2A workers that the wages they owe may change during or after the 2024 season as a result of litigation over the validity of the prevailing wage methodology, so that complete relief may be afforded;

9.      Award Plaintiffs their reasonable fees, costs and expenses, including attorneys' fees, pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C.§ 2412;

10.     Grant other further relief as this Court deems just and appropriate.

SUPPLEMENTAL AND THIRD AMENDED
COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 38

DATED this 28th day of July, 2025.

COLUMBIA LEGAL SERVICES

s/ *Andrea Schmitt*
Andrea Schmitt, WSBA #39759

s/ *Joachim Morrison*
Joachim Morrison, WSBA #23094

s/ *Bonnie Linville*
Bonnie Linville, WSBA #49361
*Attorneys for Plaintiff*
711 Capitol Way S., Ste. 706
Olympia, WA  98501
(360) 943-6260
andrea.schmitt@columbialegal.org;
joe.morrison@columbialegal.org;
bonnie.linville@columbialegal.org

FARMWORKER JUSTICE

s/ *Lori Johnson*
Lori Johnson, North Carolina State Bar
Association #24227
*Attorney for Plaintiff*
1126 16th St. NW, Suite LL101
Washington, DC 20006
ljohnson@farmworkerjustice.org
*Admission pro hac vice pending*

BARNARD IGLITZIN & LAVITT LLP

s/ *Kathleen Phair Barnard*
Kathleen Phair Barnard, WSBA #17896
*Attorney for Plaintiff*
18 West Mercer Street, Ste. 400
Seattle, WA 98119-3971
(206) 285-2828
barnard@workerlaw.com

s/ *Edward Tuddenham*
Edward Tuddenham, New York State Bar
#2155810
*Attorney for Plaintiff*
228 W 137th St.
New York, NY  10030
edwardtuddenham@gmail.com
*Admission pro hac vice pending*

SUPPLEMENTAL AND THIRD AMENDED
COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 39