UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FAMILIAS UNIDAS POR LA JUSTICIA, AFL-CIO,<br><br>               Plaintiff,<br><br>    v.<br><br>UNITED STATES DEPARTMENT OF LABOR; LORI CHAVEZ-DeREMER in her official capacity as United States Secretary of Labor,<br><br>            Defendants. | CASE NO. 2:24-cv-00637-JHC<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR A THIRD PRELIMINARY INJUNCTION |

**I**
**INTRODUCTION**

This matter comes before the Court on Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction Enjoining DOL from Replacing 2020 Prevailing Wages with 2022 "No Finding" Results. Dkt. # 176. The Court has reviewed the materials filed in support of and in opposition to the motion, the record, and the governing law. Being fully advised, for the reasons below, the Court DENIES the motion without prejudice.

## II
### BACKGROUND

A.    Wages Under the H-2A Program

Under the H-2A program, employers may bring temporary foreign workers into the United States. 8 U.S.C. § 1188. Before an employer may obtain a visa for a foreign worker, the employer must apply for a certification from the United States Department of Labor (DOL) that there are not enough workers at the time and place to fulfill the employer's need, and that employment of a foreign worker "will not adversely affect the wages and working conditions of workers in the United States similarly employed." *Id.* (a)(1)(A)–(B). DOL regulations generally require H-2A employers in agriculture to pay a wage that is at least the highest of either the Adverse Effect Wage Rate (AEWR) (a state-specific hourly minimum wage) or a prevailing wage rate.[1]

Because prevailing wages can include piece-rate wages (i.e., pay based on the amount of a crop harvested instead of the number of hours worked) and hourly rates of pay higher than the AEWR, DOL recognizes that prevailing wages "serve as an important protection for workers." 88 Fed. Reg. 12760, 12775 (Feb. 28, 2023). Although DOL determines the AEWR, 20 C.F.R. § 655.1300, it delegates to state workforce agencies (SWAs) the task of collecting data to calculate prevailing wage rates, *see* 20 C.F.R. § 655.1300(c). SWAs follow DOL guidelines for this task and then submit the prevailing wage rates and the survey methods used to DOL for validation. *See* 20 C.F.R. § 655.120(c); 87 Fed. Reg. 61660, 61679, 61689 (Oct. 12, 2022).

---

[1] Under 20 C.F.R. § 655.120(a), H-2A employers are generally required to pay a wage that is at least the highest of: (1) the AEWR; (2) a prevailing wage rate; (3) the agreed-upon collective bargaining wage; (4) the Federal minimum wage; or (5) the State minimum wage. But generally, in agriculture, the AEWR and the prevailing wage are the only relevant wages because federal and state minimum wages are lower and collective bargaining agreements are not common in the industry. Dkt. # 40 at 2–3.

In 2022, DOL issued regulations that changed the way that prevailing wages are calculated, 87 Fed. Reg. 61660, and a rule that prevailing wages expire after one year, 20 C.F.R. § 655.120(c)(2), (One-Year Rule). Relying on these new regulations, Washington's SWA, the Employment Security Department (ESD), conducted and submitted a survey to DOL for review. Dkt. # 34 at 2. But while DOL was reviewing the submission, the prior prevailing wage rates expired under the One-Year Rule. Without prevailing wages in effect, there was uncertainty as to the wages that workers would be paid. *See* Dkt. # 40 at 17–20.

B.    This Court's First Preliminary Injunction

Before DOL published new prevailing wage rates for Washington, Plaintiff Familias Unidas por la Justicia, AFL-CIO, sued DOL and the Acting United States Secretary of Labor (Federal Defendants) to "challeng[e] the agency's 2022 prevailing wage rules related to the federal 'H-2A' temporary agricultural visa program as well as certain policies and practices implementing those prevailing wage regulations." Dkt. # 1 at 1, ¶ 1. Familias moved for a first preliminary injunction,[2] Dkt. # 9, to (i) enjoin the One-Year Rule; (ii) enjoin the 25% Rule, 20 C.F.R. § 655.120(c)(1)(ix) (discussed *infra* Section III.B.2), a rule that Familias alleges contributed to ESD's 2022 survey findings of almost no prevailing piece-rate wages, Dkt. # 1 at 10, ¶ 48 (and subheading IV.D.1); and (iii) rescind DOL's approval of ESD's population-estimate survey method and direct ESD to conduct its survey with a different method.

On July 2, 2024, the Court enjoined the One-Year Rule and ordered DOL to "REINSTATE and enforce the 2020-Survey prevailing wage rates, published in January 2022, until judgment is entered in this case." Dkt. # 40 at 21–22. The Court denied Familias's motion as to the 25% Rule and DOL's approval of ESD's population-estimate survey method because

---

[2] The Court issued a second preliminary injunction, Dkt. # 145, but it is not pertinent here.

Familias did not provide enough information about DOL's decision-making process.  *Id.* at 16–17.

C.    Federal Defendants' Motion for Partial Summary Judgment

Federal Defendants moved for partial summary judgment on all claims requiring judicial review of their actions "relating to ESD's 2022 prevailing wage survey findings," because DOL "did not take final agency action on ESD's 2022 prevailing wage survey findings."  Dkt. # 89 at 3–4.  The Court granted this motion in part and dismissed some of Familias's claims "insofar as they allege that DOL approved ESD's 2022 survey method."  Dkt. # 127 at 23.

D.    Familias's Motion to Clarify the First Preliminary Injunction and for Leave to File Supplemental and Second Amended Complaint

In what Federal Defendants characterize as an attempt to revive its dismissed claims, Dkt. # 134 at 3, Familias moved to clarify this Court's first preliminary injunction and to compel DOL to act on[3] the 2022-survey prevailing wages (henceforth "2022-survey wages").[4]  Dkt. # 128.  The Court granted Familias's motion in part and clarified the first preliminary injunction as follows:

> DOL is ORDERED to REINSTATE and enforce the 2020-Survey prevailing wage rates, published in January 2022, until judgment is entered in this case. *DOL may replace the 2020-Survey prevailing wage rates with subsequently published prevailing wage rates.*

Dkt. # 146 at 3 (emphasis added).  The Court denied the motion in part as to its request for the Court to compel DOL to act on the 2022-survey wages.  *Id.*

---

[3] In its previous order granting Familias's motion for leave to file a supplemental and third amended complaint, the Court stated that "Familias moved to clarify this Court's first preliminary injunction and to compel DOL to *approve* the 2022-survey wages."  Dkt. # 196 at 4 (emphasis added).  The Court clarifies that Familias asked the Court to compel DOL "to take action on the Washington 2022-Survey results," Dkt. # 128 at 10, but does not amend its previous order for reasons discussed *infra* Section III.A.

[4] Although there was originally some inconsistency as to whether to label the wages by the year the survey findings were submitted rather than the year that the survey was done, the parties now refer to the wages by the year that the surveys were conducted.  *See e.g.*, Dkt ## 176 at 2 & n.1; 192 at 1.

1        Familias also moved for leave to file a supplemental and second amended complaint

2   adding, among other things, a claim that DOL was unlawfully withholding or unreasonably

3   delaying agency action by not calculating prevailing wages based on the 2022 survey.  Dkt.

4   # 130 at 2–3.  The Court granted this motion.  Dkt. # 145.

5   E.      The Parties' Cross-Motions for Partial and Full Summary Judgment and DOL's
            Publication of the 2022-Survey Wages

6        Familias moved for partial summary judgment, contending that (1) the One-Year Rule is

7   arbitrary and contrary to law; (2) the 25% Rule is arbitrary and contrary to law; (3) DOL's

8   approval of AEWR-only job orders[5] is contrary to law; and (4) DOL unlawfully failed to act on

9   ESD's 2022 survey findings.  Dkt. # 165.  The parties stipulated to, and the Court ordered, a

10  briefing schedule considering Federal Defendants' intent to cross-move for full summary

11  judgment.  Dkt. ## 172; 173.

12       But on June 19, 2025, before Federal Defendants filed their cross-motion for summary

13  judgment, Dkt. # 185, DOL published the 2022-survey wages.  Dkt. # 176 at 8.  The 2022-survey

14  wages approved four new prevailing piece-rate wage findings (for dark red cherries, bing

15  cherries, bartlett pear, and general pear) and made "no finding" for all other crop activities (e.g.,

16  apples and berries).  *Id.* at 8–9.  DOL takes the position that these "no finding" results replace

17  (i.e., eliminate) the 2020-survey prevailing wages (henceforth "2020-survey wages").  *See* Dkt.

18  # 192 at 6.  When a "no finding" result replaces a 2020-survey wage, an employer may pay the

19  AEWR, which would be lower than a prevailing piece-rate wage.  Dkt. # 176 at 2; *see also* Dkt.

20  # 192 at 18–19.

