**The Honorable John H. Chun**

1

2

3

4

5

6

UNITED STATES DISTRICT COURT

7

WESTERN DISTRICT OF WASHINGTON

8

FAMILIAS UNIDAS POR LA
JUSTICIA, AFL-CIO, a labor

9

organization;

# 2:24-cv-00637-JHC

10

Plaintiff,

PLAINTIFF'S SECOND MOTION
FOR PARTIAL SUMMARY

11

vs.

JUDGMENT

12

UNITED STATES DEPARTMENT

NOTE ON MOTION CALENDAR:

13

OF LABOR, and LORI CHAVEZ-

per Dkt. #225

DeREMER in her official capacity as

14

United States Secretary of Labor,

ORAL ARGUMENT REQUESTED

15

FILED UNDER SEAL

16

Defendants.

17

I.      INTRODUCTION

18

19

Familias seeks partial summary judgmentto vacate DOL's decision to

20

replace existing 2020 prevailing wage rates with 2022 "no findings" as contrary to

21

the plain language of DOL's regulations. Familias also seeks summary judgment

22

that DOL's actions in approving the 2022 wage findings are arbitrary and

23

capricious or contrary to law due to the use of tainted H-2A wage data, unlawful

PLAINTIFF'S SECOND MOTION FOR
PARTIAL SUMMARY JUDGMENT - 1

interpretation of the 25% Rule, wage fracturing, and rubber-stamping ESD's use of estimated worker populations where reported populations are required by regulation. These approvals by DOL have converted its new prevailing wage regulations, which were proposed as a shield for the wages of domestic farmworkers, into a weapon to eliminate prevailing wages from Washington's landscape. By approving the 2022-Survey results, DOL has abdicated its duty to prevent adverse effect on local wages and harmed the Washington farmworkers the H-2A statute requires it to protect.

## II.    FACTS

Familias has previously set forth a detailed chronology related to Washington's 2022 survey results, which DOL received from ESD in mid-2023 and related to which ESD made repeated follow-up requests for clarification. Dkt. #128 at 2-4.

Despite another precipitous drop in the number of prevailing wage findings in 2022, DOL only asked questions related to the geographic scope of ESD's surveys, and for a "step-by-step" explanation for how ESD determined the predominant unit of pay for two apple varieties—Fuji and Granny Smith. Dkt. #76-3 at 545-7.

Prior to submitting the results, ESD sought DOL's "official[] feedback" regarding interpretation of the new 2022 regulations. Dkt. #76-3 at 149. When ESD raised questions about its estimation methodology, *id.* at 175-76, DOL consulted

PLAINTIFF'S SECOND MOTION FOR
PARTIAL SUMMARY JUDGMENT - 2

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

with its "Solicitor's Office for legal guidance," then gave ESD advice that its use of estimated populations was acceptable under the regulations. *Id.* at 173. Later, ESD thanked DOL for its "clarification" which would allow ESD to "move forward implementing the new prevailing wage rate finding rules effectively." *Id.* at 172.

In the Third Supplemental Administrative Record, filed in September 2025, DOL has provided no further email communications. DOL provided a June 18, 2025 memo from Lindsey Baldwin, DOL's Director of the H-2A Prevailing Wage program, to Shane Barbour, the Director of the H-2A program. Dkt. #207-1 at 1-3. The memo lists the results from ESD; it provides no explanation as to why DOL approved them. *Id.* The balance of the supplemental AR provides information about DOL's assessment of whether the findings met the enumerated requirements of 20 C.F.R. §655.120(c). *Id.* at 4-6.

## III.    LEGAL STANDARDS

Under the APA, a court may "hold unlawful and set aside" agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). An agency action is arbitrary and capricious if the agency "... entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Advanced Integrative Med. Sci. Inst., PLLC v. United States Drug*

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

*Enf't Admin.,* 128 F.4th 1133, 1143 (9th Cir. 2025) (quoting *Motor Vehicle Mfrs.*

*Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). The

crux of this test is whether the agency has "engaged in reasoned decisionmaking."

*Judulang v. Holder*, 565 U.S. 42, 53 (2011). To satisfy the test, an agency must

"cogently explain why it has exercised its discretion in a given manner." *Motor*

*Vehicle Mfrs.*, 463 U.S. at 48. An agency action may be considered "arbitrary" or

"capricious" unless it is both "reasonable and reasonably explained." *Ohio v. Env't*

*Prot. Agency*, 603 U.S. 279, 292–93 (2024) (internal citation omitted). The agency

must articulate "a rational connection between the facts found and the choice made"

to meet the reasonableness standard. *League of California Cities v. Fed. Commc'ns*

*Comm'n*, 118 F.4th 995, 1013 (9th Cir. 2024). In other words, the agency must

always adequately explain "why it chose to do what it did" and has the burden under

the APA to provide that explanation. *United Airlines, Inc. v. Transportation Sec.*

*Admin.*, 20 F.4th 57, 64 (D.C. Cir. 2021).

Agency action is "not in accordance with law" if it violates a statutory or

regulatory requirement. In evaluating this type of challenge: "[A] reviewing court

must first determine if the regulation is consistent with the language of the statute."

*K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988) (internal quotations

omitted). Agencies may not adopt rules that "defeat the purpose" of the underlying

statute. *Batterton v. Francis*, 432 U.S. 416, 429 (1977). "Constructions that are

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

contrary to clear Congressional intent or frustrate the policy that Congress sought to implement must be rejected." *Earth Island Inst. v. Hogarth*, 494 F.3d 757, 765 (9th Cir. 2007) (citation omitted).

## IV.    ARGUMENT

### A.    DOL's approval of the 2022-Survey findings constitutes final agency action

DOL's act of approving the 2022-Survey findings is "final agency action" for the purposes of the APA. For an agency action to be final, "[f]irst, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature." *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 136 S. Ct. 1807, 1813 (2016) (cleaned up). "[S]econd, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Id.* (cleaned up). DOL's approval of the 2022-Survey results satisfies both requirements: First, the approval marks the consummation of a two-year review process, that began when ESD submitted the 2022 Survey results to DOL in July 2023 and which ended when DOL approved the findings and published the results as the rates that employers must pay in conformity with 20 C.F.R. §655.120(a). DOL's approval of the 2022 Survey findings is, therefore, final. Second, DOL's approval determines the rights and obligations of employers seeking H-2A workers as well as the rights of U.S. workers seeking jobs in Washington. Because DOL's approval of the 2022 Survey results constitutes final agency action,

PLAINTIFF'S SECOND MOTION FOR
PARTIAL SUMMARY JUDGMENT - 5

it is subject to APA review. *See Williams v. Walsh,* 648 F. Supp. 3d 70, 95 (D.D.C. 2022) (invalidating DOL's approval of state survey under the APA).

