UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FAMILIAS UNIDAS POR LA JUSTICIA, AFL-CIO,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF LABOR; KEITH E. SONDERLING in his official capacity as Acting United States Secretary of Labor,<br><br>Defendants. | CASE NO. 2:24-cv-00637-JHC<br><br>ORDER |

## I

## Introduction

This matter comes before the Court on Cross Partial Motions for Summary Judgment. Plaintiff, Familias Unidas por la Justicia, AFL-CIO, (Familias) is a labor union that represents farmworkers throughout Washington State. *See* Dkt. ## 165, 233. Defendants are United States Department of Labor and Keith E. Sonderling and Secretary of Labor (DOL).[1] Dkt. ## 185, 238.

[1] Acting secretary Keith E. Sonderling has been substituted for previous secretary Lori Chavez-DeRemer who resigned on April 20, 2026. *See* Dkt. # 240 at 1, n.1.

Plaintiff brings claims against DOL on various grounds related to the approval and publishing of prevailing wage rates pursuant to the agency's statutory obligation under 8 U.S.C. § 1188 to regulate H-2A agricultural visas.

The parties intend for these motions to fully resolve the claims. *See* Dkt. # 235. For the reasons below, the Court DENIES Plaintiff's first partial motion for summary judgment, Dkt. # 165, and DENIES in part and GRANTS in part Plaintiff's second partial motion for summary judgment and the DOL's cross motions for partial summary judgment. Dkt. ## 165, 185, 233, 238.

## II
## BACKGROUND

This case has a long procedural history that is briefly described in pertinent parts below. This order also incorporates the facts as laid out in previous orders. *See* Dkt. # 40 at 2-5; Dkt. # 127 at 2-7; Dkt. # 145 2-8; Dkt. # 201 at 2-6.

### A. H-2A Program

Under the H-2A agricultural visa program, employers may temporarily bring foreign workers into the United States. 8 U.S.C. § 1188. Before an employer can obtain an H-2A visa for a foreign worker, they must apply to DOL for certification that there are not enough workers at the time and place to fulfill their need, and that employment of foreign workers "will not adversely affect the wages and working conditions of workers in the United States similarly employed." *Id.* (a)(1)(A)-(B). To fulfill this mandate, DOL regulations require H-2A employers to pay the highest of the Adverse Effect Wage Rate (AEWR) (a state-specific hourly minimum

wage), the prevailing wage rate (an activity-specific minimum wage), or another applicable wage. 20 C.F.R. §§ 655.120(a), 655.1300.

Although DOL determines the AEWR, 20 C.F.R. § 655.1300, it delegates to state workforce agencies (SWAs) the task of collecting data to calculate prevailing wage rates. *See* 20 C.F.R. § 655.1300(c); *see generally* Dkt. # 76-3. SWAs follow DOL guidelines for this task and then submit the prevailing wage rates and the survey methods used to DOL for approval. *See* 20 C.F.R. § 655.120(c); 87 Fed. Reg. 61660, 61679, 61689 (Oct. 12, 2022); Dkt. # 40 at 17-20. DOL then publishes new prevailing wage rates based on the SWAs' surveys. 20 C.F.R. § 655.120(c). A prevailing wage can be an hourly rate or, more commonly in agriculture, a piece rate (i.e., pay based on the amount of a crop harvested instead of the number of hours worked), and either way the wage is typically higher than the AEWR. *See* 88 Fed. Reg. 12760, 12775 (Feb. 28, 2023); 85 Fed. Reg. 70445, 70450 (Nov. 5, 2020). For this reason, DOL recognizes that prevailing wages "serve as an important protection for workers." 88 Fed. Reg. at 12775.

B. Rulemaking Related to the Prevailing Wage Rate Methodology

In 2019, DOL issued a notice of proposed rulemaking (NPRM), in part, to amend the methodology for finding prevailing wages. 84 Fed. Reg. 36168, 36184-36189 (July 26, 2019). The NPRM stated:

> [T]he Department proposes to modernize the current methodology used to conduct prevailing wage surveys . . . ETA Handbook 385 (Handbook 385 or the Handbook), which pre-dates the creation of the H-2A program and has not been updated since 1981, currently sets the methodology used to establish prevailing wage rates for all agricultural job orders. The Handbook sets standards, including a requirement for in-person interviews, which are inconsistent with available resources at the state and federal levels. Due to the difficulty of implementing these resource-intensive standards, the SWAs are often required to report "no finding" from prevailing wage surveys; therefore, the surveys are both costly and fail to meet the aim of producing reliable prevailing wage rates. Accordingly, the Department proposes to update the prevailing wage standards to allow the SWAs and other state agencies to conduct surveys using more practical standards and establish reliable and accurate prevailing wage rates for workers and employers.

*Id.* at 36171 (footnote omitted).

DOL promulgated the final rule on October 12, 2022, with an effective date of November 14, 2022. *See* 87 Fed. Reg. 61660. In pertinent part, the regulations state, "A prevailing wage issued by the [Office of Foreign Labor Certification (OFLC)] Administrator will remain valid for 1 year after the wage is posted on the OFLC website . . . ." 20 C.F.R. § 655.120(c)(2) (the One-Year Rule). The regulation further states that DOL will issue a prevailing wage only if, in addition to other factors:

- "Where the estimated universe of employers is at least 4, the wages paid by a single employer represent no more than 25 percent of the sampled wages in the unit of pay used to compensate the largest number of U.S. workers whose wages are reported in the survey," 20 C.F.R. §655.120(c)(1)(ix) (the 25% Rule); and
- "The survey reports the average wage of U.S. workers in the crop activity or agricultural activity and distinct work task(s), if applicable, and geographic area using the unit of pay used to compensate the largest number of U.S. workers whose wages are reported in the survey," 20 C.F.R. § 655.120(c)(1)(v).

In late 2022, relying on these new regulations, Washington's SWA—the Employment Security Department (ESD)—conducted a survey, and later submitted its findings to DOL for review on or before August 16, 2023. Dkt. #76-3 at 505; Dkt. # 201 at 3 (citing Dkt. # 34 at 2). But while DOL was reviewing the submission, the prior prevailing wage rates expired under the One-Year Rule and, without prevailing wage rates in effect, there was uncertainty as to the wages that workers would be paid. *See* Dkt. # 40 at 4, 17-20.

C. The First Preliminary Injunction

Before DOL approved ESD's 2022 prevailing wage rate survey (2022 survey), Plaintiff, sued DOL and the Acting U.S. Secretary of Labor to "challeng[e] the agency's 2022 prevailing wage rules related to the federal 'H-2A' temporary agricultural visa program as well as certain policies and practices implementing those prevailing wage regulations."[2] Dkt. # 1 at 1, ¶ 1. Shortly after, Plaintiff moved for a first preliminary injunction to (i) enjoin the One-Year Rule; (ii) enjoin the 25% Rule; and (iii) rescind DOL's approval of ESD's population-estimate survey method and direct ESD to conduct its survey with a different method. *See* Dkt. # 9.

On July 2, 2024, the Court enjoined the One-Year Rule and ordered DOL to "REINSTATE and enforce the 2020-Survey prevailing wage rates, published in January 2022, until judgment is entered in this case." Dkt. # 40 at 21-22. The Court denied Plaintiff's motion as to the 25% Rule and DOL's approval of ESD's population-estimate survey method because Plaintiff did not provide enough information about DOL's decision-making process. *Id.* at 16-17.

D. Additional Rulemaking and the Second Preliminary Injunction

On April 29, 2024, DOL published a new version of 20 C.F.R. § 655.120(a), which made an additional change to the regulations governing H-2A visas; it states in pertinent part:

> (a) Employer obligation.
>
> (1) Except for occupations covered by §§ 655.200 through 655.235, to comply with its obligation under § 655.122(l), an employer must offer, advertise in its recruitment, and pay a wage that is at least the highest of:
>
> (i) The AEWR;
>
> (ii) A prevailing wage rate [subject to certain criteria];

[2] The Court later ordered Plaintiff to join ESD as a necessary party, Dkt. # 63 at 6, but ultimately granted ESD's motion to dismiss. *See* Dkt. # 117.

> . . .
>
> (2) Where the wage rates set forth in paragraph (a)(1) of this section are expressed in different units of pay (including piece rates or other pay structures), the employer must list the highest applicable wage rate for each unit of pay in its job order and must offer and advertise all of these wage rates in its recruitment. The employer's obligation to pay the highest of these wage rates is set forth at § 655.122(l)(2).

*Id.*; *see also* 89 Fed. Reg. 33989, 33904 (April 29, 2024). This change tracked the Ninth Circuit's reading of the previous version of the regulation. *See Torres Hernandez v. Su*, 2024 WL 2559562, at *1, n.2 (9th Cir. May 24, 2024); *see also infra* Section III.E.

In late November 2024, a court in the Eastern District of Kentucky ruled that the new version of 20 C.F.R. § 655.120(a) was likely arbitrary and capricious and preliminarily enjoined DOL from requiring employers to offer prevailing piece rates if an employer preferred to pay by the hour. *See Barton v. U.S. Dep't of Lab.*, 2024 WL 4886048, *19 (E.D. Ky. Nov. 25, 2024). As a result, in Washington, DOL ceased requiring growers from offering the 2020 prevailing piece rates reinstated by this Court's first preliminary injunction and, instead, approved H-2A job orders offering the lower AEWR for harvest activities covered by 2020 prevailing piece rates. Dkt. #104-6 at 3.

Plaintiff then moved to amend its complaint to add a claim that DOL's approval of these job orders was unlawful, Dkt. #130, and moved for second preliminary injunction to halt and reverse the approvals, Dkt. #131. In part due to contemporaneous litigation out of the Eastern District of Washington and *Torres Hernandez*, 2024 WL 2559562, the Court granted Plaintiff's motion to amend and preliminary enjoined DOL from approving new orders that paid the AEWR rate instead of the prevailing piece rate and to give notice to all covered employers that they must unequivocally offer and pay the applicable prevailing piece-rate wages. Dkt. ## 145, 164.