21

22

23       ---

         [5] This refers to DOL's approval of H-2A contracts that list only the AEWR and do not
24  unequivocally offer prevailing piece-rate wages.  *See* Dkt. ## 145 at 3; 192 at 13; *see also infra* Section
    III.B.4.b.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

F.    Familias's Motions for Leave to File Supplemental and Third Amended Complaint and for Third Preliminary Injunction

Familias moved for leave to file a supplemental and third amended complaint to allege that DOL's publication of the 2022-survey wages constituted final agency action and to include the fact that ESD submitted its 2023 survey results to DOL on June 13, 2025.  Dkt. # 175 at 1–2.  The Court granted this motion, and Familias filed its supplemental and third amended complaint.  Dkt. ## 196; 197.

Familias moves for a third preliminary injunction based on its new claims, seeking an order that generally (1) enjoins DOL from enforcing the "no finding" results in the 2022-survey wages and requires it to reinstate the 2020-survey wages for all crop activities with a "no finding" result; and (2) enjoins DOL from using particular methodologies (e.g., the 25% Rule) to calculate prevailing wage rates.  *See* Dkt. # 176 at 35–36.

**III**
**DISCUSSION**

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).  To obtain a preliminary injunction, a plaintiff must show that (1) they are "likely to succeed on the merits"; (2) they are "likely to suffer irreparable harm in the absence of" a preliminary injunction; (3) "the balance of equities tips in [their] favor"; and (4) a preliminary injunction "is in the public interest."  *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 20).  When the nonmoving party is the government, the third and fourth *Winter* factors "merge" into a single factor.  *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023).  "[T]he elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another."  *All. for the Wild*

ORDER DENYING PLAINTIFF'S MOTION FOR
A THIRD PRELIMINARY INJUNCTION - 6

*Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011); *see also Doe v. Snyder*, 28 F.4th 103, 111 (9th Cir. 2022) (recognizing the "sliding scale" standard).

A.    Irreparable Harm

The Court previously recognized that a reduction in farmworkers' wages constitutes irreparable harm.  Dkt. # 145 at 11 (citing Dkt. # 40 at 17–20).  But this time the harm is, at least to some extent, self-inflicted.  A "largely self-inflicted [harm] severely undermines [a party's] claim for equitable relief."  *Al Otro Lado v. Wolf*, 952 F.3d 999, 1008 (9th Cir. 2020) (quotation marks and citation omitted).  Because Familias does not adequately explain why the self-inflicted nature of its harm should not undermine its claim for a third preliminary injunction, the Court concludes that it makes only a weak showing of irreparable harm.[6]

DOL initially understood the first preliminary injunction to require it to enforce the 2020-survey wages throughout the pendency of this case.  Dkt. # 134 at 2–3.  That is, DOL believed that the injunction prohibited it from publishing the 2022-survey wages.  But after the Court dismissed some of Familias's claims for lack of final agency action, Familias appears to have sought to create a final agency action by moving to clarify the first preliminary injunction and seeking an order compelling DOL to act on the 2022-survey wages.  Dkt. # 128.  It did so despite knowing that the 2022-survey wages would contain "no finding" results.  From the outset of this case, Familias recognized that because of the 25% Rule, allowing DOL to issue the 2022-survey wages would "result[] in direct harm to Washington farmworkers as prevailing piece rate wages

---

[6] Federal Defendants renew their contention that Familias should be judicially estopped from asserting that replacing the 2020-survey wages with "no finding" results is unlawful because it had moved to clarify the first preliminary injunction and to compel DOL to act on the 2022-survey wages.  This contention is almost the same as that made in Federal Defendants' opposition to Familias's motion for leave to file a supplemental and third amended complaint to add claims that form the basis of the present motion for a third preliminary injunction.  *Compare* Dkt. # 192 at 3–4 *with* Dkt. # 189 at 6–7.  Thus, the Court rejects Federal Defendants' contention for the same reasons set forth in its order granting Familias's motion for leave to file a supplemental and third amended complaint.  Dkt. # 196 at 13–16.

are discarded and a 'no finding' allows agricultural employers to pay lower, minimum hourly wage AEWR rates instead of higher piece-rate wages." Dkt. # 1 at 11, 13, ¶¶ 53, 64. Similarly, Familias said in a previous motion that the 2022-survey wages only included "four prevailing piece-rates for Washington fruit harvest: two for cherry, two for pear, and none for apples or berries." Dkt. # 85 at 4. Familias explained, "But for this Court's [first] preliminary injunction order . . . directing DOL to re-publish prevailing wage rates derived from ESD's 2020 Wage Survey—DOL would have published the flawed 2022-survey findings, and farmworker harvest wages would have been paid at only the AEWR minimum hourly wage." *Id.*

As an aside, it is unclear if Familias knew that the "no finding" results would replace the 2020-survey wages for particular crop activities, thereby eliminating those prevailing wages. Familias's observations about the harm that would be caused by publication of the 2022-survey wages might refer solely to the effect of those wages before the Court enjoined the One-Year Rule, during which there were no prevailing wages. But the parties do not discuss whether the extent to which Familias knew or should have known it was self-inflicting harm is material. Thus, for present purposes, the Court considers only the fact that Familias believed the 2022-survey wages are flawed but nonetheless moved to clarify the first preliminary injunction and compel DOL to act on them.

Although the Court denied Familias's request for an order compelling DOL to act on the 2022-survey wages, it granted in part Familias's motion to clarify the first preliminary injunction, which allowed DOL to publish the 2022-survey wages. Dkt. # 146. Once DOL did so, Familias revived some of its claims by alleging that publication of the 2022-survey wages constitutes final agency action as to those claims. *See e.g.*, Dkt. # 197 at 9, ¶ 45. Now, Familias seeks to avoid the consequences of the final agency action it allowed by asking for a third preliminary injunction that would largely restore the 2020-survey wages.

ORDER DENYING PLAINTIFF'S MOTION FOR
A THIRD PRELIMINARY INJUNCTION - 8

The law does not appear to favor granting relief in such circumstances.  *See Ellsworth v. Schneider Nat'l Carriers, Inc.*, 2021 WL 3417641, at *2 (C.D. Cal. June 14, 2021) (A party is "poorly positioned" to complain about a risk that "was entirely avoidable and strategically pursued by a sophisticated party represented by sophisticated counsel who undoubtedly weighed the risk.").  Familias does not dispute that a self-inflicted harm "severely undermines" a claim for equitable relief.  *See Al Otro Lado*, 952 F.3d at 1008 (quotation marks and citation omitted).  It asserts only that the harm is not self-inflicted.  The entirety of Familias's assertion—which cites no authority—is reproduced below:

> [DOL argues that] any harm is impermissibly "self-inflicted," because Familias urged DOL to take a position *one way or another* with respect to ESD's 2022 wage findings.  [citing Federal Defendants' response brief.]  Pointing out that DOL has a regulatory and statutory duty to act on prevailing wage findings reported by ESD is not the same thing as endorsing those findings.  To the contrary, Familias has been clear since the inception of this case that the 2022 findings reported by ESD were invalid and hoped that, when DOL took final agency action with respect to those findings, it would reject them as inconsistent with its regulatory and sub-regulatory policies.  Instead, it approved them, making Familias's challenge to the sub-regulatory policies they embody ripe for adjudication.  There is nothing inconsistent or self-injurious about insisting DOL fulfill its duty to act on prevailing wage findings, *one way or another*, and then challenging the specific actions taken by DOL when, as is the case here, those actions are arbitrary and contrary to law.

Dkt. # 194 at 3–4.

Familias does not dispute that by moving to clarify the first preliminary injunction, it created the risk that DOL might publish the 2022-survey wages.  But Familias suggests that the harm is not self-inflicted because it is not a proximate cause of the harm.  That is, merely allowing, but not requiring, DOL to publish the 2022-survey wages undermines the extent to which the harm is self-inflicted.  Familias cites no authority for this proposition; and even if it

did,[7] Familias's characterization of its conduct as merely seeking to allow DOL to decide whether to publish the 2022-survey wages is not entirely accurate.

The issue of whether the 2022-survey wages were published arose in a discovery dispute, in which DOL pointed out that there was no final agency action based on ESD's 2022 survey. Dkt. # 88 at 4.  Familias responded that DOL took final agency action when Lindsey Baldwin, the Director of DOL's Prevailing Wage Program, issued an official memorandum to the Director of the H-2A Program on July 9, 2024, which validated "ESD's prevailing wage determinations based on the 2022 survey results."  *Id.* (quoting Dkt. # 87 at 6); Dkt. # 76-3 at 619–21 (memorandum).  Because the discussion on whether there was final agency action was limited, the Court suggested that DOL could separately move to raise the issue.  Dkt. # 88 at 4.  Federal Defendants did so in moving for partial summary judgment, in which it sought to dismiss all claims requiring judicial review of DOL's actions "relating to ESD's 2022 prevailing wage survey findings," because DOL "did not take final agency action on ESD's 2022 prevailing wage survey findings."  Dkt. # 89 at 3–4.