## B. Replacing 2020 Prevailing Wage Rates with 2022 "No Findings" Is Contrary to Law

Familias moves for summary judgment on its claim that, in the event the Court finds the One-Year Rule, 20 C.F.R. §655.120(c)(2), to be invalid and vacates that Rule, DOL's action in replacing valid 2020 prevailing wage rates with "no findings" from the approved 2022 survey is contrary to DOL's regulations and its statutory obligation to protect prevailing wage rates.

The One-Year Rule is the only provision in DOL regulations that addresses the expiration of a valid prevailing wage, and it states that a prevailing wage in a crop activity expires one year after it is posted. 20 C.F.R. §655.120(c)(2). The Court previously issued a preliminary injunction against the operation of this rule, Dkt. #40, and Familias has moved for summary judgment to make that injunction permanent. Dkt. #165 at 11-15. That motion awaits the Court's decision.[1] If the Court vacates the One-Year Rule, there will be no regulatory basis for removing a published prevailing wage finding such as the immediately previous 2020 prevailing wage rates, except through the finding of another valid prevailing wage, which a "no finding" is not. That is evident from an analysis of DOL's regulations.

---

[1]Dkt. Nos. 165, 185, 187, 191.

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

20 C.F.R. §655.120(a)(1) requires an H-2A employer to offer and pay the higher of the AEWR or the:

> prevailing wage rate, whether expressed as a piece rate or other unit of pay, if the OFLC Administrator has approved a prevailing wage survey for the applicable crop activity or agricultural activity and, if applicable, a distinct work task or tasks performed in that activity, meeting the requirements of paragraph (c) of this section.

Section 655.120(c)(1) sets the standards for a survey finding to be accepted and published as a prevailing wage. If a wage survey for a specific crop activity satisfies all the criteria, §655.120(c)(1) provides that "[t]he OFLC Administrator **will issue a prevailing wage for [that] crop activity**." (emphasis added). In other words, when a new survey reports a finding that satisfies §655.120(c)(1), and it is reviewed and approved by DOL, that survey result becomes the "prevailing wage" for the crop activity and, necessarily, replaces the existing prevailing wage, if there is one. If the Court vacates the One-Year Rule, there is no other mechanism for replacing an existing prevailing wage except with a new survey finding that satisfies all the provisions of §655.120(c)(1).

There is no dispute that a "no finding" does not constitute a "prevailing wage" that satisfies §655.120(c)(1) because DOL's regulations define a "prevailing wage" as:

> A wage rate established by the OFLC Administrator for a crop activity or agricultural activity . . . based on a survey conducted by a State **that meets the requirements in § 655.120(c).**

PLAINTIFF'S SECOND MOTION FOR
PARTIAL SUMMARY JUDGMENT - 7

20 C.F.R. § 655.103(b) (emphasis added). DOL concedes that a "no finding" is not a "prevailing wage" that meets the standards of §655.120(c)(1). Dkt. #201 at 16 (among other things, a "no finding" result fails to report the "average wage of U.S. workers in the crop activity" as required by §655.120(c)(1)(v)). Accordingly, if the One-Year rule is struck down, DOL's own regulations require that the 2020 prevailing wage rates remain in place because a "no finding" is not a "prevailing wage" and thus cannot be used to replace 2020 prevailing wages.

Despite conceding a "no finding" is not a prevailing wage rate, DOL has argued that it had a past practice (under the prior regulatory scheme) to treat annual Survey results as a package that replaced all existing prevailing wages, regardless of whether the new Survey package found an actual prevailing wage for a crop activity or only reported a "no finding" for a crop activity. Dkt. #192 at 5-6; Dkt. #193 ¶5. DOL insists that it can lawfully do the same thing now, replacing all the 2020 prevailing rates regardless of whether the 2022 Survey "package" found an actual prevailing wage or simply reported "no finding" or a crop activity. That argument should be rejected for at least three reasons.

First, the plain language of §655.103(b) (DOL's "prevailing wage" definition) and §655.102(c)(1) (directing the OFLC Administrator to "issue a prevailing wage" only if all the subsections' requirements are met) say nothing about treating Survey

PLAINTIFF'S SECOND MOTION FOR
PARTIAL SUMMARY JUDGMENT - 8

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

results as a "package." The regulations speak clearly and unambiguously in the singular, defining and referring to the publication of a "prevailing wage for a crop activity," not the publication of a package of results for multiple activities. 655.103(b); 655.120(c)(1). And the regulations, minus the One-Year Rule, only provide for the replacement of **a** prevailing wage for **a** crop activity when a new prevailing wage is published for that activity. 655.120(c)(1). That plain language precludes consideration of DOL's past-practice argument. Ninth Circuit precedent holds that where the regulatory language is clear and unambiguous, the inquiry ends with the plain meaning. *Safe Air For Everyone v. U.S. E.P.A.*, 488 F.3d 1088, 1097 (9th Cir. 2007); *League of California Cities v. Fed. Commc'ns Comm'n,* 118 F.4th 995, 1015–16 (9th Cir. 2024) ("where a regulation defines a term, [courts] must follow that definition"). Given the plain language of DOL's regulations consideration of interpretive materials, such as the agency's assertion of any past practice, is improper. *See id.*

Second, even apart from the plain language of the regulations, nothing in the NPRM for this rule alerted the public that DOL intended to incorporate a past practice of treating wage survey results as a package into its new regulations. *See generally* 84 Fed. Reg. 36168, 36188-89 (July 26, 2019). The NPRM preamble contains no mention of treating survey results as a package nor does it say anything

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

about replacing valid prevailing wages with "no finding" results.[2] The only mention

of past practice in the NPRM had to do with the One-Year Rule, which the preamble

attempted to justify by stating "[t]his proposal is consistent with OFLC's current

policy." *Id.* at 36188. But claiming that DOL had a past practice of expiring

published prevailing rates after one year—a practice that Plaintiffs have shown was

not a consistent practice[3]—says nothing about the effect of "no finding" survey

results much less treating survey results as packages. Where the NPRM did not give

the public even the remotest hint about DOL's alleged past practice regarding "no

findings," much less its intention to implement that practice despite it contravening

the words of the regulation, such a policy (if it existed) cannot be a basis for

overriding the plain words of the regulations.