E. Plaintiff's Motion to Clarify the First Preliminary Injunction

On March 31, 2025, on Plaintiff's motion, the Court amended the first preliminary injunction, clarifying that the preliminary injunction was not intended to "lock in a particular set of prevailing wages," and did not prevent DOL from acting on ESD's 2022 wage survey findings. Dkt. # 146 at 2-3.

F. Parties' First Cross-Motions for Partial and Full Summary Judgment and DOL approves the 2022-survey wages

In May 2025, Plaintiff moved for partial summary judgment, contending that (i) the One-Year Rule is arbitrary and contrary to law; (ii) the 25% Rule is arbitrary and contrary to law; (iii) DOL's approval of AEWR-only job orders is contrary to law; and (iv) DOL unlawfully failed to act on ESD's 2022 survey findings. Dkt. # 165. The parties stipulated to, and the Court ordered, a briefing schedule considering DOL's intent to cross-move for full summary judgment. Dkt. ## 172; 173.

But on June 18, 2025, before DOL cross-moved for summary judgment, Dkt. # 185, DOL published the 2022-survey wages. Dkt. # 207-1; *see also* Dkt. # 208. The 2022-survey wages approved 9 prevailing wage findings and made a "no finding" for all other 26 crop activities. Dkt. # 207-1 at 1-3.

G. Plaintiff's Motion for a Third Preliminary Injunction

After DOL published the new prevailing wage rates, Plaintiff moved for leave to file a third amended complaint to allege that DOL's publication of the 2022-survey wages constituted final agency action and to include the fact that ESD submitted its 2023 survey results to DOL on

June 13, 2025. Dkt. # 175 at 1-2. The Court granted this request and allowed the parties to amend or supplement the pending cross motions for summary judgment. *See* Dkt. # 196.

Plaintiff also moved for third preliminary injunction, which motion sought an order that generally enjoined DOL (i) from enforcing the "no finding" results in the 2022-survey wages and requiring it to reinstate the 2020-survey wages for all crop activities with a "no finding" result; and (ii) from using particular methodologies (e.g., the 25% Rule) to calculate prevailing wage rates. Dkt. # 176 at 35-36; Dkt. # 175. The Court denied Plaintiff's motion for a preliminary injunction. *See* Dkt. # 201.

H. Parties' Second Cross-Motions for Partial and Full Summary Judgment

Now, Plaintiff has brought two partial motions for partial summary judgment, Dkt. ## 165, 233, to which DOL has responded with two cross partial motions for summary judgment, Dkt. ## 185, 238. Per a stipulation, Plaintiff has dismissed certain claims, and the parties have agreed the pending motions for summary judgment will resolve the remaining claims. *See* Dkt. ## 234, 235.

In the remaining claims, Plaintiff challenges DOL's actions as arbitrary and capricious and contrary to the law under the Administrative Procedure Act (APA), 5 U.S.C. §§ 701-706. Specifically, Plaintiff says:

- The One-Year Rule, 8 C.F.R § 655.120(c)(2), is arbitrary and capricious and contrary to the law, Dkt. # 165 at 11-15;
- If the One-Year Rule is invalid, then DOL improperly replaced the 2020 prevailing wage rates with a "no findings" result from the 2022 survey, Dkt. # 233 at 6-12;
- The 25% Rule, 20 C.F.R. § 655.120(c)(1)(ix), is arbitrary and capricious and contrary to the law both on its face and as applied, Dkt. # 165 at 15-25; Dkt. # 233 at 17-25;

- DOL's approval of the 2022 survey is arbitrary and capricious and contrary to law because those results were based on unlawful survey responses in violation of *Torres Hernandez*, 2024 WL 2559562 and 20 C.F.R. § 655.120(a), Dkt. # 233 at 12-17, *see also* Dkt. # 165 at 25-27;
- DOL's approval of the 2022 survey is arbitrary and capricious and contrary to law because those survey results were calculated using a methodology that treated piece rates, piece rates with hourly guarantees, and piece rates with bonuses, as well as piece rates with other differences, as separate and distinct methods of payment, Dkt. # 233 at 26-31.
- DOL's approval of the 2022 survey is arbitrary and capricious and contrary to law because DOL's publication of "no-findings" for specific crop activities in the 2022 survey was based on the use of population estimate methodology violating 20 C.F.R. § 655.120(c)(1)(v), Dkt. # 233 at 31-33.

Plaintiff's claim that DOL has unlawfully failed to act, Dkt. # 165 at 27-33, is mooted by DOL approving the 2022 survey results. *See* Dkt. # 187 at 2, n.1. Plaintiff's additional non-response bias claim, Dkt. # 185 at 21-22, was dismissed. *See* Dkt. # 235.

After briefing concluded, Plaintiff filed a Notice of New Facts Relevant to Summary Judgment Remedies, telling the Court that on June 2, 2026, DOL published ESD 2023 prevailing wage survey results. *See* Dkt. # 241.

## III
## Discussion

### A. Standard of Review

"Under the APA, an agency action may be set aside only if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Ranchers Cattlemen Action*

*Legal Fund United Stockgrowers of Am. v. U.S. Dep't. of Agric.*, 499 F.3d 1108, 1114-1115 (9th Cir. 2007) (quoting 5 U.S.C. § 706(2)(A)). "[A]n agency rule [is] arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Alaska Dep't of Health & Soc. Servs. v. Centers for Medicare & Medicaid Servs.*, 424 F.3d 931, 934 (9th Cir. 2005) (alterations in original) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

The Supreme Court has "frequently reiterated that an agency must cogently explain why it has exercised its discretion in a given manner." *Motor Vehicle*, 463 U.S. at 48; *see also Ohio v. Env't Prot. Agency*, 603 U.S. 279, 292 (2024) ("An agency action qualifies as 'arbitrary' or 'capricious' if it is not 'reasonable and reasonably explained.'"). At the same time, the standard of review is "highly deferential, presuming the agency action to be valid and affirming the agency action if a reasonable basis exists for its decision." *Indep. Acceptance Co. v. California*, 204 F.3d 1247, 1251 (9th Cir. 2000) (citations omitted). The Ninth Circuit has emphasized that the party challenging the agency action bears the burden of persuasion. *See Ctr. for Cmty. Action & Env't Just. v. Fed. Aviation Admin.*, 61 F.4th 633, 639 (9th Cir. 2023); *see also George v. Bay Area Rapid Transit*, 577 F.3d 1005, 1011 (9th Cir. 2009) (upholding an agency decision where "[t]here was no evidence before [the agency] which compelled a different conclusion" nor "any evidence that it considered impermissible factors").

Apart from the above factors, "[c]onstructions that are contrary to clear Congressional intent or frustrate the policy that Congress sought to implement must be rejected. An agency may not ignore factors Congress explicitly required be taken into account." *Earth Island Inst. v.*

*Hogarth*, 494 F.3d 757, 765 (9th Cir. 2007) (citation omitted). While "courts should uphold reasonable and defensible constructions of an agency's enabling act, they must not rubber-stamp administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute." *Arizona Cattle Growers' Ass'n v. U.S. Fish & Wildlife, Bureau of Land Mgmt.*, 273 F.3d 1229, 1236 (9th Cir. 2001) (internal citation and quotation omitted).

When reviewing an administrative agency decision, "the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did," and thus, "summary judgment is an appropriate mechanism for deciding the legal question of whether the agency could reasonably have found the facts as it did." *Occidental Eng'g Co. v. I.N.S.*, 753 F.2d 766, 769-70 (9th Cir. 1985).

B. Governing law: 8 U.S.C. § 1188(a)

At the outset, the Court considers the statutory framework upon which DOL's authority rests. Congress has conditioned H-2A petitions on two factors; DOL is only to approve H-2A petitions if the petitioner certifies that:

> (A) there are not sufficient workers who are able, willing, and qualified, and who will be available at the time and place needed, to perform the labor or services involved in the petition, and
>
> (B) the employment of the alien in such labor or services will not adversely affect the wages and working conditions of workers in the United States similarly employed.

8 U.S.C. § 1188(a)(1). In enacting § 1188, Congress has entrusted DOL "to balance the competing goals of the statute—providing an adequate labor supply and protecting the jobs of domestic workers." *Am. Fed'n of Lab. & Cong. of Indus. Organizations (AFL-CIO) v. Dole*, 923

F.2d 182, 187 (D.C. Cir. 1991) (discussing § 1188(a)(1)); *U.S. Equal Emp. Opportunity Comm'n v. Glob. Horizons, Inc.*, 915 F.3d 631, 634 (9th Cir. 2019) (same).

Given the goal of ensuring H-2A workers will not adversely affect the wages and working conditions of workers in the United States, DOL has long-since promulgated regulations setting up minimum pay requirements, including the prevailing wage. *See* 20 C.F.R. § 655.120(a); *see also* 85 Fed. Reg. at 70449-70450 (discussing the enduring need for the AEWR to protect against wage depression).

C. One-Year Rule

The One-Year Rule, codified at 20 C.F.R § 655.120(c)(2), says prevailing wage rates are only valid for one year after the wage is posted. The regulation states:

> A prevailing wage issued by the OFLC Administrator will remain valid for 1 year after the wage is posted on the OFLC website or until replaced with an adjusted prevailing wage, whichever comes first, except that if a prevailing wage that was guaranteed on the job order expires during the work contract, the employer must continue to guarantee at least the expired prevailing wage rate.

*Id*. Plaintiff says that, in effect, the One-Year Rule will often leave workers with no prevailing wage rate after the expiration. Dkt. # 165 at 11-15. Plaintiff says that the rule is contrary to the law because it will harm the wages of domestic workers, and that in promulgating the rule DOL entirely failed to consider the likelihood of expired wages or, if it did consider the problem, the explanations offered were irrational, and thus, Plaintiff says the One-Year Rule is also arbitrary and capricious. *Id.*

1. Contrary to law

DOL has an obligation to prevent H-2A recipients from adversely affecting the wages of U.S. workers. The question is whether allowing the highest rates, that is, the prevailing wage rates, to automatically expire after one year runs contrary to that obligation. *See Earth Island*

*Inst.*, 494 F.3d at 765 ("Constructions that are contrary to clear Congressional intent or frustrate the policy that Congress sought to implement must be rejected.").