In response to Federal Defendants' partial summary judgment motion, Familias acknowledged that DOL did not approve the 2022-survey wages.  Dkt. # 127 at 13.  And before the Court ruled on that motion, Familias moved for leave to amend its complaint to clarify that it does not rely on DOL's approval of the 2022-survey wages to bring its claims.[8]  Dkt. # 111 at 1– 2.  After some of its claims were dismissed for lack of final agency action, Familias moved to clarify the first preliminary injunction and to compel DOL to act on the 2022-survey wages.

---

[7] In his dissent in *Al Otro Lado*, Judge Bress distinguished the cases that the majority relies on for the proposition that self-inflicted harm severely undermines a claim for equitable relief.  952 F.3d at 1037 (Bress, J., dissenting) ("These cases all involved easily foreseeable or readily avoidable harms.").

[8] The Court initially denied this motion as moot in ruling on Federal Defendants' partial summary judgment motion.  Dkt. # 127 at 22.  After Familias renewed its motion, Dkt. # 130, the Court granted it. Dkt. # 145.

Although Familias asked the Court to "require DOL to *take action* on the Washington 2022-Survey results within 14 days," Dkt. # 128 at 10 (emphasis added), the Court construed this request as one for an order "compel[ling] DOL to publish and enforce new prevailing wage rates for Washington." Dkt. # 146 at 2. This is because in its motion, Familias stated, "On July 9, 2024, two DOL analysts wrote a memo recommending final approval of the 2022-Survey findings," and that "[a]ll that is missing are the initials of Lindsey Baldwin." Dkt. # 128 at 4. And Familias justified the timeframe of its request that the Court "order DOL to make a decision (to the extent it has not already) within two weeks" on the 2022-survey findings in part because DOL "is one set of initials away from making its decision official." *Id.* at 9.

Familias did not merely insist that "DOL fulfill its duty to act on prevailing wage findings, *one way or another*." Dkt. # 194 at 4. It initially represented that DOL had already taken final agency action as to the 2022-survey wages. And after conceding that DOL had not yet done so, it moved to require DOL to "take action" on the 2022-survey wages in a manner that strongly suggested that DOL would publish them. Based on Familias's limited briefing, the Court can only conclude that the self-inflicted nature of Familias's harm undermines what would otherwise be an adequate showing of irreparable harm.[9]

B.    Likelihood of Success on the Merits

Because Familias's showing of irreparable harm is weak, it "must make a commensurately strong showing of a likelihood of success on the merits to prevail under the sliding scale approach." *Al Otro Lado*, 952 F.3d at 1010 (citing *All. for the Wild Rockies*, 632 F.3d at 1131). Although Familias shows some likelihood of success as to its claim that "no finding" results in the 2022-survey wages cannot replace the 2020-survey wages, it is not

---

[9] Familias also does not respond to Federal Defendants' contention that it does not show irreparable harm because the harm must be to the movant rather than a third party. Dkt. # 192 at 17 n.6.

1  sufficiently strong to warrant a third preliminary injunction.  And Familias does not show a

2  likelihood of success as to its other claims.

3          1.       Replacing the 2020-survey prevailing wages with "no finding" results in the
                    2022-survey prevailing wages

4          Familias shows some likelihood of success on the merits of its claim that "no finding"

5  results in the 2022-survey wages cannot replace the 2020-survey wages.  Doing so might be

6  contrary to law under the Administrative Procedure Act (APA), 5 U.S.C. § 706(2)(A).  As an

7  initial matter, Familias contends that allowing "no finding" results in the 2022-survey wages to

8  replace the 2020-survey wages violates the first preliminary injunction as clarified.  This framing

9  of the issue is unhelpful and reflects the tortuous litigation thus far.

10         Initially, the issue whether a "no finding" result for a crop activity in a new set of

11 prevailing wages replaces a preexisting prevailing wage for that activity did not arise because

12 under the One-Year Rule, the 2020-survey wages had expired when Familias filed its initial

13 complaint.  Dkt. # 1 at 14, ¶ 68.  And because DOL had not yet published the 2022-survey

14 wages, there were no prevailing wages in place.[10]  When the Court ordered DOL to reinstate the

15 2020-survey wages under the first preliminary injunction, DOL understood it to mean that the

16 2020-survey wages must be enforced throughout the pendency of this case.  Dkt. # 134 at 2–3.

17 Because DOL believed that it could not publish the 2022-survey wages, there was no reason to

18 consider what would happen if those wages included "no finding" results.

19         In asking the Court to clarify the first preliminary injunction, Familias did not adequately

20 raise this issue.  Familias first asked the Court to clarify the first preliminary injunction and to

21 order DOL to decide whether it approves ESD's interpretations of its regulations in its opposition

22 to Federal Defendants' partial summary judgment motion.  Dkt. # 127 at 13 n.4.  The Court

23

24       [10] Familias says that ESD never submitted its 2021 survey results to DOL.  Dkt. # 9 at 8.

ORDER DENYING PLAINTIFF'S MOTION FOR
A THIRD PRELIMINARY INJUNCTION - 12

denied the request because it was procedurally improper and dismissed some of Familias's claims for lack of final agency action. *Id.* at 13 n.4, 23. Familias then renewed its request in its motion to clarify the first preliminary injunction and, as discussed *supra* Section III.A, what the Court construed as a request for an order compelling DOL to publish the 2022-survey wages.

Thus, the focus was on whether DOL could publish new wages, not the consequences of such action. To be sure, Familias's proposed order for its motion to clarify the first preliminary injunction states, "No changes shall be made to the published 2020-Survey prevailing wage rates without this Court's prior review and approval." Dkt. # 128-1 at 2. But its briefing does not anticipate the issue of whether "no finding" results might replace the 2020-survey wages; Familias merely asked the Court to "1) clarify that its July 2, 2024 preliminary injunction does not prevent DOL from carrying out its statutory duty to protect the wages and working conditions of farmworkers; 2) and require DOL to take action on the Washington 2022-Survey results within 14 days." Dkt. ## 128 at 10; 135 at 8. And although Federal Defendants observed that Familias's request for an order that would compel DOL "to engage in the busy work of validating survey findings that are outdated and, under Plaintiff's own theory of the case, hopelessly flawed and inaccurate," it primarily took issue with the fact that "it was only after the Department filed its motion for partial summary judgment, and the significance of the final agency action requirement to Plaintiff's claims became apparent, that the supposed lack of clarity of the preliminary injunction became an issue for Plaintiff." Dkt. # 134 at 3, 8. Based on the briefing before it, the Court clarified the first preliminary injunction, which again provides:

> DOL is ORDERED to REINSTATE and enforce the 2020-Survey prevailing wage rates, published in January 2022, until judgment is entered in this case. DOL may replace the 2020-Survey prevailing wage rates with subsequently published prevailing wage rates.

Dkt. # 146 at 3.

Familias now contends that replacing 2020-survey wages with "no finding" results in the 2022-survey wages violates the first preliminary injunction as clarified. But the present motion is not one for contempt. Familias says that it did not move for contempt because it acknowledges that the first preliminary injunction as clarified "did not explicitly state that a 'no finding' is not a published prevailing wage finding." Dkt. # 194 at 4. Instead, it moves for a third preliminary injunction based on its claim that replacing 2020-survey wages with "no finding" results in the 2022-survey wages is contrary to law under the APA. *See* Dkt. # 176 at 18. It asserts that such action is contrary to "DOL's regulatory definition [of 'prevailing wage']," "Ninth Circuit precedent," and the first preliminary injunction as clarified. *Id.* at 14. Rather than assert that such action violates each of these authorities independently, however, it uses DOL's regulations and Ninth Circuit precedent to support its assertion that such action violates the first preliminary injunction. This framing is unhelpful for two reasons.

First, Familias cites no authority suggesting that it may bring a claim that an agency's action is contrary to law under the APA because it violates a preliminary injunction. It also does not respond to Federal Defendants' contention that "[t]he APA does not waive sovereign immunity for cases asserting a violation of judicial mandates." Dkt. # 192 at 5 (citing *Shawnee Trail Conservancy v. Nicholas*, 343 F. Supp. 2d 687, 701–02 (S.D. Ill. 2004)). Moreover, "[a] court's equitable power lies only over the merits of the case or controversy before it." *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 633 (9th Cir. 2015). Thus, a court may not grant a plaintiff injunctive relief based on claims not pled in the complaint. *Id.* Familias says that the relief it seeks—reinstating the 2020-survey wages for crop activities with a "no finding" result in the 2022-survey wages—is sufficiently related to the claims pled in its complaint. This is likely so. But it is unclear how a claim that agency action is contrary to one preliminary injunction may be the basis for another preliminary injunction. The Court would

have to assess whether Familias is likely to succeed on the merits of a claim that exists only because Familias has previously shown that it is likely to succeed on the merits of another claim. Familias cites no authority supporting such analysis.