Third, DOL's previous practice was not remotely clear or consistent enough

to override the plain meaning of DOL's "prevailing wage" definition and other

regulations. As demonstrated by the declaration of Michele Besso, who has regularly

reviewed DOL's prevailing wage website since 2007, DOL did not have a practice

---

[2] While the Court's inquiry should end with the plain meaning of DOL's regulations, when DOL
wrote an FAQ document after publication of the 2022 rules, it explained that if DOL determines
that a survey meets the regulatory requirements, DOL "will approve the prevailing wage finding(s)
and post the prevailing wage rate(s) on [DOL's website]." Dkt # 76-1 at 55. The FAQ continues,
saying that when a survey for an activity fails the regulatory requirements, DOL "*may* post a no
finding." *Id.* In other words, DOL itself believed wages may be posted one at a time or in groups,
with no requirement to post "packages" of such wages, and certainly no requirement to post "no
findings."
[3] *See* discussion of Besso Declaration, Dkt. #25 at 2, ¶8; Dkt. #25-1 at 2-7, *infra*.

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

of taking existing prevailing wages down after one year. Dkt. #25 at 2, ¶¶4-5, 8 (no recollection of DOL "removing prevailing wage findings from [its] website after 12 months when there were no updated wages findings to replace them at any time prior to 2023."). DOL was not eliminating prevailing wages "in packages," nor was it replacing prevailing wages with "no findings." Exhibit 1 to Ms. Besso's declaration—a posting on DOL's website containing prevailing wage rates from five previous surveys—demonstrates this point. Dkt. #25-1 at 2-7. Immediately after setting forth all prevailing wage findings from 2008-2012, DOL wrote: "The above rate(s) for Washington must be applied in evaluating job orders submitted for activities scheduled for 2012-2013." *Id.* at 7.  DOL certified six harvest prevailing wages in 2008, then added four new certified prevailing rates in 2009, and six more again in 2010. *Id*. at 6-7. Thus, by 2010 DOL had posted 16 prevailing harvest wage rates and none of the prevailing wages posted from previous seasons were eliminated. Moreover, in 2012, wage rates were posted at different times throughout the year, not as single package. *Id.* at 2-6 (separate wage postings in February and April). DOL's previous practice was, at best, unclear and inconsistent.

In light of the plain language in the regulations, which defines a prevailing wage as one that clears all regulatory hurdles, this Court should grant summary judgment to Familias and declare that that replacing 2020 prevailing wage rates with 2022 "no findings" is contrary to law.

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

**C.     Washington's 2022-Survey no-findings are tainted by wages unlawfully approved by DOL in violation of 20 C.F.R. § 655.120(a)**

DOL's final approval of the 2022 wage survey results is arbitrary and capricious and contrary to law because those results ████████████████████ ██████. Throughout 2022, all H-2A contracts covering apple or cherry harvests were covered by prevailing *piece rates* derived from the 2020 wage survey: $28.26 per bin for general apple and 21 cents per pound for general cherry. Dkt. # 24-1 at 2-3. An examination of the Form ETA 232s that DOL had in its possession when it reviewed and approved the 2022 survey results shows that a significant number of individual agricultural employers responded that during the 2022 harvest, they paid their workers the AEWR, the H-2A hourly minimum wage, not the posted 2020 prevailing piece rates H-2A growers were legally bound to pay for "general apple harvest" and "general cherry harvest." Dkt. #76-3 at 333-37; Dkt #76-3 at 416-18.

Data from ESD, which was readily available to DOL if it had simply asked, shows that ████████████████████████████████████████████

██████████████████████████████████████████████████████

---

[4] Dkt. #209-1 ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Familias assumes this Court means to admit *Dkt. #209-1* as extra-record evidence. *See* Dkt. #231 at 8 (erroneously referring to the "raw data contained in Dkt. #208-1").

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

[REDACTED][5] *Torres Hernandez v. Su*, No. 23-35582, 2024 WL 2559562, at *2 (9th Cir. May 24, 2024) ("vacatur of improperly approved AEWR-only job orders from the 2023 harvest season and exclusion of wages paid under those orders from future prevailing wage surveys"). Though the Ninth Circuit's *injunction* in *Torres Hernandez* focused on the 2023 wage survey, the legal conclusion underlying that injunction—that DOL cannot legally include unlawful submarket wages in its wage surveys—is binding on DOL and put the agency on notice that approving a wage survey based on unlawful survey responses violates the APA. *See id.*

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]. As Judge Mendoza noted in *Torres Hernandez,* "[f]lawed input produces flawed output." *Torres*

---

[5] [REDACTED] an alarming fact that DOL would have learned if it had made the effort to look. Dkt. #209-1 [REDACTED]

[6] Familias also alerted DOL to the possibility that inclusion of H-2A data likely led to hourly-rather than piece-rate-prevailing wage findings for other crop variety activities. *E.g.*, Dkt. #1 at 20 ¶¶ 110-12 (Gala apple harvest).

PLAINTIFF'S SECOND MOTION FOR
PARTIAL SUMMARY JUDGMENT - 13

*Hernandez v. Stewart*, No. 1:20-CV-03241-SMJ, 2021 WL 6274440, at*1, *7–8 (E.D. Wash. Mar. 1, 2021) (finding likelihood of arbitrary and capricious action and granting preliminary injunction against prevailing wages garnered from flawed dataset). Prior to DOL's approval of the currently published 2022-survey results, there were published prevailing wages for "general cherry harvest" and "general apple harvest," Dkt. #71-2 at 62, meaning that every worker harvesting any variety of those fruits was covered by a mandatory piece-rate prevailing wage. If the flawed data here caused the 2022 survey to produce "no findings" in general cherry or general apple harvest, the result was significant depression of harvest wages for tens of thousands of Washington farmworkers. *See* Dkt. #71-2 at 15-16 (ESD estimates of worker populations).