DOL pointed out in rulemaking and before this Court that in most cases DOL meets its statutory obligation without invoking the prevailing wage rate because 92 percent of H-2A applicants rely only on the AEWR.[3] Dkt. # 191 at 6 (quoting 84 Fed. Reg. at 3[7]179). DOL implies that it can meet its obligation to protect against adverse effects to U.S. workers exclusively through the AEWR, and that the Court need not consider changes to the regulations governing the prevailing wage rate because it makes up only a minority of the wages used. *See id.* The Court finds this argument unpersuasive. Although the AEWR is the more common wage rate, this presumably means that under the current regulatory scheme, a prevailing wage rate, and the other rates identified in the regulations, are still needed in a minority of cases to fulfill DOL's obligation against H-2A recipients having an adverse effect on U.S. workers. DOL itself held this opinion in rulemaking. *See* 84 Fed. Reg. at 36179 ("the Department recognizes that State-conducted prevailing wage rates can serve as an important additional protection for U.S. workers in crop activities and agricultural activities with piece rates or, in rare instances, higher hourly rates of pay"); *see also* 84 Fed. Reg. at 36188 (stating a goal of the One-Year Rule to be making "prevailing wage rate findings available where the prevailing wage rate would be higher than the AEWR"); 85 Fed. Reg. at 70450 (describing DOL's interpretation of its statutory obligation related to the AEWR and prevailing wage rate). Where DOL itself has acknowledged

[3] Again, the AEWR is the Adverse Effect Wage Rate, which is a state-specific minimum wage established by DOL as the general minimum rate an H-2A worker must be paid so as not to adversely affect the wages of similarly employed U.S. workers. *See* 20 C.F.R. § 655.103; 20 C.F.R. § 655.1300; *see also* 85 Fed. Reg. at 70450. In 2022, the relevant year to the instant motion, the Washington AEWR was $17.41/hour. Dkt. # 76-2 at 325.

the important protection the prevailing wage rate provides, the Court cannot assume that AEWR alone satisfies DOL's statutory mandate.[4]

Still, the Court also does not assume, as Plaintiff suggests, that a prevailing wage rate must always be maintained to satisfy § 1188(a)(1)(B). *See* Dkt. # 165 at 14. Congress expressly required DOL to prevent H-2A visa recipients from "adversely affect[ing] the wages and working conditions of workers in the United States similarly employed." § 1188(a)(1)(B). "Congress did not, however, further define adverse effect and left it in the Department's discretion how to ensure that the importation of farmworkers met the statutory requirements."[5] *Dole*, 923 F.2d at 184.

The Court finds persuasive the analysis of *Dole* in which the District of Columbia Court of Appeals considered a challenge to a statutory mandate to compensate for past wage depression under § 1188(a), which the plaintiff said was violated when DOL implemented changes to how the AEWR was calculated. 923 F.2d at 184-85. The court found no statutory requirement to

---

[4] Also, even if the prevailing wage rate makes up only a minority of wages paid, DOL is still obligated under the APA to regulate in a way that is not arbitrary and capricious, meaning its actions must be "reasonable and reasonably explained." *See League of California Cities v. Fed. Commc'ns Comm'n*, 118 F.4th 995, 1013 (9th Cir. 2024) ("For the action to be 'reasonable and reasonably explained,' the agency must have articulated 'a rational connection between the facts found and the choice made'"); *see supra* Section III.C.2.

[5] After the Supreme Court decided *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024), courts have considered *Dole*'s purported reliance on *Chevron* deference. *See Int'l Fresh Produce Ass'n v. United States Dep't of Lab.*, 758 F. Supp. 3d 575, 591, n.9 (S.D. Miss. 2024); *but see N. Carolina Farm Bureau Fed'n, Inc. v. United States Dep't of Lab.*, 781 F. Supp. 3d 455, 474 n.11 (E.D.N.C. 2025). Although *Dole* does not expressly mention or rely on *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984), the *Dole* court, in part, relied on a presumption that where Congress left ambiguity in a statute, it understood the ambiguity would be resolved by the agency. *See Smiley v. Citibank (S. Dakota), N.A.*, 517 U.S. 735, 740-41 (1996) (citing *Chevron*, 467 U.S. at 843-44). Post-*Loper Bright*, this presumption no longer applies. *See Loper Bright*, 603 U.S. at 399 ("In neither case does an ambiguity necessarily reflect a congressional intent that an agency, as opposed to a court, resolve the resulting interpretive question."). Still, although DOL repeatedly cites *Dole* and relies on principles of agency deference in response, Plaintiff does not cite *Loper Bright* or argue that *Dole*, or any other related case law, may not apply. *See generally* Dkt. ## 185, 187, 191, 233, 238, 239, 240. Because the Supreme Court instructed that *Loper Bright* "do[es] not call into question prior cases that relied on the *Chevron* framework" the Court considers the *Dole*'s holding still persuasive and applicable. *See Loper Bright*, 603 U.S. at 412.

adjust for past wage depression because there was no conclusive evidence that the average wage was tainted by wage depression. *Id.* at 187. The court held that "[t]he government's choice of methodology is really a policy decision taken within the bounds of a rather broad congressional delegation." *Id.*

So too here, § 1188 does not speak to when (or if) a prevailing wage is required. Thus, under the current scheme, the Court finds the prevailing wage remains a necessary tool to fulfill § 1188; however, DOL need not always maintain individual prevailing wage rates to achieve § 1188's purpose. Based on the rulemaking that has occurred, DOL may not wholly eliminate the tool of prevailing wage rates but, where DOL finds appropriate, it may allow for individual prevailing wage rates to increase, lower, or be terminated.

Plaintiff says that, because the prevailing wage rate is higher than the AEWR, eliminating it necessarily depresses wages of U.S. workers. While that may sometimes be true, underlying Plaintiff's argument is an assumption that wages must always rise or at least remain stagnant to satisfy the statute. The statute does not require such an assumption. *See e.g.*, *Garcia v. Stewart*, 531 F. Supp. 3d 194, 218 (D.D.C. 2021) ("The mere fact that alternative wage metrics might lead to higher wages than the AEWR, moreover, does not, without more, demonstrate that the hiring of foreign workers at the AEWR 'adversely affect[s] the wages . . . of workers in the United States.'") (alterations in original) (quoting 8 U.S.C. § 1188(a)(1)). DOL might contemplate wages falling for reasons unrelated to H-2A workers. The statute mandates that DOL must ensure that the issuing of H-2A visas must not adversely affect the wages and working conditions of U.S. workers, but it does not say that the wages of U.S. workers or H-2A workers will never decrease. Following Plaintiff's logic would lead to a conclusion that DOL could never replace prevailing wage rates with lower rates—even if a survey showed that it was the

appropriate response to employer data. Rising prevailing wage rates is the historic trend and likely future scenario, but it is not the only future DOL may (or should) contemplate.

Finally, § 1188 explicitly requires DOL to consider labor demand.[6] *See Dole*, 923 F.2d at 187 ("The Department is obliged to balance the competing goals of the statute—providing an adequate labor supply and protecting the jobs of domestic workers"); *Glob. Horizons, Inc.*, 915 F.3d at 634 ("Congress designed the program to 'balance two competing interests: to assure employers an adequate labor force on the one hand and to protect the jobs of citizens on the other.") (quoting *Orengo Caraballo v. Reich*, 11 F.3d 186, 190 (D.C. Cir. 1993); *see also Rogers v. Larson*, 563 F.2d 617, 626 (3d Cir. 1977) (same)). As explained below, DOL has said that the One-Year Rule allows for prevailing wage rates to issue only based on the most recent and accurate data and hopes it will encourage states to produce a greater number of prevailing wages. *See* 84 Fed. Reg. at 36188; *see also infra* Section III.C. That accords with DOL's dual mandate under § 1188, which provides DOL flexibility in implementing the mandates of the statute and requires considering more than just wages. *Dole*, 923 F.2d at 186 (holding that "the Department is entitled to change its policy so long as it supplies a reasoned explanation for its choice").

In conclusion, just as in *Dole*, Plaintiff presents no showing that the One-Year Rule is on its face contrary to § 1188(a). The mere fact that a prevailing wage rate at one point resulted in a higher wage than the AEWR does not, without more, demonstrate that the hiring of H-2A visa recipients will "adversely affect the wages . . . of workers in the United States similarly employed." 8 U.S.C. § 1188(a)(1)(B); *see also Lands Council v. McNair*, 537 F.3d 981, 993 (9th

[6] Plaintiff says that "DOL justification for the challenged regulations as striking a balance between workers and *employers* directly violates its statutory duty." Dkt. # 187 at 3-5 (emphasis added). The Court does not read DOL's invocation of its dual mandate as making such a justification. *See* Dkt. # 185 at 3-4, 19; Dkt. # 191 at 5. As Plaintiff acknowledges, DOL does have a dual mandate as described in *Dole*. Dkt. # 187 at 4, n.2; *see also* 923 F.2d at 184, 87.

Cir. 2008) (en banc) (acknowledging that courts are "not free to impose on the agency our own notion of which procedures are best or most likely to further some vague, undefined public good . . . Nor may [courts] impose procedural requirements not explicitly enumerated in the pertinent statutes) (cleaned up), *overruled in part on other grounds by Winter v. Nat. Res. Def. Council*, 555 U.S. 7 (2008). Thus, the Court finds the One-Year Rule is not contrary to the law. *See Dole*, 923 F.2d at 187 ("Since there is no conclusive evidence—indeed, appellees offer none—that the USDA average is tainted by wage depression, its use seems well within the range of reasonable methodological choices open to the Department.").