Second, Familias asserts that because the first preliminary injunction as clarified allows DOL only to "replace the 2020-Survey prevailing wage rates with subsequently published *prevailing wage rates*," Dkt. # 146 at 3 (emphasis added), the pertinent question is whether a "no finding" is a "prevailing wage." And because Federal Defendants acknowledge that DOL "has never taken [the] position" that "a 'no finding' is the same thing as a 'prevailing wage finding,'" Dkt. # 192 at 5–6, Familias says, "that should be the end of the matter." Dkt. # 194 at 5. But Federal Defendants' acknowledgment is unlikely to be dispositive because Familias suggests that it would not succeed in moving for contempt. *Id.* at 4–5. And as discussed above, it does not explain how a violation of the first preliminary injunction may be brought under an APA claim. Thus, asking whether DOL violates the first preliminary injunction likely leads nowhere.

The parties' briefing, however, suggests that asking whether DOL violates its own regulations (i.e., even in the absence of the first preliminary injunction), might lead somewhere. Familias asserts that the first preliminary injunction only enjoined part of the One-Year Rule, italicized below:

> A prevailing wage issued by the OFLC Administrator will remain valid *for 1 year after the wage is posted on the OFLC website or* until replaced with an adjusted prevailing wage, whichever comes first, except that if a prevailing wage that was guaranteed on the job order expires during the work contract, the employer must continue to guarantee at least the expired prevailing wage rate.

20 C.F.R. § 655.120(c)(2) (emphasis added).[11] Relying on a severability clause, Familias says that the rest of the One-Year Rule remains in effect, such that it provides: "A prevailing wage

---

[11] OFLC refers to DOL's Office of Foreign Labor Certification.

ORDER DENYING PLAINTIFF'S MOTION FOR
A THIRD PRELIMINARY INJUNCTION - 15

issued by the OFLC Administrator will remain valid until replaced with an adjusted prevailing wage." Dkt. # 176 at 16–17 (citing 20 C.F.R. § 655.190). Familias contends that replacing the 2020-survey wages with "no finding" results violates the One-Year Rule as severed because Federal Defendants concede that a "no finding" is not a "prevailing wage." This is consistent with the definition of "prevailing wage" as

> A wage rate established by the OFLC Administrator for a crop activity or agricultural activity and, if applicable, a distinct work task or tasks performed in that activity and geographic area based on a survey conducted by a State *that meets the requirements in § 655.120(c).*

20 C.F.R. § 655.103(b) (emphasis added). And Federal Defendants do not dispute that many of the "no finding" results in the 2022-survey wages are due to violations of the 25% Rule, which is one of "the requirements in § 655.120(c)," specifically § 655.120(c)(1)(ix). Dkt. # 176 at 18 (citing Dkt. # 76-3 at 130).

The Court, however, did not enjoin only part of the One-Year Rule. It enjoined all of it: "DOL is ENJOINED from enforcing 20 C.F.R. §655.120(c)(2), the One-Year rule, as to prevailing wages for Washington State." Dkt. # 40 at 21. But the fact that the One-Year Rule clarifies whether a "no finding" result for a crop activity in a new set of prevailing wages replaces a preexisting prevailing wage for that activity might still be significant.

Based on the One-Year Rule, it appears that if a new prevailing wage survey yielded a "no finding" result for a crop activity, this result would have no effect until the preexisting prevailing wage expired after one year. A "no finding" result would not replace a preexisting prevailing wage before this one-year mark because it is not "an adjusted prevailing wage." 20 C.F.R. § 655.120(c)(2). And the notice of proposed rulemaking (NPRM) explains:

> In addition to the standards governing the methodology in the survey, in § 655.120(c)(2), the Department proposes that a prevailing wage rate would remain valid for 1 year after OFLC posts the wage rate *or until replaced with an adjusted prevailing wage*, whichever comes first, except that if a prevailing wage that was

guaranteed in the employer's Application for Temporary Employment Certification expires during the contract period, the employer must continue to guarantee a wage that is at least equal to the expired prevailing wage rate. *This proposal is consistent with OFLC's current policy.*

84 Fed. Reg. 36168, 36188 (July 26, 2019) (emphasis added).  This appears to suggest that DOL's practice before the One-Year Rule was to replace a prevailing wage only when it expired or was superseded by another prevailing wage.

What DOL's practice was before the One-Year Rule, however, is an open question.  As the Court discussed in its order granting the first preliminary injunction, DOL justified the One-Year Rule in the NPRM by explaining that the "1-year validity period for prevailing wage rates [was] generally consistent with [DOL's prior] practice."  Dkt. # 40 at 14 (quoting 84 Fed. Reg. at 36188).  But Michele Besso, the Managing Attorney of the Farm Worker Unit of the Northwest Justice Project, declared that before 2023, DOL regularly kept prevailing wages for Washington posted for more than one year.  *Id.* at 14–15 (citing Dkt. # 25 at 2).[12]  As to whether a "no finding" result may replace a preexisting prevailing wage, Baldwin declares:

> When a SWA such as Washington's ESD submits a prevailing wage survey to the Department, if the Department is able to validate the survey's findings under the Department's regulations, the findings *(or lack thereof) for each activity replace published prevailing wage rates from a previous ESD survey.*  Where the most recent ESD survey has been unable to find a prevailing wage rate for a particular activity under the Department's regulations, that crop or activity will not have a prevailing wage rate.

Dkt. # 193 at 2–3, ¶ 5 (emphasis added).  But neither Baldwin nor Federal Defendants provide specific examples or cite persuasive authority to support this practice.  Federal Defendants rely on *Garcia v. Stewart*, 531 F. Supp. 3d 194, 214 (D.D.C. 2021), for the proposition that it has no obligation "to maintain or establish a prevailing wage rate" when "an SWA (such as ESD) is

---

[12] The Court granted in part Familias's motion to supplement the record as to the Besso Declaration.  Dkt. # 127 at 18–20.

unable to find a prevailing wage rate for a particular activity based on a survey it conducts." Dkt. # 192 at 6. The cited part of this case, however, merely supports the conclusion that the regulations do not "impose[] a nondiscretionary duty on employers to offer and to pay—and thus on DOL to ensure that employers will offer and pay—an amount equal to at least the highest of the four wage rates, *even if no one has calculated or established one or more of those rates*." *Garcia*, 531 F. Supp. 3d at 214 (emphasis added). It does not address whether the regulations impose a duty on DOL to ensure that employers will offer and pay a preexisting prevailing wage for an activity even if a subsequent prevailing wage survey produces "no finding" for that activity.

The regulations might impose such a duty. Federal Defendants say that in replacing the 2020-survey wages with "no finding" results, DOL is "simply following" 20 C.F.R. §§ 655.120(a)(1)(ii), (c). But § 655.120(a)(1)(ii) provides:

> (1) Except for occupations covered by §§ 655.200 through 655.235, to comply with its obligation under § 655.122(l), *an employer must offer, advertise in its recruitment, and pay a wage that is at least the highest of*:
>
> > (i) The AEWR;
> >
> > (ii) A prevailing wage rate, whether expressed as a piece rate or other unit of pay, *if the OFLC Administrator has approved a prevailing wage survey* for the applicable crop activity or agricultural activity and, if applicable, a distinct work task or tasks performed in that activity, *meeting the requirements of paragraph (c)* of this section;

(emphasis added). And § 655.120(c)(1) provides, "The OFLC Administrator *will issue a prevailing wage* for a crop activity or agricultural activity and, if applicable, a distinct work task or tasks performed in that activity *if all of the following requirements are met*" (emphasis added). Thus, it is possible that once the OFLC Administrator approves a prevailing wage, an employer "must" pay it until the OFLC Administrator approves another prevailing wage.

Familias therefore shows some likelihood of success on the merits of its claim that DOL's replacement of the 2020-survey wages with "no finding" results is contrary to law.

> 2.      DOL's application of the 25% Rule in publishing "no finding" results as part of the 2022-survey prevailing wages

The parties have fully briefed Familias's claim that the 25% Rule is arbitrary and capricious and contrary to law in their cross-motions for summary judgment and they refer to such briefing in their contentions as to whether the Court should issue a third preliminary injunction. Dkt. ## 176 at 19; 192 at 7. Thus, the Court suggested that the parties could propose consolidating part of Familias's motion for a third preliminary injunction with consideration on the merits. Dkt. # 196 at 17 n.12. The Court also directed the parties to either amend or supplement their cross-motions for summary judgment in light of DOL's publishing the 2022-survey wages or tell the Court that they will not do so. *Id.* at 17. Familias filed a notice that it does not intend to amend or supplement its motion for partial summary judgment and that it does not oppose consolidation of part of its motion for a third preliminary injunction with consideration on the merits. Dkt. # 198 at 1–2. Federal Defendants take no position on the issue of consolidation and indicate that they "will file a supplemental memorandum in support of its cross-motion for summary judgment to address newly alleged claims in Plaintiff's third amended complaint." Dkt. # 200 at 4. Considering the lack of agreement on the issue, the Court will not consolidate part of Familias's motion for a third preliminary injunction as to the 25% Rule with consideration on the merits. The Court considers the parties' summary judgment briefing only for purposes of ruling on the present motion.