As part of its review process, DOL had in its possession ESD's Forms ETA 232, which reflected many instances of employers reporting hourly wages equal to the AEWR in these activities for which a piece-rate prevailing wage was required at the time of the survey. Dkt. #76-3 at 333-37 (Attachment to Form ETA 232 for "apples_harvesting") (20% (eight out of 40) of hourly-wage respondents reported paying exactly the 2022 AEWR, $17.41, including the second-largest grower employing a reported 450 workers); Dkt #76-3 at 416-18 (Attachment to Form ETA 232 for "cherries_harvesting") (15% (three out of 20) of hourly-wage respondents paid exactly the AEWR, $17.41).

PLAINTIFF'S SECOND MOTION FOR
PARTIAL SUMMARY JUDGMENT - 14

At the time DOL approved ESD's 2022 Survey results in mid-2025, DOL had been aware of the Ninth Circuit's May 2024 holding in *Torres Hernandez* for over a year. DOL was also aware that the 2022-Survey results were produced pursuant to DOL's same regulation-violating AEWR-only policy that had caused the 2023 results to be deemed unlawful. Apart from the Ninth Circuit's ruling, Familias's complaint in this case also alerted DOL to the likelihood that the 2022 Survey results were tainted by survey responses reporting unlawful wage rates. Dkt #1 at 19-20. Thus, DOL was clearly on notice that unlawful AEWR-only rates needed to be excluded from the Survey results.

In previous briefing, DOL posited that these wages could have been paid by non-H-2A growers,[7] Dkt. #192 at 12, but all it had to do to investigate this theory was to ask ESD for the raw data, ███████████████████████████████ ████████████████. Dkt. #209-1 at columns AL – AT. Familias requested that data from ESD in its motion for limited discovery, Dkt. #69, which this Court granted over DOL's objection. Dkt. #88 at 5-6 (reconsideration denied, Dkt. #114). If DOL had inquired about this data, it would have discovered quickly that approval of the results was unlawful. Yet there is no evidence in the administrative record to suggest

---

[7] ████████████████████████████████████████████
████████████████████████████████████████████████
███████████████████████

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

that DOL took steps to investigate whether unlawful AEWR-only wages reported by H-2A growers impacted the survey results.

DOL acted arbitrarily and capriciously in approving the 2022 findings when it irrationally and unreasonably failed to consider this important, and entirely discoverable, aspect of the problem████████████████████████████████████

████████████████████. *See Appalachian Power Co. v. EPA*, 249 F.3d at 1053-54 (EPA arbitrary and capricious when it published facially erroneous growth projections); *see also Stewart v. Azar*, 313 F.Supp.3d 237, 262-64 (D.D.C. 2018) (CMS Secretary's approval of Kentucky's HEALTH pilot program failed to consider an important aspect of the problem when made aware of the 95,000 residents who would lose Medicaid coverage and failed to seek additional data or offer contrary evidence about this anticipated result); *Torres Hernandez v. Stewart*, 2021 WL 6274440, at *7 (internal citations omitted) ("an agency's wholly unexplained acceptance of another entity's conclusions, with no apparent effort to ensure the reliability of those conclusions or the evaluative process that produced them, ... is arbitrary and capricious.")

In light of the above, DOL's certification of 2022 "no-findings" is also contrary to law. The chief mandate of 8 U.S.C. §1188 is to safeguard local workers' wages from depression from the use of imported workers. *Mendoza v. Perez*, 754 F.3d 1002, 1017 (D.C. Cir. 2014); *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex*

PLAINTIFF'S SECOND MOTION FOR
PARTIAL SUMMARY JUDGMENT - 16

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

*rel., Barez*, 458 U.S. 592, 592 (1982). A court "must not 'rubber-stamp'. . . administrative decisions that [it] deem[s] inconsistent with statutory mandate," *Y-Z-L-H v. Bostock*, No. 3:25-CV-965-SI, 2025 WL 1898025, at *11 (D. Or. July 9, 2025) (citing *Ocean Advocs. v. U.S. Army Corps of Eng'rs*, 402 F.3d 846, 859 (9th Cir. 2005)). DOL failed to assure that local wages were not adversely affected when ██████████████████████████████████████████ ████████████████████which included a high number of "no-findings." DOL's failure to correct this problem and safeguard against adverse effect is contrary to law. *See Y-Z-L-H*, 2025 WL 1898025 at *11.

**D.    Many 2022 "no-findings" approved by DOL were caused by application of an arbitrary and unlawful interpretation of the 25% Rule**

DOL's approval of the 2022-survey "no-findings" was arbitrary and contrary to law because those findings resulted from the unlawful application of the 25% Rule, 20 C.F.R. § 655.120(c)(1)(ix).

Based on the Court's most recent order, Familias believes the Court misunderstood Familias's 25%-Rule position. The Court stated that the parties "appear to agree" that this rule requires state agencies to throw out all survey data if a single employer represents more than 25% of the wages in the relevant unit of pay, and that Familias argues that DOL "has a duty to issue a prevailing wage even when

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

a survey violates the 25% Rule." Dkt. #201 at 22. Familias does not agree with those statements.

Instead, Familias's 25%-Rule argument is that the language of 655.120(c)(1)(ix) is ambiguous, as it is susceptible to multiple interpretations, two of which are reasonable interpretations, as outlined below. On the other hand, the interpretation adopted by DOL *after* the Rule was published,[8] and applied by ESD in producing the 2022-Survey results, is *not a reasonable interpretation*, and DOL's approval of Survey results using that interpretation is, therefore, arbitrary and capricious.

The 25% Rule as adopted by DOL states, in relevant part:

> Where the estimated universe of **employers** is at least 4, the wages paid by a single **employer** represent no more than 25 percent *of the sampled wages* in the unit of pay used to compensate the largest number of U.S. workers whose *wages are reported in the survey*.

20 C.F.R. §655.120(c)(1)(ix) (emphasis added). In the NPRM, DOL explained that the purpose of this Rule was to ensure that "dominant employers" did not have "undue influence" on a survey result. 84 Fed. Reg. 36168, 36187 (July 26, 2019). The NPRM also explained that the overarching purpose of the amendments to its

---

[8] DOL gave no hint of its unreasonable interpretation in the NPRM. DOL finally revealed its interpretation in a non-public communication with ESD over five months after the final Rule was published. *Compare* 87 Fed. Reg. 61660 (Oct. 12, 2022) (publication date of final rules) *with* Dkt. #76-3 at 170-71 (March 23, 2023 email to ESD). If the 25% Rule were unambiguous, DOL would not have needed to provide guidance to ESD on how to interpret and implement the regulation.