2. Arbitrary and Capricious

Plaintiff also says the One-Year Rule is arbitrary and capricious because DOL entirely failed to consider an important aspect of the problem, in that, DOL fails to address that the One-Year Rule leaves workers without a prevailing wage upon expiration. Dkt. # 165 at 12. Separately, Plaintiff also says that even if DOL considered the problem the explanation DOL offered for the One-Year Rule is arbitrary because "[g]iven DOL's history of failing to establish prevailing wages each year, it had to have known that the One-Year Rule would eliminate, rather than promote, prevailing wages." Dkt. # 187 at 9; *see also* Dkt. # 165 at 12-14. They say this makes the explanation counter to the evidence before the agency and so implausible that it could not be ascribed to a difference in view or the product of agency expertise. Dkt. # 187 at 9. DOL says it did not entirely fail to consider the problems raised by Plaintiff; it says it made a discretionary determination that a prevailing wage rate should only be valid for one year to achieve DOL's broader statutory goals.[7] Dkt. # 185 at 8-9.

[7] DOL also says Plaintiff has waived its claim that the One-Year Rule is arbitrary and capricious by failing to raise the challenge during the notice-and-comment period. Dkt. # 185 at 5-7. The Court incorporates and re-affirms its reasoning from the first preliminary injunction, and finds the comment

The Court "must review the [agency]'s actions based on the 'grounds . . . upon which the record discloses that its action was based.'" *Safe Air For Everyone v. U.S. E.P.A.*, 488 F.3d 1088, 1101 (9th Cir. 2007) (alterations in original) (quoting *SEC v. Chenery Corp*., 318 U.S. 80, 87 (1943)). As to the One-Year Rule specifically, DOL reasoned:

> The 1-year validity period for prevailing rates is generally consistent with [DOL's] current practice. The Department proposes to maintain the current validity period with the goals of both basing prevailing wage rates on the most recent and accurate data and making prevailing wage rate findings available where the prevailing wage rate would be higher than the AEWR.

84 Fed. Reg. at 36188. More generally, DOL says that the two aims of its new standards for prevailing wage surveys were to "(1) modernize the Handbook standards, which were last updated in 1981 and under which State Workforce Agencies (SWAs) were 'often required to report that the State cannot produce a finding for a given crop activity or agricultural activity because the completed survey cannot meet methodological standards;' and (2) ensure surveys 'establish reliable and accurate prevailing wage rates for employers and workers'" through standards "'that are realistic in a modern budget environment . . . .'" Dkt. # 185 at 9 (quoting 84 Fed Reg. 36168, 36185 (July 26, 2019) (2019)). The agency hoped that this would "focus States on producing surveys in the circumstances in which the surveys can be most useful for protecting the wages of U.S. workers" and "encourage a greater number of reliable prevailing wage survey results." Dkt. # 185 at 9 (quoting 84 Fed Reg. at 36185); *see also* 84 Fed. Reg. at 36179 ("The Department proposes to make the changes discussed below to modernize the prevailing wage methodology and empower States to produce a greater number of reliable prevailing wage surveys results.").

---

submitted by Harvard Law School's Food Law and Policy Clinic sufficiently put DOL on notice of Plaintiff's claim as to the One-Year Rule. *See* Dkt. # 40 at 9-10 (citing Dkt. # 38-9); *see also* Dkt. # 75 at 4 (Public Comments, ETA-2019-0007, https://www.regulations.gov/docket/ETA-2019-0007/comments).

The record before the Court does not indicate that DOL entirely failed to consider the problems Plaintiff identifies; rather, it shows, as DOL says, that it made a policy decision to encourage more survey results based on recent and accurate data. First, DOL considered various options and solicited public comment related to the One-Year Rule many of which would influence the issue of expiring wages. *See* Dkt. # 191 at 4 (listing options and citing 84 Fed. Reg. at 36188). It also acknowledged that the prevailing wage as an important protection. *See* 84 Fed. Reg. at 37179; *see supra* Section III.C.1.

Second, the record shows DOL acknowledging its own failure to update prevailing wages and stating a policy goal to increase survey results, and thus, allow for updated, more accurate, and presumably higher prevailing wage rates. *See* 84 Fed. Reg. at 36179 ("The Department proposes to make the changes discussed below to modernize the prevailing wage methodology and empower States to produce a greater number of reliable prevailing wage surveys results."). This is supported by other sections of the record, which indicate that DOL was attempting to increase states' survey response rates using other proposed provisions as well. See *id*. at 36186-36187 ("the Department proposes to replace the statistical guidelines from Handbook 385 with standards that are more effective in producing a prevailing wage and more appropriate to a modern budget environment"); *see also id.* (discussing other policy changes that might "increase survey response rates"), 36186 (broadening the categories of state entities that may conduct prevailing wage surveys "to encourage more prevailing wage surveys to be conducted by reliable sources"), 36187 ("requiring smaller sample sizes than those suggested in Handbook 385 may actually increase survey response rates because employers may be more likely to respond to a survey if it is more likely that the OFLC Administrator will issue a prevailing wage than under the current methodology"). In rulemaking and in response to the instant motions, DOL says its "goal was not just to encourage a greater number of prevailing wage survey results, but to

'encourage a greater number of *reliable* prevailing wage survey results.'" Dkt. # 185 at 10 (emphasis in original) (quoting 84 Fed. Reg. at 36185).

Granted, on just the above stated policy goals, DOL's supposed consideration of the most likely implication the One-Year Rule (i.e., leaving workers without a prevailing wage rate) requires an inference in DOL's favor. But the record includes more than just the policy statements, it also indicates that DOL expressly considered that the wages would expire and possibly leave workers without a prevailing wage. DOL considered an exception that requires employers to guarantee a wage that is at least equal to the expired prevailing wage rate if the wage rate expired during a job order. *See* 84 Fed. Reg. at 36188 (applying the One-Year Rule "except that if a prevailing wage that was guaranteed on the job order expires during the work contract, the employer must continue to guarantee at least the expired prevailing wage rate"). This exception ultimately made it into the regulation. 8 C.F.R § 655.120(c)(2).

This record evidence is not undermined by Plaintiff's position that DOL incorrectly stated the One-Year Rule accords with current practice. Dkt. # 165 at 12-13 (quoting 84 Fed. Reg. at 36188 (describing the rule as "maintain[ing] the current validity period")). As support, Plaintiff submits a declaration from Michele Besso, the Managing Attorney of the Farm Worker Unit of the Northwest Justice Project, who has reviewed Washington H-2A clearance orders since 2007. Dkt. # 25; *see also* Dkt. # 127 at 18-20, 203 (partially granting Plaintiff's motion to supplement the record). Besso attaches a copy of DOL's "Agricultural Online Wage Library" for Washington as of April 10, 2012, which lists the prevailing wage findings dating between 2008-2012 for certain agricultural activities and instructs that these rates must be applied in evaluating job orders; even though some of the prevailing wages are more than one-year old. *Id.* at 2 ⁋ 7; Dkt. # 25-1 at 1-8. Besso also declares that "[f]or a number of years prior to 2023, United States Department of Labor website displayed the most recently approved prevailing

wages for agricultural activities at least until the next set of wages was approved, even when more than 12 months had passed since those wages had been approved." Dkt. # 25 at 2 ⁋ 6, 8.

At best, the Besso declaration raises questions regarding the "current" practice of maintaining prevailing wage rates, but it does not show that the general statement made by DOL is necessarily false. Both the 2012 information and Besso's statement that "[f]or a number of years prior to 2023" DOL would leave prevailing wages past 12 months does not necessarily speak to the current practice when the rules were implemented. Dkt. # 25 at 2. And while this case and the Besso declaration concern Washington, the statement was made considering the entire nation. *See* Dkt. # 25 at 2 ⁋ 4. Plaintiff does not overcome the deference owed to the agency or prove that DOL made a false statement.

But even if the declaration does speak to the "current" practice and shows a false statement in the administrative record, Plaintiff has not shown that this explanation was a fundamental basis for the rule change. *See Safe Air For Everyone*, 488 F.3d at 1091-92, 1101; *see also* 5 U.S.C. § 706 (instructing "the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error"). As described, the whole of the record indicates that the reason for the rule was to increase recent and accurate survey results. At best, Plaintiff has pointed out a "misstep" by the agency that does not justify invalidating the rule. *See George*, 577 F.3d at 1011 ("[T]he party challenging an agency's action as arbitrary and capricious bears the burden of proof. . . . Indeed, even assuming the [agency] made missteps . . . the burden is on petitioners to demonstrate that the [agency's] ultimate conclusions are unreasonable.") (quoting *City of Olmsted Falls, Ohio v. FAA*, 292 F.3d 261, 271 (D.C. Cir. 2002) (alternations in *George*)); *see also In re Big Thorne Project*, 857 F.3d 968, 976 (9th Cir. 2017) (dismissing plaintiff's remaining claims as "a potpourri of contentions that the

Service misinterpreted one thing or failed to consider another [which] amount to the sort of quibbling that can't overcome our deferential standard of review.").