The Court begins with an overview of the 25% Rule before turning to Familias's claim as raised in the present motion. The 25% Rule is among many requirements that must be met before the OFLC Administrator will issue a prevailing wage:

ORDER DENYING PLAINTIFF'S MOTION FOR
A THIRD PRELIMINARY INJUNCTION - 19

(1) The OFLC Administrator *will issue a prevailing wage* for a crop activity or agricultural activity and, if applicable, a distinct work task or tasks performed in that activity *if all of the following requirements are met*:

. . .

(ix) Where the estimated universe of employers is at least 4, the wages paid by a single employer *represent no more than 25 percent* of the sampled wages in the unit of pay used to compensate the largest number of U.S. workers whose wages are reported in the survey. This paragraph (c)(1)(ix) does not apply where the estimated universe of employers is less than four.

20 C.F.R. § 655.120(c)(1)(ix) (emphasis added). The purpose of the rule, as stated in the NPRM, is to ensure that the prevailing wage "is not unduly impacted by the wages of a single dominant employer." 84 Fed. Reg. at 36187.

Federal Defendants say that the plain text of the rule is clear: if an employer represents more than 25% of the sampled wages based on the appropriate metric, the OFLC Administrator cannot issue a prevailing wage. According to Familias, DOL created the following example:

ORDER DENYING PLAINTIFF'S MOTION FOR
A THIRD PRELIMINARY INJUNCTION - 20

| SAMPLE PREVAILING WAGE SURVEYS - APPLES, PICKING | | | |
|---|---|---|---|
| Employer | Number Employees Reported | Pay | Unit |
| 1 | 8 | $18.00 | Hour |
| 2 | 14 | $20.00 | Per Bin |
| 3 | 16 | $20.00 | Per Bin |
| 4 | 8 | $20.00 | Hour |
| 5 | 6 | $18.00 | Per Bin |
| 6 | 10 | $20.00 | Per Bin |
| 7 | 6 | $18.00 | Per Bin |
| 8 | 5 | $16.00 | Hour |
| 9 | 3 | $17.00 | Hour |
| 10 | 1 | $21.00 | Per Bin |
| 11 | 2 | $22.00 | Hour |
| 12 | 4 | $19.00 | Hour |
| 13 | 5 | $22.00 | Hour |
| 14 | 5 | $21.00 | Hour |
| Total Employees Reported | 53 | | |

**Calculation of Largest Unit of Pay**
53 Per Bin
There were only 40 Hourly workers
53>40

**Calculation of Dominant Employer**
Per bin is largest unit of pay
Yes--30 percent is above 25 percent threshold
53 workers reported in largest unit of pay

16 is the highest number of workers per employer
out of this new subset of employers.
16 /53 = 30 percent

Dkt. # 165 at 17 (citing Dkt. # 76-2 at 212 (AR 686-1)).

As shown above, the first step is to determine the appropriate metric: "the unit of pay used to compensate the largest number of U.S. workers whose wages are reported in the survey." 20 C.F.R. § 655.120(c)(1)(ix).  Because 53 employees were paid by the bin as opposed to 40 employees who were paid by the hour, the appropriate metric is pay by the bin.  The second step is to determine whether a single employer employs more than 25% of the employees based on the appropriate metric.  Because one employer paying by the bin reports 16 employees and 16 is

about 30% of the 53 employees who are paid by the bin in the sample, this survey violates the 25% Rule.

The parties appear to agree that the OFLC Administrator is not required to issue a prevailing wage based on a survey in which an employer represents more than 25% of the sampled wages based on the appropriate metric. They part ways, however, as to whether the OFLC Administrator nonetheless has a duty to make a prevailing wage finding. DOL says that the OFLC Administrator has no such duty; the Administrator will issue a "no finding" result. Dkt. # 76-2 at 214 (AR 687); *see also* Dkt. # 76-3 at 170–71 (AR 1208–09). A flowchart provided by the National Prevailing Wage Center provides, "No Finding determinations may be the result of a prevailing wage survey not meeting one or more of the requirements under 20 CFR 655.120(c)." Dkt. # 76-2 at 214. Familias contends that this is contrary to the purpose of the regulation which, in its view, is to increase the number of prevailing wages. *See* Dkt. # 176 at 19; *see also* Dkt. # 165 at 19. Familias therefore asserts that the rule should be interpreted to "cap the large employer's data at 25% of reported workers or remove the offending data and calculate a prevailing wage from the remaining data." Dkt. # 176 at 19. For example, although the "dominant" employer in the example above reports 16 employees paid by the bin, only 13 of those employees (about 24.5% of the employees based on the appropriate metric) or none of them would be considered in calculating a prevailing wage.

In sum, the parties appear to agree as to when a survey violates the 25% Rule; they disagree as to whether the OFLC Administrator has a duty to issue a prevailing wage even when a survey violates the 25% Rule. With this central disagreement in mind, the Court turns to Familias's claim in its present motion that the 25% Rule is arbitrary and capricious and contrary to law *as applied* in publishing the 2022-survey wages. Dkt. # 176 at 19. This appears to be

distinct from Familias's *facial* challenge to the 25% Rule as raised in its pending partial

summary judgment motion.[13]

For agency action to be set aside as arbitrary and capricious, courts consider whether the

agency

> has relied on factors which Congress has not intended it to consider, entirely failed
> to consider an important aspect of the problem, offered an explanation for its
> decision that runs counter to the evidence before the agency, or is so implausible
> that it could not be ascribed to a difference in view or the product of agency
> expertise.

*Advanced Integrative Med. Sci. Inst., PLLC v. United States Drug Enf't Admin.*, 128 F.4th 1133,

1143 (9th Cir. 2025) (quoting *Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto.*

*Ins. Co.*, 463 U.S. 29, 43 (1983)).  Courts may also set aside agency action that is contrary to

law.  *See Montana Wildlife Fed'n v. Haaland*, 127 F.4th 1, 42 (9th Cir. 2025) (quoting *Norton v.*

*S. Utah Wilderness All.*, 542 U.S. 55, 69 (2004)).  The inquiry is whether the agency's decision-

making process as to a specific "agency action" is arbitrary and capricious or contrary to law.  5

U.S.C. § 706(2)(A).

Thus, what Familias states is its as-applied challenge appears to concern DOL's decision

to publish "no finding" results in the 2022-survey wages.  The basis for Familias's claim is not

entirely clear because although it specifies that its claim in the present motion is an as-applied as

opposed to a facial challenge to the 25% Rule, it does not explain whether this changes the

---

[13] Federal Defendants raise the issue of administrative waiver as to Familias's facial challenge to
the 25% Rule in their briefing on the cross-motions for summary judgment.  Dkt. # 185 at 12–15 & n.5.
After DOL published the 2022-survey wages during this briefing, Familias amended its complaint to add
an as-applied challenge to the 25% Rule, which is raised for the first time in the present motion for a third
preliminary injunction.  Dkt. # 176 at 19.  Federal Defendants do not respond to Familias's assertion that
waiver is inapplicable to such a claim.  *Id.* at 23 (citing *Koretoff v. Vilsack*, 707 F.3d 394, 399 (D.C. Cir.
2013)); Dkt. # 194 at 7 n.2.  And Familias does not raise its facial challenge in its present motion.  Dkt.
# 176 at 19 ("Plaintiff's motion for a TRO and preliminary injunction is an 'as applied' challenge to
DOL's interpretation of the 25% rule."); *see also id.* at 23 ("[B]ecause this is a challenge to DOL's
application of the 25% Rule to the 2022 survey findings, waiver is not an issue.").

applicable analysis.  Instead, Familias generally repeats contentions made in its partial summary judgment motion, which concern a facial challenge to the rule.  To the extent that the Court can discern Familias's as-applied challenge as distinct from a facial one, it concludes that its three contentions made in support of it are unpersuasive.