PLAINTIFF'S SECOND MOTION FOR
PARTIAL SUMMARY JUDGMENT - 18

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

prevailing wage methodology was to "produc[e] surveys [] which [] can be most useful for protecting the wages of U.S. workers, and [] to encourage **a greater number of reliable prevailing wage survey results**." *Id.* at 36185 (July 26, 2019) (emphasis added).[9] DOL emphasized the goal of producing a greater number of prevailing wage results was the "most significant[]" reason for new methodology because the previous "standards often result[ed] in 'no finding' from a prevailing wage survey [which is] both a waste of government resources **and fail[s] to meet the goal of producing reliable and accurate prevailing wage rates**." *id.* at 36187.[10] DOL's primary goal is undeniable—generating more prevailing wage results—and "no findings" are the antithesis of that goal.

With these purposes in mind, the language of the 25% Rule could be interpreted in two reasonable ways to ensure the purpose of the rule—and the Congressional mandate to protect the wages of domestic farmworkers—are met. First, the Rule could be read to require that the number of workers reported by the

---

[9] While the department used phrases like "reliable and accurate" in describing the wage findings it sought to achieve, it is clear from the NPRM that the *reason for the rule change was that too few prevailing wages were being found*. 84 Fed. Reg. 36168, 36179 and 36186-87. Indeed, it was the old, resource-intensive handbook standards repeatedly resulting "no findings" that "fail[ed] to meet the aim of producing reliable prevailing wage rates." *Id.* at 36185. At no point in the NPRM did DOL say, or even intimate, that there was a problem with *unreliable or inaccurate* prevailing-wage-rate *findings* under the existing system. *Id.* at 36179, 85-87.

[10] DOL produced an FAQ after the new rules were finalized which states the rules were established to "be more effective in producing prevailing wage rates" and to "**produce prevailing wage findings with greater frequency**." Dkt. #76-1 at 57 (emphasis added).

PLAINTIFF'S SECOND MOTION FOR
PARTIAL SUMMARY JUDGMENT - 19

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

largest employer be capped at 25% when calculating the prevailing wage. Second, the Rule could be read to require the removal of the single, non-compliant survey response from a "dominant" employer, with the prevailing wage calculated from the remaining valid survey responses for the crop activity.

Either of those rational interpretations ensures that no single employer represents more than 25% of the workers and prevents "undue influence" from a "dominant" employer. Moreover, both interpretations advance DOL's stated goal of ensuring that more prevailing wages are found and that wasteful "no findings" results would be minimized. The first interpretation (capping data) advances that goal more than the second because it maximizes the data available to calculate a prevailing wage. But even the second interpretation allows for a prevailing wage finding if there are sufficient survey responses (apart from the dominant employer's response) to make a prevailing wage finding.

Both interpretations are also consistent with the precise language of the Rule, which distinguishes between "25% of the *sampled wages*" and "*wages reported* on the survey." *See Bare v. Barr*, 975 F.3d 952, 968 (9th Cir. 2020) (citations omitted) (well-established canon of construction that use of different words in the same law shows intent to give them different meanings). If an employer's survey response shows that it paid more than 25% of the "wages reported on the survey," but the employer's number of workers is capped at 25% or the employer's response is

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

eliminated altogether, the prevailing wage can then be calculated from the rest of the survey wage data (i.e. "the sampled wages"). In that case, the 25% Rule *is not violated.*

In evaluating the Washington survey results, DOL used a different interpretation of §655.120(c)(1)(ix): that if one survey response for a crop activity comes from a "dominant" employer (one employing more than 25% of the workers paid by the majority method of pay) then all other valid survey responses for that crop activity must be thrown out and a "no finding" result reported. While that interpretation may ensure that a solitary dominant employer does not overly influence the survey result, it does so by violating two core agency principles—one statutory, and the other repeatedly set forth in the NPRM. First, in Washington State, this interpretation violates DOL's duty to protect the wages of domestic farmworkers by replacing higher-paying piece-rate wages with the much lower minimum hourly AEWR. Second, it guarantees fewer prevailing wages will be determined, which cannot be squared with DOL's repeated statements in the NPRM that the goal of the new regulatory scheme was to *increase* the number of prevailing wage results. DOL's interpretation makes a "no finding" result mandatory even if, apart from the "dominant" employers' survey response, there is enough other data to make a finding. In other words, DOL's interpretation attempts to avoid "undue influence" by mandating that no prevailing wage be found at all, leading to the automatic

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

reversion to the AEWR, a wage rate that is a windfall for Washington growers and causes Washington harvest workers to lose 20-50% of their income. Dkt. #71-2 at 91-146 (worker declarations).[11] Multiple courts, including this Court, have found that replacement of piece-rate wages with hourly wages causes irreparable harm to Washington farmworkers. Dkt. #40 at 17-20; *Torres*, 2021 WL 6274440, at *10-11.

DOL's interpretation fails to make sense of the distinction between the phrases "sampled wages" and "wages reported on the survey," and it runs directly counter to the purposes of the regulation—to ensure more prevailing wages will be found. The 25% Rule cannot be reasonably interpreted to demand such irrational and counter-productive results and, for that reason, the interpretation DOL used in Washington must be seen as wholly unreasonable.

The application of DOL's interpretation of the rule to the 2022 Washington survey actually resulted in "no findings" in several cases in which the employer whose response caused the 25%-Rule violation was not having an undue influence. In general cherry harvest, without the largest employer's data, the rate per pound would have decreased by $0.02, and the same is true in, for example, dark-sweet cherry harvest. Pashkowski Decl. at ¶¶15-16. In general apple harvest, the removal of the largest employer's data results in a change of *$0.03 per bin*; in Cripps Pink

---

[11] *See* n.12, *infra*.

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

apples, the change in the bin rate is $0.39. *Id.* at ¶¶12-13. This amounts to a difference in daily earnings ranging from $0.18 to less than $16. *Id.* In contrast, when these datasets are thrown out, and the required wage defaults to the AEWR, workers stand to lose approximately $20 to $57 in daily wages compared to what they would make working by the piece. *Id.* at ¶¶12-13, 15-16.