The Court finds that DOL did not entirely fail to consider an important aspect of the problem or offer an explanation counter to the evidence before it, but made a "reasonable and reasonably explained" decision to prioritize encouraging states to produce more surveys based on more recent and accurate information. *Cf. Ohio v. Env't Prot. Agency*, 603 U.S. at 292. When read as a whole, DOL's explanation suggests that it knew that prevailing wage rates may at times be lost for the tradeoff of having the most reliable and accurate data. 84 Fed. Reg. at 36188 ("The Department proposes to maintain the current validity period with the goals of both basing prevailing wage rates on the most recent and accurate data and making prevailing wage rate findings available where the prevailing wage rate would be higher than the AEWR."); *see also* Dkt. # 239 at 4 (Plaintiff's reply) (stating, "DOL repeatedly invokes concepts such as 'outdated' wages and the need for 'reliable and accurate' wage determinations reflective of 'current market conditions.' . . . As used in the NPRM [these concepts] were framed as goals to produce more prevailing wage findings, not fewer.") (footnote omitted) (citing 84 Fed. Reg. at 36185). And as explained, while prevailing wage rates are a strategy used by DOL to ensure it achieves the statute's mandate, they are not required by the statute. *See infra* Section III.C.1. Even though it seems that, as Plaintiff's say, a likely outcome of DOL's strategy is that prevailing wage rates will expire, it is within DOL's discretion to determine the best way to capture more survey results and to ensure that those results are recent, reliable and accurate. *Food & Drug Admin. v. Wages & White Lion Invs., L.L.C.*, 604 U.S. 542, 567 (2025) ("The scope of this review 'is narrow,' and reviewing courts must exercise appropriate deference to agency decisionmaking and not substitute their own judgment for that of the agency."). That DOL chose to encourage more survey responses by risking the potential of leaving some workers without a prevailing

wage rate might not be the policy Plaintiff or the Court would choose, but based on the record before it, the Court cannot say DOL's actions were arbitrary and capricious.[8, 9]

D. 25% Rule

The 25% Rule states that:

> The OFLC Administrator will issue a prevailing wage for a crop activity or agricultural activity and, if applicable, a distinct work task or tasks performed in that activity if . . .
>
> Where the estimated universe of employers is at least 4, the wages paid by a single employer represent no more than 25 percent of the sampled wages in the unit of pay used to compensate the largest number of U.S. workers whose wages are reported in the survey.

20 C.F.R. § 655.120(c)(1)(ix).[10]

---

[8] This finding differs from the first preliminary injunction. *See* Dkt. # 40. Although in the first preliminary injunction, the Court found Plaintiff had a likelihood of success in showing that DOL apparently failed to address the effect of the One-Year Rule on prevailing wages, upon further briefing and supplements to the administrative record, the Court changes course in light of DOL's apparent effort to increase survey responses, which was not presented to the Court in the original briefing.

[9] Because the Court does not find the One-Year Rule invalid, it need not consider Plaintiff's claim that DOL improperly replaced the 2020 prevailing wage rates with the 2022 "No findings." *See* Dkt. # 233 at 6 ("Familias moves for summary judgment on its claim that, in the event the Court finds the One-Year Rule, 20 C.F.R. §655.120(c)(2), to be invalid and vacates that Rule, DOL's action in replacing valid 2020 prevailing wage rates with 'no findings' from the approved 2022 survey is contrary to DOL's regulations and its statutory obligation to protect prevailing wage rates.").

Whether DOL acted contrary to the Court's preliminary injunction is a separate question, which Plaintiff raises for the first time on reply. *Compare* Dkt. # 239 at 2 ("Familias's contrary-to-law argument—that replacing existing prevailing wages from ESD's 2020 survey with "no findings" from the 2022 survey is unlawful—does not depend on 20 C.F.R. § 655.120(c)(2) (the One-Year Rule)") *with* Dkt. # 233 at 6 ("If the Court vacates the One-Year Rule, there will be no regulatory basis for removing a published prevailing wage finding"); *id.* at 7 ("If the Court vacates the One-Year Rule, there is no other mechanism for replacing . . ."); *id.* at 8 ("if the One-Year rule is struck down, DOL's own regulations require that the 2020 prevailing wage rates remain in place. . ."). Because Plaintiff raised this argument for the first time on reply, it is waived. *See Graves v. Arpaio*, 623 F.3d 1043, 1048 (9th Cir. 2010). Separately, the Court would find this request inappropriate as presented in the present motion. *See OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*, 2015 WL 12880553, at *2 (E.D. Wash. July 20, 2015) ("While civil contempt may not be an independent cause of action, Plaintiffs are entitled to contempt sanctions if they can establish there has been a violation of the court's preliminary injunction order."). Regardless, the question of enforcing the preliminary injunction is now moot.

[10] When discussing the 25% Rule and referring to employers or results, unless otherwise stated, the Court is only considering the universe of employers with at least four employers that would invoke the rule.

The purpose of the rule, as stated in the NPRM, is to ensure that the prevailing wage "is not unduly impacted by the wages of a single dominant employer." 84 Fed. Reg. at 36187. After the rule was promulgated, DOL instructed ESD that when the 25% Rule is invoked, ESD should not make a prevailing wage finding, and instead, the data should be represented by a "no finding." Dkt. # 76-2 at 212-214. The rule, as DOL has implemented it, is illustrated in the below flow chart, which DOL provided to ESD.




*Id*.

In its first summary judgment motion, Plaintiff brought a facial challenge to the 25% Rule. *See* Dkt. # 165 at 15-25. After DOL approved the 2022 survey findings, Plaintiff moved to supplement the complaint with an as-applied challenge and brings that claim in its second Partial Motion for Summary Judgment.[11] *See* Dkt. # 175; Dkt. # 196 at 8; Dkt. # 201 at 19-27. Whether as-applied or facial, Plaintiff's general argument is that DOL should have interpreted

[11] The Court does not find merit in DOL's position that Plaintiff's as-applied challenge is so similar to the facial challenge that it should not be considered an independent basis for relief. Dkt. # 238 at 15. The Court can discern an as-applied challenge and the parties and the Court have been discussing an as-applied challenge related to the 25% Rule for over a year. *See* Dkt. # 201. The Court notes DOL's concerns that considering the as-applied challenge might allow Plaintiff to skirt waiver, but a litigant's failure to comment does not affect that litigant's ability to challenge the rule when it is applied. *See Koretoff v. Vilsak,* 707 F.3d 394, 399 (D.C. Cir. 2013) (dismissing plaintiff's claim due to waiver, but emphasizing "that nothing in [the] opinion affects the producers' ability to raise their statutory arguments if and when the Secretary applies the rule"); *Murphy Exploration & Prod. Co. v. U.S. Dep't of Interior*, 270 F.3d 957, 959 (D.C. Cir. 2001) (finding that "to limit review to the adoption of the rule without further judicial relief at the time of its application . . . would effectively deny many parties ultimately affected by a rule an opportunity to question its validity.").

the 25% Rule to mean that "the data from 'dominant employers' would either be removed or that those employers' data would be capped so as not to exceed 25% of the sample." Dkt. # 165 at 15-16. DOL, instead, interpreted the 25% Rule to mean that where a single employer reported employing more than 25% of the workforce in the largest unit of pay, then it could not approve the prevailing wage survey for that specific activity, and thus, a "no findings" would issue. *See* Dkt. # 185 at 14-16; Dkt. # 76-2 at 214.

1. As-Applied

Plaintiff says "DOL's approval of the 2022-survey 'no-findings' was arbitrary and contrary to law because those findings resulted from the unlawful application of the 25% Rule, 20 C.F.R. § 655.120(c)(1)(ix)." Dkt. # 233 at 17. This circular argument is laid out in more detail throughout Plaintiff's briefing:

> Familias's 25%-Rule argument is that the language of 655.120(c)(1)(ix) is ambiguous, as it is susceptible to multiple interpretations, two of which are reasonable interpretations, as outlined below. On the other hand, the interpretation adopted by DOL after the Rule was published, and applied by ESD in producing the 2022-Survey results, is not a reasonable interpretation, and DOL's approval of Survey results using that interpretation is, therefore, arbitrary and capricious.

Dkt. # 233 at 18.[12] Plaintiff seems to be stating that the 25% Rule is (1) ambiguous and (2) not entitled to ordinary agency deference under *Auer v. Robbins*, 519 U.S. 452 (1997) (*Auer* deference). Dkt. # 233 at 25 (citing *Kisor v. Wilkie*, 588 U.S. 558, 559 (2019)); *see also* Dkt. # 239 at 9, n.4.

Under *Auer*, the Court defers to agencies' reasonable readings of genuinely ambiguous regulations.[13] *Kisor*, 588 U.S. at 563. But *Auer* deference applies only when the regulation is

---

[12] Yet in its first motion for summary judgment, Familias characterized DOL's interpretation "that the 25% Rule requires all data for the crop activity be thrown out and no prevailing wage calculation made" as "consistent with the language of the regulation." Dkt. # 187 at 12.

[13] *Auer*, 519 U.S. 452 and *Kisor*, 588 U.S. 558 both rely on principles of *Chevron* deference. For the reasons already stated, the Court need not question the precedent. *See supra* p.14, n.5.

genuinely ambiguous; and thus, the Court first considers the plain meaning of the regulation. *See Kisor*, 588 U.S. at 573; *see also Safe Air For Everyone*, 488 F.3d at 1097 ("As a general interpretative principle, 'the plain meaning of a regulation governs.'").

The rule states that one necessary "requirement" for a prevailing wage to issue is that, in addition to other factors, "the wages paid by a single employer represent no more than 25 percent of the sampled wages in the unit of pay used to compensate the largest number of U.S. workers whose wages are reported in the survey." 20 C.F.R. § 655.120(c)(1)(ix). Although the rule distinguishes between "sampled wages" on which the 25% Rule might be invoked and the wages "reported in the survey," which is used to determine the unit of pay, this is a distinction without a difference.

In statistics, a sample is "[a] portion drawn from a population, the study of which is intended to lead to statistical estimates of the attributes of the whole population." *Sample (statistics)*, Oxford English Dictionary, https://www.oed.com/dictionary/sample_n?tab=meaning_and_use#24456622; *see also Sample*, Merriam-Webster, https://www.merriam-webster.com/dictionary/sample ("a finite part of a statistical population whose properties are studied to gain information about the whole"). While Plaintiff has identified a difference in words, that difference does not change the plain meaning of those words. *See Bare v. Barr*, 975 F.3d 952, 968 (9th Cir. 2020) (citations omitted) (well-established canon of construction that use of different words in the same law shows intent to give them different meanings); *but see Wilderness Soc'y v. U.S. Fish & Wildlife Serv.*, 353 F.3d 1051, 1060 (9th Cir. 2003), *amended on reh'g sub nom.*, 360 F.3d 1374 (9th Cir. 2004) (a "fundamental canon of construction provides that 'unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning'"). Contrary to Plaintiff's suggestion, the Court finds the plain language of

this provision to mean that where a single employer represents more than 25% of the sampled wages, a prevailing wage rate will not issue—as DOL instructed SWAs to do after rulemaking.