First, Familias contends that DOL should have interpreted the 25% Rule to mean that when a survey violates it, the OFLC Administrator must cap a "dominant" employer's data at 25% or remove that employer's data altogether and publish a prevailing wage based on the remaining data rather than a "no finding" result.  Familias asserts that when the 25% Rule is violated, the OFLC Administrator nonetheless has a duty to publish a prevailing wage because DOL recognized that standards contributing to a "no finding" result are "both a waste of government resources and fail[s] to meet the goal of producing reliable and accurate prevailing wage rates."  Dkt. # 176 at 21 (quoting 84 Fed. Reg. at 36187).  Familias also appears to refer to 8 U.S.C. § 1188(a)(1)(B), which provides that the Secretary of Labor may certify employment of an H-2A worker if it "will not adversely affect the wages and working conditions of workers in the United States similarly employed."

Without more, however, the Court cannot conclude that DOL's decision to publish "no finding" results in its 2022-survey wages is likely arbitrary and capricious or contrary to law.  Because Familias does not explain how DOL approved the 2022-survey wages, the Court cannot assess whether its decision-making process was arbitrary and capricious.  The Court similarly denied in part Familias's motion for a first preliminary injunction as to the 25% Rule because Familias did not provide "sufficient information about the agency's decision-making process."  Dkt. # 40 at 16–17.

Familias's claim that the publication of "no finding" results in the 2022-survey wages is contrary to law is also underdeveloped.  The plain text of the 25% Rule does not support

Familias's interpretation that when a survey violates the rule, the OFLC Administrator must salvage the survey by limiting the data of a "dominant" employer and publish a prevailing wage. And Familias does not explain how DOL's recognition that standards contributing to "no finding" results are contrary to "the goal of producing *reliable and accurate* prevailing wage rates" supports the conclusion that DOL has a general duty to publish prevailing wage rates even when the regulatory scheme would produce no finding. 84 Fed. Reg. at 36187 (emphasis added).[14] Nor does it explain with specificity or supporting authority how 8 U.S.C. § 1188(a)(1)(B)'s broad provision for ensuring that H-2A workers do not "adversely affect the wages and working conditions of workers in the United States" imposes a duty on DOL to publish prevailing wages by salvaging surveys that fail to satisfy its regulations.[15]

Second, Familias contends that the DOL's application of the 25% Rule is arbitrary because although the purpose of the rule is to prevent "dominant" employers from unduly influencing prevailing wages, the 2022 cherry and apple surveys show that the prevailing wage is "essentially the same" whether the "dominant" employer's data is considered or not. Dkt. # 176 at 21–22 (citing Dkt. # 182 at 3–5). Even if so, it is unclear how DOL's application of the rule can be arbitrary if the rule does not provide for an exception in such circumstances. *See Advanced Integrative Med. Sci. Inst.*, 128 F.4th at 1148 (an agency's failure to discuss a standard

---

[14] Familias also cites another part of the NPRM that similarly says, "By modernizing the prevailing wage survey standards, the Department hopes to focus States on producing surveys in the circumstances in which the surveys can be most useful for protecting the wages of U.S. workers, and hopes to encourage a greater number of *reliable* prevailing wage survey results." Dkt. # 176 at 5 (quoting 84 Fed. Reg. at 36185) (emphasis added).

[15] Familias refers to part of its response to Federal Defendants' cross motion for summary judgment, in which it responds to their contention that DOL has a duty to balance the competing goals of protecting domestic farmworkers and ensuring that growers have a sufficient source of labor. Dkt. # 194 at 9 (citing Dkt. # 187 at 3–5). It asserts that DOL's "sole duty" under the regulatory scheme is "to determine what standards, including what wage levels, will protect U.S. workers from the adverse effects of foreign competition." Dkt. # 187 at 3–5. But this general assertion does not specifically explain how DOL has a duty to salvage surveys to issue prevailing wages.

that it never adopted is not arbitrary and capricious).  And to the extent that Familias's as-applied challenge is effectively a facial challenge to a rule, the parties do not discuss whether administrative waiver might apply.  *See Cnty. of Amador v. United States Dep't of the Interior*, 872 F.3d 1012, 1031 n.18 (9th Cir. 2017) ("If [the plaintiff's] as-applied challenge fails, then [its] facial challenge necessarily fails as well because there is at least one set of circumstances where application of [the challenged statute] [is lawful].") (citation omitted, alteration added); *see supra* n.13 (discussing administrative waiver).

Finally, Familias suggests that application of the 25% Rule is contrary to law because 20 C.F.R. § 655.120(c)(1)(iv)[16] requires that a survey be based on a sufficiently large sample. Familias says that this requirement ensures that such surveys will necessarily constitute a "sufficiently representative sample" of the population, supposedly quoting DOL's final rule. Dkt. # 176 at 22 (citing 87 Fed. Reg. at 61695).  Thus, Familias reasons that the 25% Rule undermines the extent to which a survey is reliable.  But the cited page of the final rule neither appears to contain this quote nor supports the proposition that § 655.120(c)(1)(iv) alone ensures a sufficiently representative sample of the population.  The final rule says that "the minimum standards in § 655.120(c)" as a whole "are aimed at ensuring surveys that are sufficiently representative and do not rely on selecting sampling or other techniques that result in biased prevailing wages."  87 Fed. Reg. at 61695.

Thus, Familias does not show likelihood of success on the merits of its as-applied challenge to the 25% Rule.

---

[16] This regulation provides, "The surveyor either made a reasonable, good faith attempt to contact all employers employing workers in the crop activity or agricultural activity and distinct work task(s), if applicable, and geographic area surveyed or contacted a randomized sample of such employers, except where the estimated universe of employers is less than five. Where the estimated universe of employers is less than five, the surveyor contacted all employers in the estimated universe."

ORDER DENYING PLAINTIFF'S MOTION FOR
A THIRD PRELIMINARY INJUNCTION - 26

1

2

3  3.  DOL's approval of the methods ESD used to determine the 2022-survey prevailing wages

Familias contends that DOL's approvals of three methods that ESD used to calculate prevailing rates based on its 2022 survey findings are arbitrary and capricious and contrary to law: (1) fracturing similar wages into different categories (wage fracturing); (2) allowing "tainted" (i.e., unrepresentative) survey data; and (3) estimating populations. Familias asks the Court to enjoin DOL from calculating prevailing wages based on these methods. Dkt. # 176 at 36. As discussed above, these claims were previously dismissed on partial summary judgment insofar as they allege that DOL approved ESD's 2022 survey method because Familias failed to identify a final agency action, which is required for APA review. 5 U.S.C. § 704; Dkt. # 127 at 7–10, 23. At the time, DOL had not approved the 2022-survey wages and Familias did not identify any other final agency action as to these claims. But after DOL published the 2022-survey wages, the Court granted Familias leave to file a supplemental and third amended complaint to renew these claims based on its assertion that publication of the 2022-survey wages constitutes final agency action. Dkt. # 196 at 10–11. That the Court allowed Familias to revive these claims, however, does not mean that they necessarily satisfy the final agency action requirement.

To the contrary, Familias does not show likelihood of success in showing that publication of the 2022-survey wages is final agency action as to these claims. Familias assumes that DOL's approval of the 2022-survey wages—which Federal Defendants do not dispute is a final agency action—allows for APA review of every method used to produce those wages. But it cites no authority suggesting that a final agency action of approving a set of findings can be construed as a final agency action of approving every method used to produce those findings. Nor does it

identify other allegedly final actions taken by DOL that might be construed as approval of ESD's methods.

Moreover, the extent to which DOL has authority over ESD's methods is unclear. Federal Defendants assert that

> if Plaintiff prevailed in challenging the Department's issuance of the 2022-survey wages based on an argument that ESD's survey was inadequate, the result would not be that the Department would be required to impose different standards on ESD, *because the regulation does not allow that*. Instead, the result would be that the Department would issue no prevailing wage finding.

Dkt. # 192 at 16 (emphasis added). They also assert that ESD has discretion to choose methodologies "to try to make sense of [] widely varying methods of compensation to produce prevailing wage findings," and that "the Department's regulations do not permit it to publish a prevailing wage rate if ESD is unable to find a prevailing wage rate." *Id.* at 11. But they cite no regulation(s) to support these assertions.[17] Similarly, Familias suggests that 8 U.S.C. § 1188(a)(1)(B) imposes a duty on DOL to "insist that the state agencies (which are paid by DOL) conduct surveys in conformance with the requirements of the law." Dkt. # 194 at 12. But Familias does not specify what these "requirements" are. It merely cites a previous filing in which it provided an overview of the guidance DOL gives to SWAs as to how to perform their roles in determining prevailing wages. *Id.* (citing Dkt. # 54 at 4–6).

Because Familias does not sufficiently show that there is final agency action as to its claims that DOL's approvals of ESD's methods are arbitrary and capricious and contrary to law, the Court cannot review them. *See San Francisco Herring Ass'n v. Dep't of the Interior*, 946 F.3d 564, 571 (9th Cir. 2019) ("In this circuit, the final agency action requirement has been treated as jurisdictional.").