All told, the 25% Rule eliminated piece-rate prevailing wages for a huge portion of Washington's harvest activities, including general apple harvest and nearly every common kind of apple (Red Delicious, Honeycrisp, Granny Smith, Golden Delicious, Gala, Fuji, Cripps Pink, and Cosmic Crisp), and general cherry, along with three other major varieties or variety groups (Sweetheart cherry, yellow cherries, dark-sweet cherries). Dkt. #76-3 at 130.

DOL's application of the rule in this manner in Washington is particularly irrational given the factual realities of the state's fruit-harvest farmworkers, who are overwhelmingly paid by the piece, and who regularly make significantly more than the AEWR at these piece rates, meaning that for every "no finding" made, local workers' wages are harmed. When considering whether to accept the 2022-Survey findings, DOL possessed a significant body of information about the reality that fruit-harvest workers predominantly earn money by the piece in Washington. Dkt. #78-1 at 40 (2021 Worker Survey results showing overwhelming piece-rate pay in all surveyed apple and cherry harvests); Dkt. #76-3 at 121 (same, as to 2022 Worker

PLAINTIFF'S SECOND MOTION FOR
PARTIAL SUMMARY JUDGMENT - 23

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

Survey results); Dkt. #71-2 at 81 et seq. (2019 Worker Survey results showing 86.3% piece rate pay in cherry and apple harvests combined). Moreover, DOL had before it information from workers, economists, media, and from the industry itself confirming that Washington fruit harvesters get paid by the piece and make above-AEWR wages doing so. Dkt. #71-2 at 18-19 (Letter to DOL re: 2022 survey, summarizing these examples); 91-146 (worker declarations); 147-152 (report from Dr. Zachariah Rutledge, concluding that "at least 70% of harvest workers [in the NW region] who were working for piece rates during fiscal years 2011 through 2020 generated hourly earnings that were higher than the AEWR."); 157-162 (report from Dr. Philip Martin, explaining that piece-rates are always set to allow workers to earn more than hourly minimum wages, and concluding "[i]f DOL certifies job offers that promise only the AEWR rather than the piece rate traditionally offered workers who pick tree fruit, average hourly earnings are likely to fall. . ."); 195-219 (highlighted amicus brief by Washington industry groups explaining that piece-rates are the predominant method of pay in fruit harvest, and harvest workers make more than the AEWR by the piece); 220-221 (newsletter by WAFLA, claiming that WAFLA's work to remove "all piece rates for apples for growers that utilize the H-2A program" "saved the apple industry millions."); 222-232 (newspaper articles reporting on average picking speed – (apples – a bin an hour, at 223; apple pickers make as much as $35 an hour, at 230)); 233-235 (2018 ESD letter to DOL saying that "no findings"

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

cause "a large decrease in the required wage for workers in Washington apple harvest").

DOL's unlawful interpretation of the 25% Rule used to make the 2022 findings demonstrably leads to wages being offered and paid to thousands of Washington workers that will adversely affect local wages and working conditions, contrary to 8 U.S.C. § 1188. As noted above, the primary purpose of §1188 is to safeguard local workers' wages from depression from the use of imported workers. *Mendoza*, 754 F.3d 1002, 1017; *Alfred L. Snapp*, 458 U.S. 592, 596 (1982). Agencies may not adopt rules that defeat the purpose of the underlying statute, *Batterton*, 432 U.S. 416, 428 (1977), and it may not adopt "[c]onstructions are contrary to clear congressional intent" or "frustrate the policy" behind a statute, *Earth Island Inst.*, 494 F.3d at 765 (citation omitted).

DOL's interpretation of the rule in a way that eliminates prevailing wage findings and drives down wages is also simply irrational, especially because other interpretations consistent with the rule language and the purpose of the rules readily exist. *See Kisor v. Wilki*e, 588 U.S. 558, 559 (2019) (no *Auer* deference to an agency's reading of a rule which does not reflect its "fair and considered judgment" and creates and "unfair surprise" to the regulated parties). The Administrative Record indicates that DOL failed to reckon with these important issues at all when approving the 2022-Survey results. Therefore, this Court must hold that the results

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

derived from DOL's interpretation of the rule violate the APA as both arbitrary and contrary to law.[12]

### E.    The 2022-Survey findings unlawfully and arbitrarily rely on ESD's practice of fracturing piece-rate methods of pay

DOL's approval of the 2022 Survey results was unlawful because those results were calculated using a methodology that irrationally treated piece rates, piece rates with hourly guarantees, and piece rates with bonuses, as well as piece rates with other inconsequential differences, as separate and distinct methods of payment. This "fracturing" methodology irrationally produced findings of prevailing *hourly* wage rates when piece-rate pay actually predominated. For example, in the 2022-Survey responses for Ambrosia apple harvest, agricultural employers reported that they paid 241 workers by the piece and only 122 workers by the hour. Dkt. #76-3 at 277. But because piece-rate pay of those 241 farmworkers was fractured into three sub-categories (by the bin of standard size, by the bin of standard size with an hourly

---

[12] DOL has erroneously argued that the Department's legal duty to protect the wages of domestic farmworkers "is satisfied by the AEWR." *E.g.*, Dkt. #192 at 10. But as this Court said, DOL itself "recogniz[es] the importance of prevailing wages for protecting domestic farmworkers," and DOL's goal was to "mak[e] prevailing wage rate findings available where the prevailing wage rate would be higher than the AEWR" and that goal "aligns with DOL's statutory mandate." Dkt. #40 at 15; *see also* 75 Fed. Reg. 6884, 6893 (Feb. 12, 2010) ("workers would be disadvantaged by the use of the AEWR"); 88 Fed. Reg. 12760, 12775 (Feb. 28, 2023) (prevailing wages "serve as an important protection for workers in crop and agricultural activities that offer *piece rate pay* or higher hourly rates of pay than the AEWR."). DOL's argument is at direct odds with the Ninth Circuit's holding in *Torres Hernandez* that when a prevailing piece-rate wage exists, H-2A employers are required to offer it *instead of the AEWR* because a prevailing piece-rate wage "is always the highest" wage. 2024 WL 2559562, at *1 (cited in this Court's order at Dkt. #145 at 4).

PLAINTIFF'S SECOND MOTION FOR
PARTIAL SUMMARY JUDGMENT - 26

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

guarantee, and by the bin of "not sure" size with an hourly guarantee), hourly pay was determined to be the prevailing method of pay. *Id*. Similarly in Cosmic Crisp apple harvest, agricultural employers reported that 528 workers were paid by the piece and only 433 by the hour, but the same three-way split of piece-rate wages caused an hourly wage to "prevail." *Id*. at 284. A prevailing piece rate for Gala apple harvest was eliminated by a five-way fracturing of the piece-rate responses, again causing hourly pay to "prevail." *Id*. at 310.