Still, the plain language of a regulation "will not control if 'clearly expressed [administrative] intent is to the contrary or [if] such plain meaning would lead to absurd results.'" *Safe Air For Everyone*, 488 F.3d at 1097. Plaintiff only says that the regulation is contrary to a clearly expressed intent, but in doing so Plaintiff considers only one of multiple intents expressed by the agency. *See* Dkt. # 233 at 18-19. DOL said that it sought to encourage a greater number of survey results, which is seemingly undermined by the rule, but it also said that it had a goal of producing "reliable and accurate prevailing wage rates" that are not unduly influenced by a dominate employer, which is seemingly supported by the rule. *See* Dkt. # 238 at 18-19 (citing 84 Fed. Reg. at 36187); *see also* Dtk. # 233 at 21 (Plaintiff stating that DOL's "interpretation may ensure that a solitary dominant employer does not overly influence the survey result"). As stated, DOL may make policy determinations as to prioritizing its goals. *See Wages & White Lion Invs.*, 604 U.S. 542 at 567.

And while Plaintiff argues that DOL's interpretation—where a single employer represents more than 25% employment in the wage group used to compensate the largest number of workers a "no finding" will issue—"violat[es] two core agency principles," it once again relies on circular reasoning. Dkt. # 233 at 21-22. Plaintiff does not show that these "principles" are a statutory mandate, regulation, or any other governing principle that might prohibit DOL from taking action.[14] Plaintiff states the first principle in one conclusory sentence without any

[14] Plaintiff does not attempt to argue through the standard framework for considering an agency's actions. *Alaska Dep't of Health & Soc. Servs*, 424 F.3d at 938 ("[A]n agency rule [is] arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.") (alterations in original) (quoting *Motor Vehicle*, 463 U.S. at 43); *see generally* Dkt. # 233 at 17-26.

citation: "First, in Washington State, this interpretation violates DOL's duty to protect the wages of domestic farmworkers by replacing higher-paying piece-rate wages with the much lower minimum hourly AEWR." Dkt. # 233 at 21. Plaintiff provides no caselaw and no analysis. Presumably, Plaintiff seeks to invoke the reasoning of *Torres Hernandez*, 2024 WL 2559562, but as later explained, *infra* Section III.E., that case is not directly on point and the Court will not infer a position Plaintiff has not stated. Plaintiff's second principle—that the 25% Rule will lead to less prevailing wage surveys—has been repeatedly discussed in this Order and is once again not persuasive. *See supra* Section III.C.1.

Thus, the Court finds DOL has instructed ESD to apply the plain meaning of the regulation; Plaintiff has not shown that the plain meaning is counter to clearly expressed administrative intent or that it will lead to absurd results; and Plaintiff has presented no other showing that the rule is in another way arbitrary and capricious or contrary to the law. Thus, Plaintiff's as-applied challenge to the 25% Rule fails.

2. Facial

DOL says that Plaintiff has waived any facial challenge to the 25% Rule.[15] Dkt. # 185 at 12-16. Generally, "a party's failure to make an argument before the administrative agency in comments on a proposed rule bar[s] it from raising that argument on judicial review."[16] *Universal Health Servs., Inc. v. Thompson*, 363 F.3d 1013, 1019 (9th Cir. 2004) (citing *Exxon Mobil Corp. v. EPA*, 217 F.3d 1246, 1249 (9th Cir.2000)); *see also Portland Gen. Elec. Co.*, 501

---

[15] The exhaustion requirement does not apply where the question is solely one of compliance with statutory or regulatory requirements. *See Comité de Apoyo a los Trabajadores Agrícolas v. Solis*, 2010 WL 3431761, at *16 & n.14 (E.D. Pa. Aug. 30, 2010) (collecting cases). Still, as the Court has explained when considering the One-Year Rule, the prevailing wage rate is not required in every instance and Plaintiff has not established that the 25% Rule is contrary to § 1188 in any other way. *See supra* Section III.C.1., D.1.

[16] DOL refers to this as "forfeiture," but the Ninth Circuit "made clear that it is best characterized as waiver." *Portland Gen. Elec. Co. v. Bonneville Power Admin.*, 501 F.3d 1009, 1023 (9th Cir. 2007).

F.3d at 1024 (9th Cir. 2007) ("In general, we will not invoke the waiver rule in our review of a notice-and-comment proceeding if an agency has had an opportunity to consider the issue"). Still, "so long as a statute does not require exhaustion, [the court] may excuse waiver in exceptional circumstances." *Id.* "In determining whether exceptional circumstances exist, [courts] balance the agency's interests in applying its expertise, correcting its own errors, making a proper record, enjoying appropriate independence of decision and maintaining an administrative process free from deliberate flouting, against the interests of private parties in finding adequate redress for their grievances." *Universal Health Servs.*, 363 F.3d at 1021 (citing *Marathon Oil Co. v. United States*, 807 F.2d 759, 768 (9th Cir.1986)).

Plaintiff does not claim to have raised a challenge to the 25% Rule during rulemaking, nor does it acknowledge its failure to raise the issue and grapple with the caselaw governing waiver. *See* Dkt. # 187 at 12-13; Dkt. # 165 at 15-16. Instead, it implicitly requests an exception, stating that it was impossible to raise the issue because, at the time of the notice-and-comment period, the 25% Rule was ambiguous and susceptible to multiple interpretations. Dkt. # 165 at 21-22. They say, in violation of the APA's notice requirement, DOL did not make its allegedly unreasonable interpretation clear until after the rule became final.[17] *See* Dkt. # 165 at 21-22 (citing 5 U.S.C. § 553); Dkt. # 187 at 12-13.

As the Court has explained, *supra* Section III.D.1., the 25% Rule is not ambiguous. But even if it were, Plaintiff does not explain why that should avail them of its obligation to challenge the proposed language during the notice-and-comment period; let alone cite any caselaw to support such a finding. Ambiguity in rulemaking is common. *See Kisor*, 588 U.S. at 566 (describing ambiguity as "a familiar problem in administrative law"). To allow for

---

[17] The Court does no interpret Plaintiff's invocation of 5 U.S.C. § 553 as a distinct basis for relief, but as an exception to the waive requirement. *See* Dkt. # at 165 21-22, 24.

ambiguity to provide an avenue circumventing waiver would render the doctrine meaningless to an extent. *See Portland Gen. Elec. Co.*, 501 F.3d at 1024 (explaining the "waiver rule protects the agency's prerogative to apply its expertise, to correct its own errors, and to create a record for our review"). Plaintiff has repeatedly stated that the rule could be open to multiple interpretations, and yet even though Plaintiff was on notice of the rule, it did not act. Dkt. # 165 at 15-16 (stating how Plaintiff understood the rule at the time of the NPRM); Dkt. # 233 at 18.

On the facts of this case, the ambiguity as Plaintiff has explained it (i.e., a discrepancy between the language of the rule and DOL statements and policies) is not an exception to the waiver requirement. *See Universal Health Servs.*, 363 F.3d at 1020-21 (considering relevant that plaintiffs were on notice the rule was relevant to them); *see also Nevada Land Action Ass'n v. U.S. Forest Serv.*, 8 F.3d 713, 719 (9th Cir. 1993) (holding that where the agency's statements and proposed rules were so "diametrically inconsistent" as to be irrational the plaintiff "should have been able to discern from their own analysis the effect of the proposed plan"). Plaintiff provides no other basis for an exception to the waiver requirement, and the Court finds none. Thus, Plaintiff has waived its facial challenge to the 25% Rule by not challenging it during the notice-and-comment period.

E. DOL's Approval of 2022 Survey Results Containing AEWR-Only Job Orders

Plaintiff next says that the "DOL's final approval of the 2022 wage survey results is arbitrary and capricious and contrary to law because those results were based on unlawful survey responses" in violation of *Torres Hernandez*, 2024 WL 2559562—more simply, Plaintiff says that the 2022 survey was tainted by the inclusion of employers who improperly paid the AEWR

when they should have been paying the higher prevailing piece rate wage.[18] Dkt. # 233 at 12. Plaintiff seeks a declaratory judgment stating that DOL's approval of the 2022 survey results (which occurred in June 2025) was unlawful and for the publication of the 2022 survey results to be vacated. Dkt. # 233 at 33-34. DOL responds that the approval of the 2022 prevailing wage rates does not violate the *Torres Hernandez* holding or the later injunction issued by the district court in *Torres Hernandez*; and, it says, the argument is instead an effort to obtain relief here that should have been sought before the court in *Torres Hernandez.* Dkt. # 238 at 8-11.

To start, the Court notes that Plaintiff rests its entire argument on *Torres Hernandez* and does not direct the Court to the current regulatory scheme. *See generally* Dkt. # 233 at 12-17; Dkt. # 239 at 6-8. Still, Plaintiff briefly invokes the regulation, stating that the approval of the 2022 wages "directly violate[s] both the current version of 20 C.F.R. § 655.120(a) (2024) and the prior version published in 2010."[19] Dkt. # 165 at 26 (footnote omitted). Any arguments that DOL's actions might violate the new regulation independent of *Torres Hernandez* are under established. *See generally* Dkt. # 165 at 25-27; Dkt. # 191 at 10; Dkt. # 233 at 12-17; Dkt. # 239 at 6-8. Still, because *Torres Hernandez* observed that its interpretation of the previous version of

---

[18] In Plaintiff's first partial motion for summary judgment, Plaintiff raised a different challenge—specifically to the approval of job orders (as opposed to survey results) and seeking declaratory relief stating that DOL's past approval of AEWR-only job orders was unlawful. Dkt. # 165 at 25-27. Originally, DOL did not challenge the merits of this claim and instead said only that Plaintiff lacked standing. Dkt. # 185 at 19-21. In the second round of briefing, after the 2022 wages had been approved, it appears that Plaintiff has abandoned this remedy. *See* Dkt. # 233 at 33-35; *see also* Dkt. # 233-1. Regardless, for the reasons stated by DOL, Dkt. # 185 at 19-21, Plaintiff lacks standing to seek declaratory relief that "seeks not remediation of its own injury . . . but vindication of the rule of law." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 106-07 (1998) ("summarily" disposing of respondent's "request for a declaratory judgment that petitioner violated" the law).