---

[17] They cite Baldwin's Fifth Declaration, but the paragraph to which they cite does not mention a specific regulation. Dkt. # 192 at 11 (citing Dkt. # 193 at 2–3, ¶ 5).

4.      DOL's application of ESD's survey methods in publishing "no finding" results as part of the 2022-survey prevailing wages

The Court can, however, consider ESD's methods in assessing Familias's claim that DOL's publication of "no finding" results in the 2022-survey wages (which again, Federal Defendants do not dispute is a final agency action) is arbitrary and capricious and contrary to law.  Because Familias does not clearly differentiate between its challenge to DOL's approval of ESD's methods and its challenge to DOL's publication of "no finding" results in the 2022-survey wages based on those methods, the agency action at issue is not always clear.  *See e.g.*, Dkt. # 176 at 28 ("This Court should find that Familias is likely to prevail on its claim that wage fracturing is arbitrary and contrary to law and enjoin enforcement of the 2022-Survey 'no findings' for that reason.").  Based on the briefing before it, the Court concludes that Familias is unlikely to succeed on its claim that DOL's publication of "no finding" results in the 2022-survey wages is arbitrary and capricious and contrary to law because they are based on ESD's survey methods.

a.      Wage fracturing

Familias describes ESD's "wage fracturing" practice as treating (i) piece rates with hourly guarantees; (ii) piece rates with bonuses; and (iii) straight piece rates (piece rates with no hourly guarantees or bonuses) as different units of pay.  Dkt. # 197 at 21–22, ¶ 116.  Familias alleges that this practice is flawed because it undercounts piece-rates and inflates the number of hourly rates:

> As a result of DOL's approval of the policy of subdividing piece rates, it is possible that even though the majority of the workers on the survey responses are paid a piece rate with or without a guarantee or bonus, an hourly rate (paid to a minority of the workers) will be deemed to be the prevailing rate. For example, if 66% of all workers are paid a piece rate, with 33% of the reported workers paid by the piece and another 33% paid at a piece rate with an hourly guarantee, and the remaining 34% of workers are paid by the hour, DOL's policy would deem the hourly rate the prevailing rate.

*Id.* at 22, ¶ 118.

Familias also alleges that wage fracturing makes it more likely that the wages paid by a single employer will violate the 25% Rule:

> For example, in the 2022 survey results, Fuji, Red Delicious, and Granny Smith apple harvests, the majority method of pay was pay by the bin of "not sure" size. Only one employer reported paying by the bin of "not sure" size, and thus those results were guaranteed to violate the 25% rule, as 100% of the workers in the majority method of pay were represented by the same employer response. As a result, every one of the dozens of other responses from Fuji harvest employers was disregarded, and workers in Fuji harvest were left without a piece-rate prevailing wage, causing adverse effects on their wages and working conditions.

*Id.* at 24–25, ¶¶ 133–34.

But Familias does not explain how DOL considered (or failed to consider) the effects of wage fracturing. And Federal Defendants suggest that DOL might have considered ESD's discretion in conducting its prevailing wage surveys, the scope of which is unclear. *See supra* Section III.B.3. Without more information about the process by which DOL published the 2022-survey wages, the Court cannot conclude that this action is likely arbitrary and capricious.

As for its contrary to law claim, Familias appears to refer to 8 U.S.C. § 1188(a)(1)(B), which, again, provides that the Secretary of Labor may certify employment of an H-2A worker if it "will not adversely affect the wages and working conditions of workers in the United States similarly employed." Familias appears to suggest that this statutory provision can be construed to mean that it is unlawful for DOL to publish "no finding" results based on surveys findings that could have been calculated in a reasonable manner to produce more prevailing piece rate wages. *See* Dkt. # 194 at 12. But Familias cites no authority to support this interpretation. Nor does it explain how this interpretation is workable. For example, it is unclear how courts can determine whether an alternative method of calculating survey findings is "reasonable," if that would be the relevant standard. In discussing the 25% Rule, Federal Defendants offer a simpler interpretation:

1    "the Department's legal duty to protect the wages of workers in the United States is satisfied by

2    the AEWR." Dkt. # 192 at 10. Familias does not respond to this interpretation. Thus, the Court

3    cannot conclude that Familias is likely to succeed on its wage-fracturing claim.

4                    b.      Tainted survey data

5           Familias asserts that survey data can be "tainted" when H-2A employers who unlawfully

6    pay the AEWR instead of an existing prevailing piece-rate wage respond to an SWA's survey.

7    Dkt. # 176 at 28. By inflating the number of AEWR responses, these H-2A employers can skew

8    the survey data such that it is more likely that the next prevailing wage based on the survey will

9    be an hourly wage. *See id.* at 28–29. Familias contends that because DOL failed to correct for

10   such wage taint, its publication of "no finding" results as part of the 2022-survey wages is

11   arbitrary and capricious and contrary to law. To support its contention, Familias relies on an

12   earlier case in which the Ninth Circuit remanded for a district court to remedy such survey bias.

13          In *Torres Hernandez v. U.S. Dep't of Lab.*, Familias (with another plaintiff) claimed that

14   before DOL could certify an employer offering the AEWR, DOL needed to determine whether

15   the AEWR was higher than an applicable prevailing piece-rate wage. 2023 WL 5662560, at *1

16   (E.D. Wash. Aug. 31, 2023), *rev'd and remanded sub nom. Torres Hernandez v. Su*, 2024 WL

17   2559562, at *1 (9th Cir. May 24, 2024). The district court denied the plaintiffs' motion for a

18   preliminary injunction because "[n]othing in 20 C.F.R. § 655.120 nor § 122(1) requires DOL to

19   check the AEWR against the prevailing wage rate before certification." *Id.* The plaintiffs

20   appealed.

21          The Ninth Circuit reversed and remanded for entry of a preliminary injunction. *Torres*

22   *Hernandez*, 2024 WL 2559562, at *1. Although DOL amended 20 C.F.R. § 655.120(a) while

23   the appeal was pending, the Ninth Circuit considered the previous version of that subsection,

24   which provided:

ORDER DENYING PLAINTIFF'S MOTION FOR
A THIRD PRELIMINARY INJUNCTION - 31

(a) Employer obligation. Except for occupations covered by §§ 655.200 through 655.235, to comply with its obligation under § 655.122(l), an employer must offer, advertise in its recruitment, and pay a wage that is at least the highest of:

(1) The AEWR;

(2) A prevailing wage rate [subject to certain criteria].[18]

*See also* Dkt. # 104-10 at 64 (comparing the previous and amended versions of § 655.120(a)).

The Ninth Circuit held that when the prevailing wage is a piece-rate, the previous version of § 655.120(a) required an H-2A employer to offer it. *Torres Hernandez*, 2024 WL 2559562, at *1. Because the regulations require employers to supplement the wages of piece-rate workers if their earnings fall below the amount that they would have earned under an hourly wage, a prevailing piece-rate wage "is always 'at least the highest of' the listed wages." *Id.* The Ninth Circuit observed that its interpretation of the previous version of § 655.120(a) is consistent with the amended version in the Final Rule, *id.* at *1 n.2, which added subsection (a)(2):

(a) Employer obligation.

(1) Except for occupations covered by §§ 655.200 through 655.235, to comply with its obligation under § 655.122(l), an employer must offer, advertise in its recruitment, and pay a wage that is at least the highest of:

(i) The AEWR;

(ii) A prevailing wage rate [subject to certain criteria];

. . .

(2) Where the wage rates set forth in paragraph (a)(1) of this section are expressed in different units of pay (including piece rates or other pay structures), the employer must list the highest applicable wage rate for each unit of pay in its job order and must offer and advertise all of these wage rates in its recruitment. The employer's obligation to pay the highest of these wage rates is set forth at § 655.122(l)(2).

---

[18] As discussed in footnote 1, 20 C.F.R. § 655.120(a) lists additional wages not at issue here.

The Ninth Circuit concluded that the amendment to § 655.120(a) did not moot the case because the plaintiffs could still seek "vacatur of improperly approved AEWR-only job orders from the 2023 harvest season and exclusion of wages paid under those orders from future prevailing wage surveys." *Torres Hernandez*, 2024 WL 2559562, at *2. The Ninth Circuit directed entry of an injunction requiring DOL to exclude from future prevailing wage surveys certain reported wages. *Id.* On remand, the district court issued a permanent injunction, which provides,

> ESD shall exclude from future prevailing wage survey results any reported wages that (1) exactly match the AEWR; (2) were paid by an employer that had received an AEWR-only job order for the 2023 harvest season; and (3) were paid during the 2023 harvest season for work in an agricultural activity with a piece-rate prevailing wage during that season.

Dkt. # 113-2 at 7. This injunction does not bear on the 2022-survey wages and enjoins only ESD, which has been dismissed from the case before this Court. Dkt. # 117.