That irrational methodology also resulted in otherwise avoidable "no-findings" because the smaller the sub-category of piece-rate wages that is deemed to be a majority unit of pay, the more likely it is to be eliminated by the 25% Rule or the similar 5-Employer Rule. In Red Delicious, Granny Smith, and Fuji apple harvest, the fracturing of piece-rates led to the determination, that DOL has now approved, that the "prevailing" method of pay was a category comprising exclusively the response from a single grower who claimed it *did not know the size of its own apple bins*, resulting in an automatic 25%-Rule violation and a "no finding" for each of these major apple varieties.[13] *Id*. at 362-63 (Red Delicious); 322-23 (Granny Smith); 304-05 (Fuji). DOL requested a "step-by-step" explanation for ESD's Granny Smith and Fuji findings—not Red Delicious—and ESD's May 24,

---

[13] DOL's methodology required a "no finding" because with a prevailing method of pay containing just one grower, the 25% Rule was automatically violated.

PLAINTIFF'S SECOND MOTION FOR
PARTIAL SUMMARY JUDGMENT - 27

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

2024 response related to Fuji harvest stated that although its survey "required dimensions" from agricultural employers to determine the majority pay unit, the agency "could not combine[] . . . a piece rate wage of an unspecified dimension" (*e.g.* a bin of "unknown" size) with "a piece rate wage with a standard bin dimension." Dkt. #76-3 at 542. No similar response was provided for ESD's Granny Smith explanation. *Id.* at 543-44. DOL apparently accepted ESD's explanation without any further follow-up. *See id.* at 534-39 (DOL had more questions about the geographic scope of ESD's survey, prompting a telephone call, but nothing further about ESD's acceptance of the employer's incomplete answer). There was no discussion of whether ESD should have disregarded this answer or simply asked the employer to complete the answer by measuring its own bins. *See id.*

ESD's (and in turn DOL's) acceptance of a facially incomplete survey response, combined with the elevation of such a response to a "majority" method of pay that requires all other valid survey responses to be thrown out under the 25% Rule, is absurd. To do that for three major apple varieties, harvested by thousands of Washington farmworkers, is the same sort of action that Judge Mendoza refused to countenance in 2021, when he rebuked DOL for blindly accepting ESD's indefensible data.

Flawed input produces flawed output. Defendants **unquestioningly use methodologically unsound employer survey data to set prevailing wage rates for agricultural workers in Washington**

PLAINTIFF'S SECOND MOTION FOR
PARTIAL SUMMARY JUDGMENT - 28

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

**State**. With no proper safeguards in place, **they have abdicated their duty to protect the wages of domestic workers. Defendants cannot cloak the injustices created by the survey with the U.S. government seal of approval, turn away, and say "nothing to see here."** This court will not allow that.

*Torres Hernandez*, 2021 WL 6274440, at *1 (emphasis added). Survey results that rely upon "I don't know the size of my bins" answers, which constitute a lack of response, are similarly flawed and cannot, under any circumstance, be considered accurate or reliable data. It was facially arbitrary for DOL to have allowed these incomplete and therefore noncompliant responses to eliminate piece rates for three major crops and result in DOL throwing out hundreds of valid wage survey results.

In addition to encouraging manipulation of the results,[14] the fracturing methodology is irrational because there is no meaningful difference between the different kinds of piece rates. Simply adding an hourly guarantee to a piece rate is the same as offering a piece rate because piece-rate workers are always guaranteed a minimum hourly rate by law. Because piece-rate payment systems are always better for workers than an "equivalent" hourly rate, adding an hourly guarantee to a piece rate does not change the opportunity that a piece rate affords workers. *Torres Hernandez*, 2024 WL 2559562, at *1. Whether the hourly guarantee is the AEWR

---

[14] Use of this methodology also makes the survey results highly vulnerable to manipulation, as employers can ensure "no-findings" by withholding bin sizes or adding meaningless hourly guarantees, bonuses, or "I don't know" responses.

PLAINTIFF'S SECOND MOTION FOR
PARTIAL SUMMARY JUDGMENT - 29

minimum rate or is higher than the AEWR, workers will still have the "opportunity to earn more" than either wage at the piece rate. That opportunity is what the Ninth Circuit said had to be protected in *Torres Hernandez*. Ignoring that fact and subdividing piece rates such that hourly rates become "prevailing" wages or "no findings" occur, resulting in a default to the hourly AEWR, deprives workers of the opportunity to earn more by the piece, as supported in the example of Ambrosia apple pickers above.

Similarly, adding bonuses to a piece rate wage does not change the essential fact that it is a piece-rate wage offer that allows workers the opportunity to earn more through skill and efficiency. Bonuses by definition are paid for doing something above and beyond the basic task of picking, which is the work activity that the prevailing wage is intended to protect. *See Frederick County Fruit Growers Assn. v. Dole*, 758 F.Supp. 17, 25-27 (D.D.C. 1991) (bonuses paid by H-2A growers could not be counted toward compliance with the required minimum piece rate for harvest work because they represented payments for "extra work").

DOL had all the information it needed to recognize the irrationality of ESD's methodology, and indeed, to determine the appropriate prevailing wage itself. The data in the Forms ETA 232 provided by ESD showed that ESD had arbitrarily fractured piece rate wages into superficial categories, and DOL could see plainly how many workers were paid by the piece, a number which was often

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

significantly higher than the number of workers paid by the hour. *See e.g.*, Dkt. # 76-3 at 309-310. If the survey data, as reported on the form ETA 232, supports a finding of a specific prevailing wage that meets the nine factors defined at §655.12(c), the regulation requires the OFLC administrator to publish that prevailing wage. DOL must do so whether or not the state agency believed a "no finding" was warranted because of its own flawed methodology. The Administrative Record provides no explanation for DOL's failure to recognize and rectify these problems.

DOL's approval of the 2022-Survey results, which were rife with wage fracturing, was arbitrary and contrary to its regulatory and statutory obligation to protect prevailing piece rates when they are the majority method of pay.