[19] In the most recent briefing, Plaintiff titled the heading of the relevant section, "Washington's 2022-Survey no-findings are tainted by wages unlawfully approved by DOL in violation of 20 C.F.R. § 655.120(a)," but did not specify the new or old version; nor does Plaintiff point the Court to a more specific provision within 20 C.F.R. § 655.120(a) or cite 20 C.F.R. § 655.120(a) anywhere in its argument. *See* Dkt. # 233 at 12-17.

20 C.F.R. § 655.120(a) tracks the amended version, 2024 WL 2559562, at *1, n.2, and in an abundance of caution, the Court considers the position.

The current version of § 655.120(a) states, in relevant parts:

> (a) Employer obligation.
>
> (1) Except for occupations covered by §§ 655.200 through 655.235, to comply with its obligation under § 655.122(l), an employer must offer, advertise in its recruitment, and pay a wage that is at least the highest of:
>
> (i) The AEWR;
>
> (ii) A prevailing wage rate [subject to certain criteria];
>
> . . .
>
> (2) Where the wage rates set forth in paragraph (a)(1) of this section are expressed in different units of pay (including piece rates or other pay structures), the employer must list the highest applicable wage rate for each unit of pay in its job order and must offer and advertise all of these wage rates in its recruitment. The employer's obligation to pay the highest of these wage rates is set forth at § 655.122(l)(2).

*Id.*[20] The employer may also pay other listed wages if higher than the AEWR or prevailing wage. *See* 20 C.F.R § 655.120(a)(1)(iii)-(vi).

In *Torres Hernandez*, the Ninth Circuit considered the now-outdated form of 20 C.F.R. § 655.120(a), which also "require[d] that an employer seeking to hire temporary foreign agricultural workers under the H-2A visa program 'offer, advertise in its recruitment, and pay a wage that is at least the highest of' various listed wages." *Torres Hernandez*, 2024 WL 2559562, at *1. As the Court held, "When the prevailing wage is a piece-rate, [20 C.F.R.] § 655.120(a) requires that an H-2A employer offer it," which DOL was not requiring of

---

[20] Plaintiff does not specify if it is challenging 20 C.F.R. § 655.120(a)(1) or (2), but because 20 C.F.R. § 655.120(a)(2) is referenced nowhere in Plaintiff's briefing and 20 C.F.R. § 655.120(a)(1) is very briefly stated, the Court assumes Plaintiff challenges 20 C.F.R. § 655.120(a)(1). *See* Dkt. # 165 at 26, n.11; *see generally* Dkt. # 165 at 25-27; Dkt. # 191 at 10; Dkt. # 233 at 12-17; Dkt. # 239 at 6-8.

employers when approving job orders.[21] *Id.* at *1. The Ninth Circuit held Plaintiff was entitled to "[a] narrow form of relief" in the form of "vacatur of improperly approved AEWR-only job orders from the 2023 harvest season and exclusion of wages paid under those orders from future prevailing wage surveys." *Id.* at *2.

Plaintiff acknowledges that the injunction required under *Torres Hernandez* applied only to 2023 and later surveys but says that the underlying legal holding of the Ninth Circuit binds DOL and put it on notice regarding the approval of AEWR-only survey results.[22] Dkt. # 233 at 13. To show DOL's error, Plaintiff specifically points to the cherry and apple wages in the 2022 survey results, which included wages that matched exactly the AEWR even though employers were obligated to pay a piece rate wage. Dkt. # 233 at 13-14 & n.6. Plaintiff says the AEWR-only practice likely occurred in connection with other wages as well. *Id.* But Plaintiff has not provided sufficient support to show that the narrow holding in *Torres Hernandez* requires the Court to make a sweeping finding that the approval of the entire 2022 prevailing wage survey results was unlawful. As Plaintiff admits, *Torres Hernandez* instructed the trial court to vacate *2023 H-2A job orders* and Plaintiff now asks this Court to vacate the approval of the *entire 2022 prevailing wage rate survey results*. *See* Dkt. # 239 at 8-9; 2024 WL 2559562, at *2. The Court does not find that *Torres Hernandez* requires such vacatur or a conclusion that DOL violated the non-precedential opinion in approving the 2022 survey results.

---

[21] Again, a "piece rate" is "[a] form of wage compensation based upon a worker's quantitative output or one unit of work or production for the crop or agricultural activity." 20 C.F.R. § 655.103. "[A]lthough how much a given piece-rate worker will earn is unknown in advance, it will never be less than he or she would earn if paid an hourly rate: The regulations require an employer to 'supplement[ ]' the wages of a piece-rate worker after the fact if his or her earnings are not 'at least equal to the amount the worker would have earned' under an hourly wage." *Torres Hernandez*, 2024 WL 2559562, at *1 (citing 20 C.F.R. § 655.120(a) and § 655.122(l)(2)(i)).

[22] As DOL correctly say *Torres Hernandez* is unpublished and not a precedential holding. 2024 WL 2559562, at *1, n.**; *see* Fed. R. App. Proc. 36-3 ("Unpublished dispositions and orders of this Court are not precedent, except when relevant under the doctrine of law of the case or rules of claim preclusion or issue preclusion").

But even if the Court were to find that DOL impermissibly approved survey results in violation of *Torres Hernandez* or 20 C.F.R. § 655.120(a), Plaintiff simply says that a flawed input must produce flawed output. Dkt. # 233 at 13-14 (citing *Torres Hernandez v. Stewart*, 2021 WL 6274440, at*1, *7-8 (E.D. Wash. Mar. 1, 2021)). That may be the case when there is a connection with the input and the challenged output; but here, Plaintiff does not explain how the allegedly flawed data led to an impermissible "no finding" result. If the survey results reported only AEWR wages without consideration for the piece rate, then the wages would be artificially lowered—not lead to a "no finding."[23] *See* Dkt. # 233 at 12-17. It seems not just more likely, but only possible, for the "no finding" results to be from another provision in the regulations, such as the 25% Rule. *See also* 20 C.F.R. § 655.120(c).

Take for example, general apple harvesting, which Plaintiff says includes AEWR wages and that DOL improperly approved. *See* Dkt. # 233 at 14. Plaintiff says 8 out of 40 of respondents who reported hourly wages reported paying exactly the 2022 AEWR.[24] Dkt. # 233 at 14; *see also* Dkt. # 76-3 at 333-339. But that is irrelevant to the "no finding" result in general apple harvesting because more than 40 employers reported paying a prevailing piece rate; and thus, the unit of pay used to compensate the largest number of workers was the piece rate not an hourly rate. *Id.*; *see also* 20 C.F.R. § 655.120(c)(1)(ix) (instructing SWAs to apply the 25% Rule to "the unit of pay used to compensate the largest number of U.S. workers whose wages are reported in the survey"); Dkt. # 76-2 at 214. ESD then, considering only this plurality unit of pay, arrived to a "no finding" under the 25% Rule. Dkt. # 76-3 at 333-339. The same is true for

---

[23] The Court could envision a scenario where this might not be true. For example, if the AEWR job orders resulted in the largest unit of pay to erroneously be an artificially lower hourly wage. But as explained, Plaintiff has not shown that this theoretical situation occurred in the 2022 survey results.

[24] The Court is not sure if Plaintiff is estimating up or down when it says 40 employers reported hourly wages. The correct number is either 41 or 39 (depending on inclusion of bonus pay and other distinct pay units). *See* Dkt. # 76-3 at 335; *see also supra* Section III.F. Either way the Court's conclusion remains the same.

general cherries. *See* Dkt. # 76-3 at 416-418. Plaintiff in no way connects the "no finding" with the inclusion of AEWR wages in the survey results.

For these reasons, the Court does not find DOL's approval of the 2022 survey results arbitrary or capricious or contrary to the law.

F. Approval of 2022 survey results that relied on "wage fracturing"

Plaintiff brings a similar claim when it argues, "DOL's approval of the 2022 Survey results was unlawful because those results were calculated using a methodology that irrationally treated piece rates, piece rates with hourly guarantees, and piece rates with bonuses, as well as piece rates with other inconsequential differences, as separate and distinct methods of payment."[25] Dkt. # 233 at 26 (citing Dkt. # 76-3 at 277, 284, 310). They say this "fracturing" methodology irrationally produced hourly wages when piece-rate wages were the predominate wage rate and irrationally caused "no findings" in smaller employment groups that would have otherwise passed the 25% Rule. *Id.*

In response, DOL abdicates responsibility by reminding the Court that SWAs are independent state actors who control their own methodology and that growers are not monolithic. Dkt. # 238 at 11-12. The Court understands both concepts and reminds DOL of its statutory mandate to act as the regulatory body to prevent growers from underpaying, and thus ensure H-2A visa applications do not "adversely affect the wages and working conditions of workers in the United States." 8 U.S.C. § 1188(a)(1)(B). This is neither the growers' nor the states' responsibility. *See U.S. Telecom Ass'n v. F.C.C.*, 359 F.3d 554, 565‑66 (D.C. Cir. 2004)

[25] Plaintiff does not cite any law in making this argument, but the Court assumes Plaintiff is again arguing this practice is arbitrary and capricious and contrary to the law. *See generally* Dkt. # 233 at 26-31; *see also* Dkt. # 239 at 11.

(finding "when an agency delegates power to outside parties, lines of accountability may blur, undermining an important democratic check on government decision-making").