*Torres Hernandez* supports the proposition that when an H-2A employer unlawfully pays the AEWR instead of a prevailing piece-rate wage, DOL should not approve a prevailing wage based on surveys that include those wages. Federal Defendants nonetheless contend that *Torres Hernandez* is inapplicable because Familias does not sufficiently show that the 2022-survey wages were based on surveys that included responses from H-2A employers who unlawfully paid the AEWR instead of a prevailing piece-rate wage.[19] They also suggest that it is not arbitrary and capricious or contrary to law for DOL to approve the 2022-survey wages without taking precautions to search for such wage taint.

---

[19] What Familias means by H-2A employers who were "*unlawfully* allowed to pay AEWR-only wages where prevailing piece rates existed" is not entirely clear. Dkt. # 176 at 28 (emphasis added). Because Familias does not directly challenge DOL's approval of AEWR-only job orders that might have affected the 2022-survey wages, it appears to refer to H-2A employers who, absent DOL's approval of an AEWR-only job order, unlawfully paid the AEWR instead of a prevailing piece-rate wage.

Familias does not show that the 2022-survey wages were likely based on surveys that included responses from H-2A employers who unlawfully paid the AEWR instead of a prevailing piece-rate wage.  Familias asserts that there were prevailing piece-rate wages for apples in 2022, and that the survey data for the Gala apple harvest that year includes responses from employers reporting that they paid 684 employees wages of $17.41 an hour, the AEWR that year.  Dkt. # 176 at 28–29 (citing Dkt. # 76-3 at 309–10).  Federal Defendants counter that these responses could be from non-H-2A employers, who are presumably not required to offer a prevailing piece-rate wage.  Dkt. # 192 at 12.  Familias responds that "it strains credulity for DOL to assert that non-H-2A employers would just happen to offer and pay the exact number of dollars and cents as the AEWR."  Dkt. # 194 at 13–14.  But without any evidence, the Court cannot determine how unlikely it is that a non-H-2A employer would decide to pay the AEWR.

Whether it is likely arbitrary and capricious or contrary to law for DOL to publish "no finding" results in the 2022-survey wages without taking precautions to search for such wage taint is a closer question.  Familias contends that DOL's approval of these wages is arbitrary and capricious and contrary to law because it should have asked ESD for information in its possession that would reveal whether H-2A employers unlawfully offered the AEWR instead of a prevailing piece-rate wage.  Dkt. # 194 at 14 (citing Dkt. # 71-1 at 4).  It does not, however, adequately respond to Federal Defendants' assertion that 20 C.F.R. § 655.120(c), which sets forth survey validation requirements, does not require DOL to make such an inquiry.  Dkt. # 192 at 13.  Familias reiterates that DOL has an "overarching duty" under 8 U.S.C. § 1188(a)(1)(B) to ensure that the employment of a foreign worker "will not adversely affect the wages and working conditions of workers in the United States similarly employed."  Dkt. # 194 at 12–13.  But Familias cites no authority other than *Torres Hernandez* to support its claim that this provision imposes a duty on DOL to thoroughly check for wage taint such that its failure to do so would be

arbitrary and capricious or contrary to law.  Nor does it explain how thoroughly DOL must check for wage taint to fulfill such a duty.

To be sure, requiring DOL to check for wage taint appears consistent with the goals indicated in 8 U.S.C. § 1188(a)(1)(B) and DOL's purpose as stated in the NPRM to "[e]stablish reliable and accurate prevailing wage rates for employers and workers."  84 Fed. Reg. at 36179. Mere consistency, however, is not enough.  To determine what DOL must consider or do to avoid "adverse[] [e]ffects" on the wages and working conditions of domestic workers or to establish "reliable and accurate prevailing wage rates," the Court must rely on the regulatory scheme and interpretive guides, not Familias's opinion as to what DOL should have done.  Thus, the Court cannot conclude that Familias is likely to succeed on this claim.

c.    Population-estimate method

Familias contends that DOL's publication of "no finding" results in the 2022-survey wages is arbitrary and capricious and contrary to law because ESD's surveys violate 20 C.F.R. § 655.120(c)(1)(v), which provides,

(1) The OFLC Administrator *will issue a prevailing wage* for a crop activity or agricultural activity and, if applicable, a distinct work task or tasks performed in that activity *if all of the following requirements are met*:

. . .

(v) The survey reports the average wage of U.S. workers in the crop activity or agricultural activity and distinct work task(s), if applicable, and geographic area using the unit of pay used to compensate the largest number of U.S. workers *whose wages are reported in the survey*;

(emphasis added).[20]  The requirement that the survey must report a wage based on workers "whose wages are reported in the survey" also appears in other subsections, like the 25% Rule. *See e.g.*, 20 C.F.R. § 655.120(c)(1)(ix).

The parties do not dispute that ESD uses a "population-estimate method" to extrapolate the number of workers based on the number of reported wages.  Familias asserts that the estimated number of workers is not always directly proportional to the number of reported workers.  For example, Familias says that in one instance,

> ESD took the single employer whose survey response reported 120 employees paid by the "not sure" sized bin and converted those 120 workers into 3,566.16 "estimated" workers, surpassing the 386 reported employees whose conversion to "estimated" workers only amounted to 3,159.47 workers, worthy only of second place.

Dkt. # 176 at 31–32 (citing Dkt. # 76-3 at 362).  Thus, ESD's use of the population estimate method can alter the prevailing wage.

Even if ESD's surveys violate § 655.120(c)(1)(v), it is unclear how this renders DOL's publication of "no finding" results in the 2022-survey wages arbitrary and capricious or contrary to law.  It appears that DOL followed the regulations: because ESD's surveys do not satisfy all the requirements of § 655.120(c), the OFLC Administrator issued a "no finding" instead of a prevailing wage.  Familias reiterates its contention that DOL has a broad duty to protect farmworkers' wages, and thereby suggests that DOL should have instructed ESD to conduct its survey in a manner that would yield a prevailing wage. Dkt. # 194 at 16.  But as discussed above as to Familias's contentions regarding the 25% Rule, wage-fracturing, and tainted survey data, a bare reference to 8 U.S.C. § 1188(a)(1)(B) is not enough for the Court to determine that DOL has

---

[20] Federal Defendants assert that Familias's population-estimate method claim is barred by the law of the case. Dkt. # 192 at 14–15.  The Court rejected this assertion in granting Familias leave to file a supplemental and third amended complaint.  Dkt. # 196 at 10–11.

a duty to take particular steps to set new prevailing wages. Familias cites *NAACP, W. Region v. Brennan*, 1974 WL 229, at \*1–3 (D.D.C. Aug. 13, 1974), to show that courts have previously ordered DOL to instruct state agencies to take specific actions. That this could be a proper remedy, however, does not aid Familias in showing a likelihood of success on the merits.

\* \* \*

Because Familias shows only some likelihood of success on the merits of its claim that "no finding" results in the 2022-survey wages cannot replace the 2020-survey wages, it does not offset its weak showing of irreparable harm under the sliding scale approach. Thus, the Court denies its motion for a third preliminary injunction.[21]

C.      Balance of Equities and Public Interest

The balance of the equities and public interest factors do not change the outcome because the parties' contentions as to these factors largely overlap with their assertions as to the irreparable harm and likelihood of success on the merits factors. In granting the first preliminary injunction, the Court held that the balance of the equities and the public interest tipped sharply in favor of a preliminary injunction because "[d]epression of local farmworker wages causes the exact harm that Congress sought to prevent in the H-2A program," and "the public interest is served by stability in farmworker wages." Dkt. # 40 at 20–21 (quoting *Torres-Hernandez v. Stewart*, 2021 WL 6274440, at \*11 (E.D. Wash. Mar. 1, 2021)). The Court also considered the fact that there is "a public interest in the lawful administration of government agencies." *Id.* at 21 (citing *League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016)).

Familias contends that "[t]he situation here is indistinguishable" as to these factors. Dkt. # 176 at 35. But as discussed above, Familias does not adequately explain how the extent to

---

[21] Because the Court denies Familias's motion, it does not reach Federal Defendants' contentions as to what the proper relief would be had Familias prevailed on its motion.

ORDER DENYING PLAINTIFF'S MOTION FOR
A THIRD PRELIMINARY INJUNCTION - 37

which the reduction in farmworkers' wages is self-inflicted changes the analysis.  If anything, the self-inflicted nature of the harm undermines the stability in farmworker wages.  And because Familias shows only some likelihood of success on the merits as to one claim, it does not make a strong showing that DOL undermines the public interest by acting unlawfully.

**IV**
**CONCLUSION**

For these reasons, the Court DENIES Familias's motion for a third preliminary injunction without prejudice.

In light of this ruling, the parties may, if they wish, revise their proposed deadlines in their joint status report, Dkt. # 200, by filing another joint status report by **August 27, 2025.**

Dated this 19th day of August, 2025.

John H. Chun
United States District Judge