> **F.    The 2022-Survey findings rely on ESD's calculation of the majority method of pay for activities based on an estimated population, in violation of 20 C.F.R. § 655.120(c)(1)(v).**

Familias is also entitled to summary judgment on its claim that DOL's publication of no-findings for specific crop activities in the 2022 Survey, which relied on ESD's use of a population estimate methodology contrary to 20 C.F.R. § 655.120(c)(1)(v), was arbitrary, capricious, and contrary to law.

As Familias argued in in its Motion for Temporary Restraining Order, the plain language of 20 C.F.R. §655.120(c)(1)(v) requires ESD to report "the unit of pay used to compensate the largest number of U.S. workers whose wages are

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

*reported* in the survey." (emphasis added.)[15] ESD engaged in a complex statistical analysis to estimate the entire U.S. worker population employed within a unit of pay by the entire estimated employer population. ESD did this ostensibly to comply with §655.120(c)(1)(vii) and (viii), which directs a SWA to confirm a minimum estimated universe of U.S. workers and employers.

ESD then used those same estimates to determine the method of pay used for the largest number of U.S. workers, but the plain language of §655.120(c)(1)(v) allows DOL to issue a prevailing wage *only* based on the majority method of pay to actual U.S. workers *reported in the survey* – not the estimated number of workers ESD believes are represented by the survey responses.

Familias has already shown how ESD's manipulated data resulted in a "no-finding" for three major apple varieties under DOL's 25% Rule when a prevailing piece rate could have been determined for Red Delicious, Fuji, and Granny Smith apples. Dkt. #176 at 31-32. Again, regardless of ESD's conclusions offered to DOL with its 2022 survey data, DOL is required to issue prevailing wages when a survey meets the nine factors under 20 C.F.R. §655.120(c).

The ETA 232 forms provided for the 2022 Wage Survey contain separate columns for ESD's estimated populations and the actual number of workers and

---

[15] Emphasized because the regulations repeatedly use this phrase. See 20 C.F.R. 655.120(c) subsections (c)(vii), (viii), (ix).

PLAINTIFF'S SECOND MOTION FOR
PARTIAL SUMMARY JUDGMENT - 32

employers provided in responses. Dkt. #76-3 at 276-494. The OFLC Administrator had the "reported worker" data necessary to make a prevailing wage finding for several apple varieties. Dkt. #76-3 at 304; 322; 362. Instead, DOL adopted ESD's unlawful methodology by permitting ESD to calculate the prevailing wage (or "no finding") based on that manipulated data, *see* Dkt. #76-3 at 154-56, in direct violation of the plain language of §655.120(c)(1)(v). DOL not only knew this violation had occurred because it was apparent in the ETA 232 data, but also because in March 2023, ESD had explicitly asked for permission to use this unlawful methodology, and DOL had given that permission. Dkt. #76-3 at 175-76, 173. DOL's actions are contrary to the plain language of §655.120(c)(1)(v) and thus contrary to law.

## V.    RELIEF

For the reasons set forth above, the Court should grant the following relief:

  i.    declare that that DOL's use of the 2022 Survey "no finding" results to replace valid 2020 prevailing wages was arbitrary, capricious, and contrary to law;

  ii.    vacate the publication of 2022-Survey "no findings" for activities for which there was a 2020-Survey prevailing wage published, and order the applicable 2020-survey wages to be reinstated;

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

iii.   declare the following actions to be arbitrary, capricious, and contrary to law:

            ██ DOL's approval of 2022 Survey results, including "no findings" for general apple and general cherry, which were derived from data tainted by survey responses reporting ███████████ ████████████████;

b.   DOL's approval of 2022 Survey results that were based on DOL's unreasonable and arbitrary interpretation of the 25% Rule;

c.   DOL's approval of 2022 Survey results that were computed by treating piece rates, piece rates with hourly guarantees, piece rates with bonuses, and piece rates with bins of "unsure" size as distinct methods of pay instead of treating them as a whole when evaluating whether piece-rate or hourly wages prevailed;

d.   DOL's approval of 2022 Survey results that used estimated worker populations to calculate the majority method of pay in violation of 20 C.F.R. §655.120(c)(v);

iv.   vacate DOL's approval of the 2022-Survey findings and remand to DOL with instructions to recalculate the 2022 Survey results in a

PLAINTIFF'S SECOND MOTION FOR
PARTIAL SUMMARY JUDGMENT - 34

manner that is consistent with the Court's rulings and that is not arbitrary, capricious, or contrary to law;

v. order DOL to revert to the 2020-survey findings until such time as lawful prevailing wage rates are approved to replace them.

## VI.    CONCLUSION

For the foregoing reasons, this Court should enter partial summary judgment and grant the relief requested by Familias.

RESPECTFULLY SUBMITTED this 20th day of February 2026.

We certify that this memorandum contains 8,400 words, in compliance with the Local Civil Rules.

COLUMBIA LEGAL SERVICES

s/ *Andrea Schmitt*
Andrea Schmitt, WSBA #39759

s/ *Joachim Morrison*
Joachim Morrison, WSBA #23094

s/ *Bonnie Linville*
Bonnie Linville, WSBA #49361
711 Capitol Way S., Ste. 706
Olympia, WA 98501
(360) 943-6260
andrea.schmitt@columbialegal.org;
joe.morrison@columbialegal.org;
bonnie.linville@columbialegal.org

FARMWORKER JUSTICE

BARNARD IGLITZIN & LAVITT LLP

s/ *Kathleen Phair Barnard*
Kathleen Phair Barnard, WSBA #17896
18 West Mercer Street, Ste. 400
Seattle, WA 98119-3971
(206) 285-2828
barnard@workerlaw.com

PLAINTIFF'S SECOND MOTION FOR
PARTIAL SUMMARY JUDGMENT - 35

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260

s/ *Lori Johnson*
Lori Johnson, North Carolina State Bar
Association #24227
1126 16th St. NW, Suite 507
Washington, DC 20036
ljohnson@farmworkerjustice.org
*Admitted Pro Hac Vice*


EDWARD TUDDENHAM

s/ *Edward Tuddenham*
Edward Tuddenham, New York State Bar #2155810
228 W 137th St.
New York, NY 10030
edwardtuddenham@gmail.com


*Attorneys for Plaintiff Familias Unidas por la Justicia*

COLUMBIA LEGAL SERVICES
711 Capitol Way S., Suite 706
Olympia, WA 98501
(360) 943-6260