Besides, while DOL may not directly dictate individual growers' pay or conduct the wage surveys, the entire framework at issue in this case involves DOL regulating wages and setting survey methodology standards, so the Court disagrees that DOL's role is, as it says, "more akin to that of a consumer of the statistical information." Dkt. # 240 at 5; *see also Dole*, 923 F.2d at 187 ("The government's choice of methodology is really a policy decision taken within the bounds of a rather broad congressional delegation."). DOL frequently makes inquiries to ESD regarding its methodology, publishes guidance for SWAs, and, of course, is the final approver of the wage rates. Dkt. # 76-3 at 502-503, 511 (DOL inquiring into ESD's practices); *see also* Dkt. # 76-3 at 172-173, 175-176, 509; Dkt. # 71-2 at 212-214, 238-240 (discussing non-regulatory guidance from DOL).

Even just within this litigation, ESD has contemplated that DOL may direct its methodology. When this Court dismissed ESD as a defendant, ESD affirmed that "[s]hould USDOL direct ESD to use a different methodology, ESD will comply with USDOL's instructions." Dkt. # 117 at 9 (quoting Dkt. # 102 at 6 [ESD Reply to Response to ESD's Motion to Dismiss]) (alternations made in Dkt. # 117). If DOL could not question ESD's processes, the approval process and regulatory scheme would be meaningless. *See* 20 C.F.R. § 655.100(b) (describing the scope of the pertinent subsection as "establish[ing] standards and obligations with respect to the terms and conditions of the temporary agricultural labor certification with which H-2A employers must comply . . . Additionally, this subpart sets forth integrity measures for ensuring employers' continued compliance with the terms and conditions of the temporary agricultural labor certification."); *see also* Dkt. # 239 at 12-13 (plaintiff providing examples of absurd results that could happen if DOL could not question the methodology). On top of that,

the regulation directly contemplates that DOL would consider the units of pay established and reported by SWAs. *See* 20 C.F.R. §§ 655.120(c)(1)(i) (listing as one requirement that SWAs provide "the methodology of the survey"), (vi) (setting as a requirement that the survey cover an appropriate geographic area, the size of the agricultural population, "and any different wage structures in the crop activity or agricultural activity within the State"). The Court will not allow DOL to abdicate its Congressional mandate or duties under the APA. *See United Airlines, Inc. v. Transp. Sec. Admin.*, 20 F.4th 57, 63 (D.C. Cir. 2021) (holding that "Placing the burden on [a third party] does not relieve the [agency] of its ordinary burden under the Administrative Procedure Act—i.e., its duty to provide a reasoned explanation for its decision"). The Court now considers the merits of Plaintiff's claim.

As Plaintiff says, the data reflects piece rate wages often broken into distinct subunits of pay. This repeatedly results in an hourly wage being marked as the prevailing wage or producing a "no finding" under the 25% Rule, where neither would occur had the piece rate or hourly wage not been fractured into subunits. *See* Dkt. # 76-3 at 276-494; *see also* Dkt. ## 207-1, 208.

Take for example, Fuji apple harvesting. In emails between DOL and ESD, DOL stated, "Your ETA-232 and ETA-232 attachment indicate that a **bin piece rate** is the unit of pay used to compensate the largest number of U.S. workers in the crop/agricultural activity." Dkt. # 76-3 at 513-15 (emphasis in original). DOL then asked for a step-by-step determination that the unit of pay should be a bin piece rate. *Id.* ESD responded that it required bin dimensions to aggregate wages to the majority pay unit.[26] *Id.* In Fuji apple harvesting, the majority unit of pay was a "bin_y_not-applicable" (i.e., a combination of wage unit, AEWR guarantee, and bonus) with a

[26] ESD regularly uses "majority" when, in fact, the number is a plurality. *See* Dkt. # 76-3. Still, the Court follows the language ESD uses.

"not sure" bin dimension. *Id.* This group was estimated to contain 44.18% of employment. *Id.*; *see also* Dkt. # 76-3 at 304. Notably, it contained only one actual reported employer and that one employer reported a total employment of 120 workers. Dkt. # 76-3 at 304. The wages were then eliminated under the 25% Rule because, again, there was only one employer who, of course, hired the most reported works within this fractured subunit of pay. Dkt. # 76-3 at 303-308, 513-515. This seems an absurd result considering that there were four other fractured pay units that paid piece rate wages. *Id.* at 303-308. These other pay units included 28 reported employers and another 34.57% of the estimated employer group, and the reported total employment of these additional 28 employers was 473 workers. But for the wage fracturing, the prevailing wage rate for harvesting Fuji apples would have issued, and instead, a "no findings" was issued. *See* Dkt. # 207-1 at 1; Dkt. # 208.

Plaintiff says that when DOL approved Fuji apple harvesting and other wages similarly fractured, this arbitrarily approved ESD's results. The Court agrees. *See Arizona Cattle Growers' Ass'n*, 273 F.3d at 1236 (holding that courts "must not 'rubber-stamp . . . administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute'") (alterations in original). Although the Court has found a prevailing wage rate need not always be published to fulfill DOL's mandate to not adversely affect local wages, here, the survey data strongly indicates (for multiple agricultural activates) that a piece rate prevailing wage is the appropriate wage; and yet, DOL without explanation or seemingly consideration approved survey results that eliminated the prevailing wage. *See United Airlines*, 20 F.4th at 63 ("the agency must always adequately explain "why it chose to do what it did"); *see also League of California Cities*, 118 F.4th at 1013 ("For the action to be 'reasonable and reasonably explained,' the agency must have articulated 'a rational connection between the facts found and the choice made,'") (citation omitted). Even a cursory

inspection of ESD's data should have raised questions from DOL. *See e.g.*, Dkt. # 76-3 at 513-515 (considering bonuses in determining unit of pay); *cf. Frederick Cnty. Fruit Growers Assn. v. Dole*, 758 F.Supp. 17, 25-27 (D.D.C. 1991) (discussing windfalls that occur when bonuses are counted towards the minimum pay requirement and finding that it would be "unjust" to allow employers to reduce pay based on bonuses).

What is more, allowing wage fracturing, as ESD has done and DOL has not questioned, would make it nearly impossible for any prevailing wage to issue under the new methodologies, largely nullifying § 655.120(c). *See Torres Hernandez*, 2024 WL 2559562, at *1 (cautioning that the inclusion of AEWR-only job orders would "largely nullify § 655.120(c)"). For these reasons, DOL's approval of the 2022 survey results with wage fracturing was arbitrary and capricious and contrary to the law.

G. Estimated population

Plaintiff says that DOL's publication of no-findings for specific crop activities in the 2022 survey based on the use of population estimate methodology violates 20 C.F.R. § 655.120(c)(1)(v). Dkt. # 233 at 31-33.

Under 20 C.F.R. § 655.120(c)(1)(v) DOL will issue a prevailing wage only if, in addition to other factors:

> The survey reports the average wage of U.S. workers in the crop activity or agricultural activity and distinct work task(s), if applicable, and geographic area using the unit of pay used to compensate the largest number of U.S. workers whose wages are reported in the survey[.]

Plaintiff says that, instead of using the unit of pay used to compensate the largest number of U.S. workers whose wages are reported in the survey, ESD engaged in statistical analysis to estimate the entire U.S. worker population employed within a unit of pay.

DOL says the regulation does not use the word "actual" wages reported in the survey and that Plaintiff is reading that into the regulation, and that nothing in the regulation prevents SWAs from using an estimate. Dkt. # 238 at 14. DOL further says that it always assumed SWAs would use estimates. Dkt. # 238 at 15. And finally, it says that if there is any ambiguity, the agency's interpretation should prevail. *Id.* (citing *Auer*, 519 U.S. at 461 (Agency's interpretation of its own regulations is controlling unless plainly erroneous or inconsistent with the regulation)); *cf. Kisor*, 588 U.S. at 573-579.

The Court agrees. Plaintiff reads the regulation in isolation of the entire regulatory scheme; estimates and statistical analysis are plainly contemplated by the regulation and the rulemaking. *See* 20 C.F.R. § 655.120(c)(1)(iv), (vii)-(ix). Plaintiff's reading of the regulation is also impractical, and it seems, the most likely outcome of Plaintiff's reading is that DOL would never be able to approve prevailing wage rates. And finally, Plaintiff's fears over data manipulation are nothing more than theorizing. The regulation protects against the manipulation by requiring the surveyor to either have "made a reasonable, good faith attempt to contact all employers employing workers" or to have "contacted a randomized sample of such employers," except where the universe of employers is less than five.[27] 20 C.F.R. § 655.120(c)(1)(iv). Plaintiff is not entitled to summary judgment on its claim that DOL's publication of the survey results using population estimates is not contrary to 20 C.F.R. § 655.120(c)(1)(v), was arbitrary, capricious, or contrary to law.

---

[27] Plaintiff does not state as a basis of relief that a violation of 20 C.F.R. § 655.120(c)(1)(v) occurred nor does Plaintiff argue that the use of population estimates may be arbitrary or capricious as applied in another provision. *See generally* Dkt. ## 165, 187, 233, 239.

## IV

## CONCLUSION

For these reasons, the Court DENIES Plaintiff's first Partial Motion for Summary Judgment. Dkt. # 165. The Court partially GRANTS Plaintiff's second Partial Motion for Summary Judgment because DOL's approval of the 2022 survey results with "wage fracturing" was arbitrary and capricious and contrary to the law. Dkt. # 233. The Court DENIES Plaintiff's second Partial Motion for Summary Judgment as to all other claims. Dkt. # 233. The Court partially GRANTS DOL's cross Motions for Partial Summary Judgment to all claims except those related to "wage fracturing" and remedy. Dkt. # 185, 238.

The Court ORDERS the parties to meet and confer regarding an appropriate remedy, and to file joint or separate proposals by December 4, 2026. If each side files separately, each brief may not exceed 3,000 words.

Dated this 6th day of November, 2026.

John H. Chun
United States District Judge